**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stephen DRAGASITS,<br><br>                              Plaintiff,<br><br>vs.<br><br>Correctional Officer ARCHULETA, et al.,<br><br>                              Defendants. | Case No.:  24-cv-1257-AGS-SBC<br><br>**ORDER:**<br><br>**(1) DISMISSING ALL DEFENDANTS EXCEPT ARCHULETA, MASSIA, GARCIA, AND QUIJADA; AND**<br><br>**(2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF AMENDED COMPLAINT** |

Plaintiff Stephen Dragasits is an unrepresented state prisoner proceeding *in forma pauperis* and suing defendants for civil rights violations under 42 U.S.C. § 1983. (ECF 1.) His initial complaint plausibly alleged an excessive-force claim against defendants Archuleta and Massia but failed to state a claim against the remaining defendants. (*See* ECF 4, at 4–5.) Dragasits was given the option to amend. (*Id*. at 5–6.) In the interim, the case was consolidated with another of his civil actions arising from disciplinary proceedings based on the events alleged in this action. (ECF 10.) Dragasits has now filed a consolidated amended complaint. (ECF 14.)

**SCREENING**

The Court must screen and dismiss a complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from immune defendants. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2) screening); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b) screening). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under

§ 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (same for § 1915A screening). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (cleaned up).

### A.   Consolidated Amended Complaint's Allegations

On November 24, 2018, Dragasits cut to the front of the chow line wearing an Americans with Disabilities Act vest and using a walker when he was told by defendant correctional officer Archuleta to take a 300-yard detour to the back of the line. (ECF 14, at 10, 15.) Dragasits instead sat down on his walker, removed his shoe, showed Archuleta the infected stitches in his foot, and explained he was suffering pain and that his vest and walker gave him front-of-line privileges. (*Id*. at 10–11, 15–16.) Archuleta repeated that he had to walk around and then took Dragasits's identification card. (*Id*. at 11, 16.) Dragasits alleges that correctional officers are trained to allow ADA inmates using walkers to have front-of-line privileges at chow. (*Id*. at 8.)

Dragasits began to explain the situation to another correctional officer, defendant Quijada, while standing next to his walker and putting his shoes and socks back on, when Archuleta tripped Dragasits from behind, making him hit his back and head on rough asphalt. (*Id*. at 11, 17.) Quijada was facing Dragasits, saw what was happening behind him, and extended his arms as if to try to catch Dragasits, while defendant correctional officers Saliewsky and John Does 1–5 were standing with their backs to the wall. (*Id*. at 11, 17–18, 26.) Archuleta then climbed on Dragasits's back preventing him from breathing and called in a code. (*Id*. at 11, 18.) Thereafter, defendant correctional officer Massia punched and kicked Dragasits in his left rib cage causing a compound rib fracture. (*Id*. at 11, 19.) When Dragasits cried for help, defendant correctional officer Garcia punched and kicked him in his side, kicked him in the head, and ground his face into the asphalt. (*Id*.) Defendant correctional officer Scharr approached and said "ok, get off him." (*Id*. at 12, 18.)

After this altercation, Archuleta purportedly issued a rules violation report with a false narrative, and Quijada later denied seeing anything in an attempt to cover up the attack. (*Id*. at 11–12, 17–18.) Defendants' supervisor Ortiz and warden Stewart are alleged to be liable as supervisors. (*Id*. at 21, 28–29.)

At the rules-violation hearing, Dragasits was found guilty of disobeying an order by defendant hearing officer Ferrel, who allegedly refused to read Dragasits's two-page written description of the events or include it in the record. (*Id*. at 14, 22–23.) Defendant investigating officer Avila denied Dragasits's requests for Archuleta's presence at the hearing, to announce at chow that Dragasits was looking for witnesses, and to introduce his medical records. (*Id*. at 23, 34.) Defendant chief disciplinary officer Juarez failed to overturn the guilty finding. (*Id*. at 36.) Defendant retired warden Covello ordered a rehearing due to Archuleta's absence at the hearing, but did not investigate "all of the other complaints," and defendants Scharr, D-yard captain Benyard, and supervisors Godinez and Luna approved the reissued rules violation report. (*Id*. at 24–25, 27–28, 32, 34.) Dragasits was transferred to Kern Valley State Prison where defendant senior hearing officer Nuckles told him that Archuleta could not attend the rehearing because she was on mental health leave but failed to note that in the rehearing record or include his medical records. (*Id*. at 14, 33, 35.) Defendant chief disciplinary officer Swaim approved the guilty finding on the reissued violation. (*Id*. at 35.)

