# NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Stephen DRAGASITS,<br><br>                                    Plaintiff,<br><br>                    v.<br><br>Correctional Officer ARCHULETA, et al.,<br><br>                                    Defendants. | Case No.:  24-cv-1257-AGS-SBC<br><br>**ORDER DISMISSING SOME CLAIMS AND DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF SECOND AMENDED COMPLAINT** |

Plaintiff Stephen Dragasits is an unrepresented state prisoner proceeding *in forma pauperis* ("IFP") and suing defendants for civil-rights violations under 42 U.S.C. § 1983. (ECF 1.) His initial complaint plausibly alleged an excessive-force claim against defendants Archuleta and Massia but failed to state a claim against the remaining defendants. (*See* ECF 4, at 4–5.) Dragasits was given the option to amend. (*Id*. at 5–6.) In the interim, the case was consolidated with another of his lawsuits arising from disciplinary proceedings based on the events alleged in this action. (ECF 10.) Dragasits then filed a consolidated amended complaint. (ECF 14.) That complaint survived screening with respect to excessive-force and state-law claims against defendants Archuleta, Massia, Garcia, and Quijada but failed to state a claim against any other defendant. (*See* ECF 16, at 4–11.) Dragasits was again given the option to amend. (*Id*. at 12.) He has now filed a second amended complaint. (ECF 30.) Attached to that pleading is a supplemental second amended complaint in which Dragasits requests reconsideration of the dismissal, without leave to amend, of various other claims. (ECF 30-1, 30-2.)

## SCREENING

The Court must dismiss a complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from immune defendants. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C.

1

§ 1915(e)(2) screening); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b) screening). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (same for § 1915A screening). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (cleaned up).

## A.  Allegations

According to the second amended complaint, on November 24, 2018, Dragasits cut to the front of the chow line using a walker and wearing an Americans with Disabilities Act vest. (ECF 30, at 9.) But defendant correctional officer Archuleta told him to take a 300-yard detour to the back of the line. (*Id*.) Dragasits told Archuleta that days earlier he had surgery on his foot, which had just been diagnosed as infected, and it was painful to walk. (*Id*.) He took off a shoe and sock, showed Archuleta infected stitches, and explained that his vest and walker gave him front-of-line privileges. (*Id*.) Archuleta repeated the order to walk around and snatched Dragasits's identification card. (*Id*. at 10–11.)

Dragasits was about to sit down to put his shoe and sock back on when he was approached by defendant correctional officer Quijada who asked about the situation. (*Id*. at 11.) As Dragasits was about to answer, Archuleta tripped him from behind, causing Dragasits to hit his head on the asphalt floor. (*Id*.) Quijada was facing Dragasits, saw what was happening behind him, and extended his arms as if to try to catch Dragasits. (*Id*.) Archuleta then sat on Dragasits's back for several minutes preventing him from breathing and called in a code, but "[n]o one around the chow hall area would help." (*Id*. at 11–12.) Defendant correctional officer Massia punched and kicked Dragasits on his left side as he was on his stomach. (*Id*. at 12.) When Dragasits cried for help, defendant correctional officer Garcia placed his boot on Dragasits's head and ground his face into the asphalt.

2

(*Id.*) Quijada and defendant correctional officers Saliewesky and John Does 1–5 were stationed at their posts near the front of the chow line just steps away but did not intervene, whereas defendant Sergeant Scharr walked from the program office near the back of the line, arriving "minutes later," and ordered Archuleta to get off Dragasits. (*Id*. at 12–15; ECF 30-1, at 7–8.)

Dragasits claims that Archuleta lied about this encounter in a rules violation report. Specifically, he alleges that Archuleta omitted his polite statement and instead reported that when she ordered him to walk in the proper direction Dragasits: said "fuck you," lunged at her with his walker, refused her order to get down, and resisted being handcuffed. (ECF 30, at 9–11, 16–17; ECF 30-2, at 17.)