Dragasits alleges that defendant appeals coordinators and examiners Calvert, Frijas Gonzalez, and Allen, along with hiring authorities John Does 6–8, refused to properly process his 602 inmate appeals necessary to exhaust his administrative remedies. (*Id*. at 30–31, 35.) He also claims that defendants California Department of Corrections and Rehabilitation and CDCR secretary Macomber are liable for hiring and failing to train or discipline the defendants. (*Id*. at 2, 37–39.) He claims violations of his First Amendment right to free speech and access to the courts, his Fourteenth Amendment right to due process, his Eighth Amendment right to be free from cruel and unusual punishment, his rights under the ADA, intentional infliction of emotional distress, and assault and battery.

B.  **Eighth Amendment Claims**

The Eighth Amendment forbids prison officials from engaging in the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (noting that the Eighth Amendment "places restraints on prison officials, who may not, for example, use excessive physical force against prisoners"). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

Dragasits's allegations are sufficient to survive the "low threshold" of screening with respect to an Eighth Amendment claim against defendants Archuleta, Massia, and Garcia—who are alleged to have attacked and beaten him without cause. *See Wilhelm*, 680 F.3d at 1123. Accordingly, Dragasits is entitled to have the U.S. Marshal effect service of the summons and complaint against defendants Archuleta, Massia, and Garcia. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.").

Dragasits also alleges that defendants Quijada, Saliewsky, Scharr, and John Does 1–5 failed to protect him in violation of the Eighth Amendment when they failed to intervene. The Eighth Amendment imposes a duty on prison officials to "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832. *But see Cunningham v. Gates*, 229 F.3d 1271, 1290 (9th Cir. 2000) (noting that liability does not attach unless officers have a "realistic opportunity" to intercede). Dragasits alleges Quijada approached him, saw Archuleta trip him from behind, and with "a look of concern and shock about him . . . he extended his arms as if to catch me." (ECF 14, at 11.) Since Quijada was allegedly in a position to protect Dragasits, Quijada had a "realistic opportunity" to act, so those allegations plausibly state an Eighth Amendment failure-to-protect claim. *See*

*Cunningham*, 229 F.3d at 1289–90.

The remainder of the defendants, though, are a different story. Dragasits claims Saliewsky and John Does 1–5 were standing with their backs to the wall and that Scharr arrived "some minutes later." (ECF 14, at 11–12, 17–18, 26.) Dragasits was previously informed that such conclusory allegations fail to state a claim. (ECF 4, at 4.) He once again fails to provide factual allegations showing that these defendants had a realistic opportunity to intervene. *See Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (holding that allegations that a defendant caused a deprivation of a plaintiff's federal rights "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation").

Because Dragasits had been previously instructed on the elements of an Eighth Amendment failure-to-protect claim and it is clear he is unable to state such a claim against Saliewsky, Scharr, and John Does 1–5, this claim is dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) & 1915A(b), without further leave to amend. *See Fidelity Fin. Corp. v. Federal Home Loan Bank of S.F.*, 792 F.2d 1432, 1438 (9th Cir. 1986) (noting that when "the court has already given the plaintiff an opportunity to amend his complaint" on the same point, the "district court's discretion to deny leave to [further] amend is particularly broad").

**C.   ADA Claim**

Dragasits alleges the defendants' actions also violated the American with Disabilities Act because he is a disabled person. (ECF 14, at 21.) To state a claim under the ADA, Dragasits must allege:

> (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of (his) disability.

*McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (cleaned up).

The amended complaint fails to state an ADA claim for the same reasons the original complaint failed to state a claim: Dragasits has once again failed to plausibly allege any action by any defendant was taken *by reason of* his disability. (ECF 4, at 5.) Dragasits has also once again failed to plausibly allege he brought the ADA claim within the statute of limitations. The statute of limitations for an ADA claim is three years beginning after "the last events alleged in his complaint." *Sharkey v. O'Neal*, 778 F.3d 767, 773 (9th Cir. 2015). Dragasits initiated this action on June 20, 2024, over five years after the events alleged. *See U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013) (holding that a claim may be dismissed as untimely "when the running of the statute of limitations is apparent on the face of the complaint").

Because Dragasits has failed to state a claim for a second time on the same basis, his ADA claim is dismissed without further leave to amend. *See Fidelity Fin. Corp.*, 792 F.2d at 1438.