Due to this allegedly false reporting, defendant senior hearing officer Ferrel found Dragasits guilty of a reduced charge of disobeying an order. This resulted in a number of adverse consequences: an extended stay in administrative segregation, a change in classification points raising him from level 3 to level 4 custody, a transfer to the administrative segregation unit at a level 4 prison, 212 days at the San Diego County Jail where conditions were worse than a level 4 prison, a delay in arranging to be housed at a level 2 prison where he currently resides, and potential parole consequences. (ECF 30, at 18–19, 21; ECF 30-1, at 17, 20–21, 32.) Ferrel did not read Dragasits's two-page written description of the events—or include it in the record—and refused Dragasits's requests for medical records, to have Archuleta attend the hearing, and to announce at chow that he was looking for witnesses. (ECF 30, at 20–21.) At the disciplinary hearing, Quijada wrote: "I didn't see the incident," referring to the initial interaction with Archuleta, in response to a question by Dragasits, despite monitoring the area during the incident.  (*Id*. at 11.)

Six months after the hearing, too late to prevent its consequences, defendant retired Warden Covello granted Dragasits's appeal in part and ordered the rules violation report to be reissued and reheard on the basis that Archuleta's absence at the hearing violated due process. (*Id*. at 21.) Dragasits claims that defendants Scharr and Captain Benyard are liable as supervisors of his assaulters—Archuleta, Massia, and Garcia—and of those who failed

3

to intervene—Quijada, Saliewesky, and John Does 1–5. Dragasits specifically alleges that these supervisors failed to intervene, because they signed and approved the false rules violation report either without interviewing the relevant witnesses or after conspiring to conceal those interviews. (*Id*. at 22–24.) Dragasits claims defendant correctional officer Godinez is liable as a supervisor of defendant investigating employee Avila for approving Avila's investigative report and for approving the reissued rules violation report without noticing Archuleta's false statements. (*Id*. at 24.) He claims defendant Lieutenant Ortiz is liable as a supervisor of Scharr, Archuleta, Massia, and Garcia for not stopping the false rules violation report, for not making available to hearing officer Ferrel a video interview of Dragasits giving his version of the events, and for not making statements by Quijada, Saliewesky, and inmate Ballard available to Ferrel. (*Id*. at 25–26.)

With respect to his appeals, Dragasits claims defendant Warden Stewart is liable as a supervisor for delaying review at the second-level review of the appeal of the rules-violation finding, which caused him mental turmoil in reaching the third-level of review to exhaust his administrative remedies as necessary to file a lawsuit to obtain access to the courts. (*Id*. at 26–27.) Defendant Lieutenant Calvert, in concert with defendant hiring authority John Doe 6, delayed, rejected, or cancelled inmate grievances due to time constraints. (*Id*. at 5, 27.) Defendant appeals coordinator Frijas denied Dragasits's staff complaint against Ferrel and delayed grievances. (*Id*. at 27.) Defendant appeals examiner Allen rejected an appeal due to time constraints, and defendant appeals examiner Gonzalez refused to accept an appeal of an inmate grievance. (*Id*. at 27–28.)

With respect to the second hearing on the reissued rules violation report, Dragasits states that Archuleta's account is so absurd and full of lies that everyone "who read it, are part of its implementation or approval, must be held accountable." (*Id*. at 28–29.) He alleges defendant Captain Luna accepted and classified it despite it being based on Archuleta's false narrative. (*Id*. at 7, 28–29.) Defendant investigating employee Roe failed to ensure Archuleta appeared at the rehearing. (*Id*. at 29.) Defendant Nuckles served as the senior hearing officer at the two-day rehearing and allowed Dragasits's medical records to

4

be introduced but did not include them in the record or indicate why Archuleta did not appear on the first day. (*Id*. at 30.) On the second day, Nuckles told Dragasits that he could plead guilty to the lesser charge of behavior that might lead to violence if he agreed to waive Archuleta's presence, as she was on mental-health leave, but the statement about mental-health leave is not included in the record. (*Id*.) Nuckles found there was insufficient evidence to support the charge of assault on a peace officer and found Dragasits not guilty. (*Id*. at 32.) Nuckles then found him guilty of a lesser charge of disobeying a direct order, without taking the required steps of reissuing the rules violation report and holding a new hearing. (*Id*.; ECF 30-2, at 34.) Dragasits contends a fair hearing was not possible without exploring the reasons Archuleta was on mental-health leave and its relevance to the charge. (ECF 30, at 30–31.) He alleges that Avila reissued the rules violation report in which he illegally entered information on Archuleta's behalf because she was unavailable, and that Godinez and Luna as Avila's supervisors should have investigated Avila's action. (*Id*. at 31.) He claims Nuckles, Luna, Godinez, and Roe knew of Archuleta's mental state and are responsible for allowing a mentally disturbed officer to be in a position to attack him and falsify a rules violation report. (*Id*.) He alleges defendant Lieutenant Keener did not investigate Archuleta's absence on mental-health leave. (*Id*. at 6.)