**D.    Due Process Claim**

Dragasits argues that he was denied due process during the hearing and rehearing on the rules violation when: (a) hearing officer Ferrel did not include in the record or even read Dragasits's two-page written description of the events, which differed from Archuleta's purportedly false narrative; (b) investigating officer Avila denied Dragasits's requests for Archuleta's presence at the hearing, to announce at chow that Dragasits was looking for witnesses, and to introduce medical records; (c) chief disciplinary officer Juarez failed to overturn the initial guilty finding; (d) warden Covello ordered a rehearing due to Archuleta's absence but did not investigate "all of the other complaints"; (e) Scharr, Benyard, and appeals coordinators Godinez and Luna misclassified and approved the reissued violation report; (f) hearing officer Nuckles failed to reflect in the rehearing record that Archuleta could not attend the rehearing because she was on mental health leave and failed to release Archuleta's medical records; and (g) chief disciplinary officer Swaim approved the guilty finding on the reissued violation. (ECF 14, at 14, 21–29, 32–36.) Dragasits also alleges appeals reviewer Calvert and appeals coordinators Frijas, Gonzalez,

Allen, and John Does 7–8 refused to properly process his inmate appeals regarding staff misconduct and allowed his transfer to Kern Valley to interfere with the exhaustion of his administrative remedies. (*Id*. at 30–31, 35.)

The Due Process Clause of the Fourteenth Amendment prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Dragasits must first identify a protected liberty or property interest. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("[T]hose who seek to invoke [the Fourteenth Amendment's] procedural protection must establish that one of these interests is at stake."). A protected interest arises when a custodial sentence is increased in "an unexpected manner" or when an inmate is subject to restrictions imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

But none of the liberty interests Dragasits identifies qualify. Inmates do not have a protected liberty interest in the processing of grievances. "There is no legitimate claim of entitlement to a grievance procedure." *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Nor has Dragasits plausibly alleged a protected liberty interest arising from his transfer to Kern Valley. *See Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (noting that "no due process protections were required upon the discretionary transfer of state prisoners to a substantially less agreeable prison, even where that transfer visited a 'grievous loss' upon the inmate."). He also has not plausibly alleged a liberty interest with his allegation that the violation report was based on Archuleta's false narrative because "a prisoner does not have a constitutional right to be free from wrongfully issued disciplinary reports." *Buckley v. Gomez*, 36 F. Supp. 2d 1216, 1222 (S.D. Cal. 1997).

Dragasits has failed to allege that a liberty interest was at stake during the hearing or rehearing on the violations report because there are no allegations he was subject to a longer sentence because of the disciplinary proceeding or that a significant hardship was imposed on him because of its outcome. At the first hearing, Dragasits was found guilty of assault on a peace officer by means not likely to cause great bodily injury, but that was reduced at

the rehearing to a guilty finding of behavior that might lead to violence. (ECF 14-4, at 2–29.) The amended complaint's exhibits indicate there was no loss of privileges or custody credits at the rehearing. (*Id*. at 25–28, 32.)

That isn't necessarily the end of the issue. There may still be due-process protections, even when a protected liberty interest has not been identified, if "the findings of the prison disciplinary board" are not "supported by some evidence in the record." *Superintendent v. Hill*, 472 U.S. 445, 454–55 (1985). The exhibits attached to the amended complaint, though, make it clear that the decision was supported by evidence in the record. Specifically, the disciplinary hearing includes Archuleta's statement concerning her interaction with Dragasits on that critical day:

> Inmate Dragasits stated "Fuck You!" and pushed his walker in my direction. I yelled 'stop, get down', with negative results. Inmate Dragasits continued walking toward me with his walker, he then suddenly lunged at me, pushing his walker toward my person. Seeing an imminent threat to my person, I instinctively moved back to avoid getting hit by his walker, pushed his walker to my left side, grabbed his right arm with my left hand and with my right hand on his side, I pulled Inmate Dragasits to the ground. Once on the ground, I attempted to place handcuffs on Inmate Dragasits with negative results. Inmate Dragasits was resisting me by kicking his legs and pulling his arms from side to side and attempted to stand up. I ordered him to stop resisting, with negative results. I held him on the ground with both my hands on his back. Responding staff arrived, placed handcuffs on him. Inmate Dragasits continued to resist after he was handcuffed, by kicking and moving his body from side to side. I utilized my State Issued radio and stated Central Control "Code One in front of Delta culinary." Once Inmate Dragasits calmed down and was placed in handcuffs he was escorted to the Facility D gymnasium holding cells.

(ECF 14-4, at 58.)