Dragasits alleges that defendant Swaim, an associate warden and chief disciplinary officer, is culpable because his name is on a report of the rehearing. (*Id*. at 8, 32.) He alleges that John Does 7–8—who are defendants and final response officers from the office of appeals—concluded that the second-level response to his appeal was final, and thereby refused to review or answer his challenge to that response. (*Id*.) He claims defendant chief disciplinary officer Juarez was the last line of defense against the disciplinary charge and failed to see to it that Dragasits had a fair and impartial hearing. (*Id*. at 33.) Dragasits contends that defendant California Department of Corrections and Rehabilitation is responsible for his assault by hiring and failing to train and supervise the defendants. (*Id*. at 34–36.)

Dragasits sued these defendants for violating his First Amendment rights to free

24-cv-1257-AGS-SBC

speech and access to the courts, his Eighth Amendment right to be free from the use of excessive force, his Fourteenth Amendment right to due process, and state laws prohibiting intentional infliction of emotional distress and assault and battery. (*Id*. at 9, 11, 13, 19, 22, 34, 37–39.)

## B.    Eighth Amendment Claims

The Eighth Amendment forbids prison officials from "the unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6–7 (1992).

Dragasits's allegations are sufficient to survive the "low threshold" of screening with respect to an Eighth Amendment claim against defendants Archuleta, Massia, and Garcia-—who are alleged to have attacked and beaten him without cause. *See Wilhelm*, 680 F.3d at 1123.

Dragasits also alleges that defendants Quijada, Saliewsky, and John Does 1–5 violated the Eighth Amendment by failing to intervene. The Eighth Amendment imposes a duty on prison officials to "'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832; *see Cunningham v. Gates*, 229 F.3d 1271, 1289–90 (9th Cir. 2000) (officers have a duty to intercede when fellow officers violate constitutional rights, but liability does not attach when officers do not have a "realistic opportunity" to intercede). Dragasits alleges Quijada approached him, saw Archuleta trip him from behind, and extended his arms as if to catch him, but did not intervene to stop Archuleta sitting on him, Massia kicking him, or Garcia grinding his face into the asphalt. (ECF 30, at 11–13.) Dragasits alleges Saliewsky and John Does 1–5 were standing with their backs to the wall near the front of the chow line a few feet away but did not intervene, whereas defendant Sergeant Scharr walked from the program office near the back of the line arriving "minutes later" and ordered Archuleta to get off Dragasits. (*Id*. at 12–15; ECF 30-1, at 7–8.) Those

24-cv-1257-AGS-SBC

allegations plausibly allege an Eighth Amendment failure-to-protect claim against Quijada, Saliewsky, and John Does 1–5 because they are alleged to have had a "realistic opportunity" to intervene and failed to do so. *See Cunningham*, 229 F.3d at 1289–90. Although the failure to protect claims against Saliewsky and John Does 1–5 were dismissed without further leave to amend as apparently futile as a result of Dragasits's failure to cure pleading defects after being notified of their requirements (*see* ECF 16, at 5), in light of the additional allegations supporting this claim, the Court grants Dragasits's request for reconsideration of that decision.

Although Dragasits has stated a claim against John Does 1–5, it is rarely possible for the U.S. Marshal to execute service with a party's true name. Thus, before this Court can order service, Dragasits must identify the John Doe defendants by their true names and substitute those individual persons in place of each unnamed Doe. *See Walker v. Sumner*, 14 F.3d 1415, 1422 (9th Cir. 1994) (requiring plaintiff to "furnish the information necessary to identify the defendant" to permit service). When the identity of an alleged party is not known before filing an action, the Ninth Circuit allows a plaintiff to pursue discovery to identify the unknown Does, unless it is clear that discovery would not uncover their identity or the complaint should be dismissed for other reasons. *See Wakefield v. Thompson*, 177 F.3d 1160, 1163 (9th Cir. 1999).