Although Dragasits attaches conflicting accounts (ECF 14-2, at 2–4), Archuleta's statement provides some evidence in the record supporting the guilty finding. *See Hill*, 472 U.S. at 457 (finding that the "some evidence" standard is met with "meager" evidence as long as "the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary"); *id.* at 455 ("Ascertaining whether this

8

standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.").

So, the due-process claim is dismissed. And because the amended complaint's attachments make it clear Dragasits is unable to state a due-process claim, it is dismissed without further leave to amend. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) ("Denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile.").

### E.  First Amendment Free Speech and Access-to-Courts Claims

Dragasits claims he was denied his First Amendment right to free speech when he was hampered from providing his version of the events during the disciplinary proceedings and staff complaints, and was denied his right of access to courts because Kern Valley is less conveniently located to attend his resentencing proceedings at the San Diego County Superior Court. (ECF 14, at 13, 22–36.)

Starting with the access claim, inmates share in the "fundamental constitutional right of access to the courts." *Lewis v. Casey*, 518 U.S. 343, 346 (1996). But Dragasits must allege facts showing actual injury arising from the lack of access to his legal materials, that is, "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348. He must allege the loss of a "non[-]frivolous" or "arguable" underlying claim. *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417. Dragasits is unable to allege an actual injury by his transfer to a prison less convenient for him to travel to the San Diego Superior Court.

As to free speech, a prisoner retains free-speech rights that are not "inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Jones v. North Carolina Prisoners' Lab. Union, Inc.*, 433 U.S. 119, 125 (1977). In assessing a First Amendment free-speech claim, courts apply a four-factor test: (1) whether there is "a valid, rational connection between the prison regulation and the

legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether there is an "absence of ready alternatives." *Turner v. Safley*, 482 U.S. 78, 89–91 (1987) (cleaned up).

The amended complaint's exhibits indicate that Dragasits was present at both disciplinary hearings where he made statements (ECF 14-4, at 3, 6, 20, 23), and that his appeals of his staff complaints reflect his written statements (*id*. at 30, 33, 37–38, 40–50). Thus, Dragasits has not plausibly alleged he was denied an opportunity to speak to begin with, much less that there was an absence of alternative means available for him to do so.

Both First Amendment claims are dismissed. Because it is clear Dragasits is unable to state such claims, they are dismissed without further leave to amend. *See Schmier v. United States Ct. of Appeals for Ninth Cir.*, 279 F.3d 817, 824 (9th Cir. 2002).

### F. Supervisor Liability

Although unclear, it appears Dragasits also brings claims against defendants Ortiz and Stewart as supervisors of the defendants who beat him, and against the CDCR and secretary Macomber for hiring and failing to train or discipline the defendants. (ECF 14, at 2, 21, 28–29, 37–39.) Dragasits has failed to set forth facts which plausibly show these defendants' "personal participation in the alleged rights deprivation." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002); *see also id.* ("[T]here is no respondeat superior liability under section 1983."). Dragasits makes at most conclusory allegations with respect to the supervisory defendants, and any such claims are dismissed with leave to amend.

### G. State Law Claims

Plaintiff also brings state law claims for intentional infliction of emotional distress and assault and battery. (ECF 14, at 40, 42.) The elements of a claim of intentional infliction of emotional distress are "(1) the defendant engages in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers extreme or severe emotional distress; and (3) the

defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or severe emotional distress." *So v. Shin*, 212 Cal. App. 4th 652, 671 (2013); *see also Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996). For the same reasons the amended complaint plausibly alleges an Eighth Amendment claim against Archuleta, Massia, Garcia, and Quijada, it plausibly alleges an intentional infliction of emotional distress claim against those defendants.

The elements of a cause of action for assault under California law are: "(1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm." *So*, 212 Cal. App. 4th at 668–69. "The essential elements of a cause of action for battery are: (1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching." *Id*. at 669. For the same reasons the amended complaint plausibly alleges an Eighth Amendment claim against Archuleta, Massia, Garcia, and Quijada, it plausibly alleges assault and battery claims against them.

## CONCLUSION

Accordingly, the Court:

1) **DISMISSES** all claims in the amended complaint except the Eighth Amendment and state law claims against Archuleta, Massia, Garcia, and Quijada.

2) **ORDERS** Dragasits to file any second amended complaint remedying the identified defects by **September 26, 2025**. Alternatively, by September 26, 2025, Dragasits may notify the Court that he intends to proceed only on the surviving claims in the current complaint.

Dated: August 29, 2025

Hon. Andrew G. Schopler
United States District Judge