Accordingly, Dragasits is entitled to have the U.S. Marshal effect service of the summons and complaint against defendants Archuleta, Massia, Garcia, Quijada, and Saliewsky, but not (yet) on the Doe defendants. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases.").

## C.    Due Process Claim

Dragasits once again claims he was denied due process during the hearing and rehearing on the original and reissued rules violation reports, as well as in the appeals of those hearings. He requests reconsideration of the order dismissing those claims without further leave to amend. (ECF 30, at 18–33; ECF 30-1, at 1–44; ECF 30-2 at 1–39.) That dismissal ruling was premised on Dragasits's failure to identify a protected liberty interest;

7

that is, he did not allege that his sentence was increased in "an unexpected manner" or that he was subject to restrictions imposing "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (*See* ECF 16, at 7–8 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).) Dragasits attempts to cure that defect by detailing the consequences of the rules violation, such as his extended stay in administrative segregation and the continuing blot on his record, which may adversely affect his parole chances. (ECF 30, at 18–19, 21; ECF 30-1, at 17, 20–21, 32.)

Dragaistis was previously informed that he does not have a protected liberty interest in the processing of his inmate grievances, to be free from transfers and custody level increases, or from a rules-violation report based on a false narrative. (ECF 16, at 7–8.) He also lacks a liberty interest in being free from administrative segregation. *See Sandin*, 515 U.S. at 485 (subjecting a prisoner to administrative segregation does not implicate due process because it is "within the expected perimeters of the sentence imposed"). Nor can he rely on possible adverse parole consequences. *See id*. at 487 (holding that potential impact on parole of a disciplinary charge is "simply too attenuated to invoke the procedural guarantees of the Due Process Clause"). The Court also found Dragasits received the process he was due under the federal Constitution because there was sufficient evidence in the record in Archuleta's statement to support the finding of guilt. (ECF 16, at 8–9.) Dragasits also believes that Archuleta's statement was potentially unreliable, given that she was on mental-health leave months after the event. But such speculation is insufficient to cure that pleading defect for the reasons previously noted. *See Superintendent v. Hill*, 472 U.S. 445, 455 (1985) ("Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence.").

Dragasits has not cured the defects in his due process claim, and the Court declines to reconsider its dismissal of this claim without leave to amend.

**E.    First Amendment Free-Speech and Access-to-Courts Claims**

Dragasits renews his First Amendment claims of free-speech and access-to-court

24-cv-1257-AGS-SBC

violations, which were previously dismissed without leave to amend. (*See* ECF 16, at 9–10.) The access-to-courts claim was dismissed because it was clear Dragasits could not allege an actual injury—meaning *actual* prejudice with respect to contemplated or existing litigation—nor the loss of a potentially meritorious claim. (*Id*. at 9.) The Court also found the free-speech allegations failed to state a claim because Dragasits was present at both disciplinary hearings where he made statements, and his appeals reflected his written statements. (*Id*. at 10.) Dragasits has once again failed to cure these defects, and the Court therefore declines to reconsider the dismissal without leave to amend of his First Amendment claims.

**F.      Supervisor Liability**

Dragasits once again seeks to bring claims against defendants in their supervisory capacities. The supervisor-liability claims were dismissed with leave to amend because Dragasits had set forth only conclusory allegations that failed to plausibly show any defendant was personally involved in the alleged constitutional violations. (ECF 16, at 10.) "In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Once again, the conclusory allegations regarding supervisors Scharr and Benyard are deficient. (*See* ECF 30, at 22–24.)

Plaintiff claims Ortiz, Godinez, Stewart, Calvert, Allen, Gonzalez, Frijas, Luna, and John Doe #6 are liable for failure to supervise other defendants during the disciplinary proceedings. (*Id*. at 24–28.) Because Dragasits does not plausibly allege a federal constitutional violation in the disciplinary proceedings, he is unable to state supervisory claims against those individuals. *See Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074–75 (9th Cir. 2013) (supervisors may only be held liable if they were "personally involved in the constitutional violation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation").

Dragasits also alleges Nuckles, Luna, Godinez, and Roe knew of Archuleta's mental

state and are responsible for allowing a mentally disturbed officer to be in position to attack him. (ECF 30, at 31.) This claim is based on speculation that Archuleta's absence on mental-health leave months after the events is potentially connected to her assault on him. Vague and speculative allegations of official misconduct fail to state a section 1983 claim. *Iqbal*, 556 U.S. at 678 ("The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully.").

Dragasits also alleges that the California Department of Corrections and Rehabilitation is responsible for his assault by hiring and failing to train and supervise the other defendants. (*Id.* at 34–36.) Because California has not waived its Eleventh Amendment immunity with respect to claims brought under 42 U.S.C. § 1983 in federal court, the CDCR is immune from Dragasits's claims for monetary damages. *See Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999). As to the only remaining claims are based on his alleged assault by prison officers in 2018, Dragasits is not entitled to injunctive relief. Dragasits has previously been made aware of the elements of supervisor liability, and it is now clear he is unable to state such a cause of action. Thus, these claims are dismissed without further leave to amend for failure to state a claim. *See Schmier v. U.S. Court of Appeals for the Ninth Circuit*, 279 F.3d 817, 824 (9th Cir. 2002) (recognizing futility of amendment as a proper basis for dismissal without leave to amend).

## G.   State-Law Claims

Dragasits once again brings state-law claims for intentional infliction of emotional distress and assault and battery. (ECF 30, at 37, 39.) The elements of a claim of intentional infliction of emotional distress are "(1) the defendant engages in extreme and outrageous conduct with the intent to cause, or with reckless disregard for the probability of causing, emotional distress; (2) the plaintiff suffers extreme or severe emotional distress; and (3) the defendant's extreme and outrageous conduct was the actual and proximate cause of the plaintiff's extreme or severe emotional distress." *So v. Shin*, 212 Cal.App.4th 652, 671 (2013). For the same reasons the second amended complaint plausibly alleges an Eighth Amendment claim against Archuleta, Massia, Garcia, Quijada, Saliewsky, and John

10

Does 1–5, it plausibly alleges an intentional infliction of emotional distress claim against those defendants.

The same thing is true of the assault and battery claims. The elements of a cause of action for assault in California are: "(1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and (5) defendant's conduct was a substantial factor in causing plaintiff's harm." *So*, 212 Cal.App.4th at 668–69. "The essential elements of a cause of action for battery are: (1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching." *Id*. at 669. For the same reasons the second amended complaint plausibly alleges an Eighth Amendment claim against Archuleta, Massia, Garcia, Quijada, Saliewsky, and John Does 1–5, it plausibly alleges assault and battery claims against them.

## CONCLUSION

Accordingly, the Court orders as follows:

1.     The second amended complaint survives screening regarding the Eighth Amendment and state-law claims against Archuleta, Massia, Garcia, Quijada, Saliewsky, and John Does 1–5. This case may proceed on those causes of action. Otherwise, the remainder of the second amended complaint and supplemental second amended complaint is **DISMISSED** for failure to state a claim.

2.     The Clerk will issue a summons as to the second amended complaint (ECF 30) for Archuleta, Massia, Garcia, Quijada, and Saliewsky. The Clerk must forward that summons to Dragasits along with a blank U.S. Marshal Form 285. The Clerk will provide Dragasits with certified copies of the second amended complaint for use in serving

11

24-cv-1257-AGS-SBC

Archuleta, Massia, Garcia, Quijada, and Saliewsky. Upon receipt of this "In Forma Pauperis Package," Dragasits must complete the USM Form 285 as completely and accurately as possible, *including an address where each defendant may be found and/or subject to service*. *See* S.D. Cal. CivLR 4.1(c). Dragasits must then return the forms to the U.S. Marshal according to the packet's instructions.

3.   The U.S. Marshal must serve a copy of the second amended complaint and summons upon defendants Archuleta, Massia, Garcia, Quijada, and Saliewsky as directed by Dragasits on the USM Form 285. Costs of service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3).

Dated:  April 21, 2026

Hon. Andrew G. Schopler
United States District Judge