Stephen Dragasits AR2176
(Name)
CIM A-5-156L P.O. Box 368
(Address)
Chino Ca 91708
(City, State, Zip)
AR2176
(CDCR / Booking / BOP No.)

FILED

SEP 01 2026

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY [signature] DEPUTY

# United States District Court
## Southern District of California

Stephen Dragasits AR2176,
(Enter full name of plaintiff in this action.)

Plaintiff,

v.

C. Archaleta,
B. GARCIA / MASSIA,
et. al,
,
(Enter full name of each defendant in this action.)

Defendant(s).

Civil Case No. 24-CV-0257-AGS-SBC
(To be supplied by Court Clerk)

THIRD AMENDED
Complaint under the
Civil Rights Act
42 U.S.C. § 1983
a) addition of former John Doe now known as M. NIETO
b) addition of a supplemental consideration with new additional exhibits for evaluation by the court and to add to the body of the complaint

**A. Jurisdiction**

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional authority, list them below.

______________________________.

**B. Parties**

1. Plaintiff: This complaint alleges that the civil rights of Plaintiff, Stephen Dragasits (print Plaintiff's name) AR2176, who presently resides at CIM A-5-156L P.O. Box 368 Chino Ca 91708 (mailing address or place of confinement), were violated by the actions of the below named individuals. The actions were directed against Plaintiff at R.J. Donovan CORRECTIONAL Facility (institution/place where violation occurred) on (dates) 11/24/18 (Count 1), 11/24/18 (Count 2) and other times (Count 3).

* Plaintiff asks the court to reconsider all dismissed defendants due to new included information/exhibits.

2

2. Defendants: (Attach same information on additional pages if you are naming more than 4 defendants.)

Entity of State of California Government

1) Defendant Department of Corrections resides in California,
(name) (County of residence)
and is employed as a Responsible party for Inmates. This defendant is sued in
(defendant's position/title (if any))
his/her ☐ individual ☒ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: Defendant has competent Jurisdiction over any and all inmates housed and confined in the Department of Corrections and Rehabilitation, responsibity in the training & making sure ADA rights are adhered to. (inmates w/walkers)

2) Defendant J. Macomber is the Secretary resides in of the C.D.C.R.,
(name) (County of residence)
and is employed as a officer of the State. This defendant is sued in
(defendant's position/title (if any))
his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: He/She is responsible for the safety and security of all inmates held and confined therein. Responsible to implement & succeed in the training of officers in the rights of ADA inmates w/walkers & head of line privelege to eat.

3) Defendant P. Covello is the Warden resides in State of Calif.,
(name) (County of residence)
and is employed as a Warden (now retired). This defendant is sued in
(defendant's position/title (if any))
his/her ☐ individual ☒ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: As Warden he is responsible for the safety and security of all inmates confined or held therein. Responsible for the actions of all officers at R.J. Donovan Prison, & seeing to all officers obey the rights of ADA inmates w/ walker

4) Defendant C/O Archuleta resides in R.J. Donavan State Pris.,
(name) (County of residence)
and is employed as a Corrections officer at Donavan. This defendant is sued in
(defendant's position/title (if any))
his/her ☐ individual ☒ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: This defendant was employed and working at the time and is a peace officer within the meaning of authority and law, carrying out responsible procedures, following the law, & knowing the rights of ADA inmates w/walkers

5) Defendant C/O Massia resides R.J. Donavan State Prison and is employed as a Corrections officer and working at the time and is a peace officer within the meaning of authority and color of law. also being sued in hi/her individual and official capacity, by assaulting a restrained ADA inmate on the ground, kicking & punching plaintiff's left side, breaking a rib

6) Defendant CO B. Garcia, resides in R.J. Donavan and is employed as a Corrections officer at the time and is a peace officer within the meaning of color of law and authority. The Defendant is being sued in his/her individual and official capacity, using his knee, placing on top of restrained ADA plaintiff's head & grounding his face into the asphalt.

Case 3:24-cv-01257-AGS-SBC Document 30 Filed 01/30/26 PageID.404 Page 1 of 40

Stephen Dragasits AR2176
(Name)
CIM A-MH-156L
P.O. Box 368
(Address)
Chino CA 91708
(City, State, Zip)
AR-2176 CIM Prison
(CDCR / Booking / BOP No.)

FILED
Jan 30 2026
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY s/ danielmartinez DEPUTY

# United States District Court
## Southern District of California

Stephen Dragasits,
(Enter full name of plaintiff in this action.)

Plaintiff,

v.

Ca. Dept. of Corr. and Rehab.
Dir. of CDCR. J. Macomber, Sec. of CDCR.
P. Covello, Warden.
C/O Archelta
C/O Messia, C/O B.E. Garcia, et al.,
(Enter full name of each defendant in this action.)

Defendant(s).

Civil Case No. 24-cv-1257-AGS-SBC
(To be supplied by Court Clerk)

UPDATED RECONSIDERATION OF 3rd Amended Complaint under the Civil Rights Act 42 U.S.C. § 1983 supplemental

A. Jurisdiction

Jurisdiction is invoked pursuant to 28 U.S.C. § 1343(a)(3) and 42 U.S.C. § 1983. If you wish to assert jurisdiction under different or additional authority, list them below.
The Court has jurisdiction also under 28 U.S.C. 1331, 1343(a)(3) and 1367, 1391(b)(1).

B. Parties

1. Plaintiff: This complaint alleges that the civil rights of Plaintiff, Stephen Dragasits (print Plaintiff's name), who presently resides at CIM P.O. Box 368 A-MH-156L Chino Ca 91708 (mailing address or place of confinement), were violated by the actions of the below named individuals. The actions were directed against Plaintiff at R.J. Donovan CDCR and Sec of CDCR et al., (institution/place where violation occurred) on (dates) 11/24/18 (Count 1), 11/24/18 (Count 2), and 11/24/18 (Count 3). & others

Page 2a

New addition as directed by U.S. district Judge

2. Defendants: (Attach same information on additional pages if you are naming more than 4 defendants.)

Defendant M. NIETO (name) resides in San DIEGO (County of residence), and is employed as a Correctional officer (defendant's position/title (if any)). This defendant is sued in his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: A former John Doe, now known, as an officer stationed at the chow hall on Nov 24 2018, charged with failure to protect defendant when attacked and prone face down on the asphalt.

Defendant ______ (name) resides in ______ (County of residence), and is employed as a ______ (defendant's position/title (if any)). This defendant is sued in his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: ______

Defendant ______ (name) resides in ______ (County of residence), and is employed as a ______ (defendant's position/title (if any)). This defendant is sued in his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: ______

Defendant ______ (name) resides in ______ (County of residence), and is employed as a ______ (defendant's position/title (if any)). This defendant is sued in his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: ______

2. Defendants: (Attach same information on additional pages if you are naming more than 4 defendants.)

7) Defendant SALIEWSKY (name) CORRECTIONAL OFFICER resides in California (County of residence), and is employed as a Responsible party for inmates (defendant's position/title (if any)). This defendant is sued in his/her ☒ individual ☒ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: Defendant has competent Jurisdiction over any and all inmates housed and confined in the Department of Corrections and Rehabilitation. INTERVIEWED AND WAS ON THE SCENE AT 11/24/18 ~5:20pm

8) Defendant Hernandez (name) resides in California (County of residence), and is employed as a Responsible party for inmates (defendant's position/title (if any)). This defendant is sued in his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: Defendant has Competent Jurisdiction over any and all inmates housed and confined in the Department of Corrections and Rehabilitation.

9) Defendant Ortiz, LT. (name) resides in California (County of residence), and is employed as a Responsible party for inmates (defendant's position/title (if any)). This defendant is sued in his/her ☒ individual ☒ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: Defendant has Competent Jurisdiction over any and all inmates housed and confined in the Department of Corrections and Rehabilitation. CONDUCTED INTERVIEW ON VIDEO W/PLAINTIFF & W/OTHERS.

10) Defendant Ferrel, LT. (name) SHO AT INITIAL HEARING of plaintiff resides in California (County of residence), and is employed as a Responsible party for inmates (defendant's position/title (if any)). This defendant is sued in his/her ☒ individual ☒ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: Defendant has Competent Jurisdiction over any and all inmates housed and confined in the Department of Corrections and Rehabilitation. AS SHO, VIOLATED PLAINTIFF'S 1st & 14th AMEND RIGHTS

11) Defendant Avila resides in California and is employed as a Responsible party for inmates. This Defendant is sued in his/her individual and official capacity. Under the Color of Law, Defendant has competent Jurisdiction over any and all inmates housed and confined in the Department of Corrections and Rehabilitation. Acted as I/E for plaintiff & violated plaintiff 1st & 14th AMENDMENT RIGTS in that her offical capacity as well as individual.

**Continued**

2. Defendants: (Attach same information on additional pages if you are naming more than 4 defendants.)

12) Defendant **E. Benyard**, Capt resides in **San Diego, CA**,
(name) (County of residence)
and is employed as a **Corrections officer at R.J.D.F.** Capt D YARD. This defendant is sued in
(defendant's position title (if any))
his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: **Violated and/or conspired to violate plaintiff's 1st, 8th**, 14th **Amendment rights and due process**. ISSUED & published 'D' Yard rules & regulations ~~which contain ADA inmates~~ w/walkers have head of line privelege when going to eat at the chow hall.

13) Defendant **N. Scharr** SGT resides in **San Diego, CA**,
(name) (County of residence)
and is employed as a **Corrections officer at R.J.D.F.** This defendant is sued in
(defendant's position title (if any))
his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: **Violated and/or conspired to violate plaintiff's 1st, 8th**, 14th **Amendment rights and due process**. Should not have approved Archuleta's RVR, ~~Should have known & conducted a proper investigation ON Nov 24, 2025~~ on why Archuleta did not allow head of line privelege to eat at Chow hall ~~per yard rules & regulations~~

14) Defendant C.J. **Gonzales** CC II resides in **San Diego, CA**,
(name) (County of residence)
and is employed as a **Corrections at R.J.D.F.** appeal coordinator/examiner. This defendant is sued in
(defendant's position title (if any))
his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: **Violated and/or conspired to violate plaintiff's 1st, 8th Amendment rights and due process**

15) Defendant **C. Godinez** resides in **San Diego, CA**,
(name) (County of residence)
and is employed as a **Corrections officer at R.J.D.F.** This defendant is sued in
(defendant's position title (if any))
his/her ☐ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: **Violated and/or conspired to violate plaintiff's 1st, 8th**, 14th **Amendment rights and due process**. AS supervisor, approved a deficient RE [illegible] ~~by CO Attila which was seriously deficient of proper~~ requests

2. Defendants: (Attach same information on additional pages if you are naming more than 4 defendants.)

16) Defendant Nuckles Lt. (name) resides in Kern Valley (KVSP) Calif. (County of residence) and is employed as a Lt. Supervisor at KVSP (defendant's position title (if any)). This defendant is sued in his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: SHO at plaintiff's rehearing and as such violated the 1st & 14th Amendment rights of plaintiff at this hearing and the DHR, Disciplinary Hearing Results.

17) thru 21) Defendant John Does 1 thru 5 (name) resides in San Diego RJDCF (County of residence), and is employed as a correctional officers (defendant's position title (if any)). This defendant is sued in his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: As CO's at RJDCF D Yard, assigned to observe and maintain order in front of the chow hall at supper time on 11/24/2018 & violated plaintiff's 8th Amendment right to be free of cruel & unusual punishment

22) Defendant R. Calvert Lt. (name) resides in San Diego RJDCF (County of residence), and is employed as a Lt. & appeal reviewing authority (defendant's position title (if any)). This defendant is sued in his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: violated plaintiff's 1st & 14th Amendment rights as an Supervisor reviewing plaintiff's appeals by delaying, rejecting or cancelling legitimate appeals three separate times

23) Defendant Hiring authority John Doe 6 (name) resides in San Diego RJDCF (County of residence), and is employed as a Supervisor/Hiring Authority (defendant's position title (if any)). This defendant is sued in his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: worked in concert with above mentioned defendant Calvert violating plaintiff 1st & 14th Amendment Rights

6

2. Defendants: (Attach same information on additional pages if you are naming more than 4 defendants.)

24 Defendant J. Juarez (name) resides in San Diego RJDCF (County of residence), and is employed as a CDO Chief disciplinary officer (defendant's position title (if any)). This defendant is sued in his/her ☑ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: violated plaintiff's 1st & 8th & 14th Amendment right as he signed & approved the first DHR on 1/13/2019 that had many civil rights violations including an admitted due process violation

25 Defendant Quijada (name) resides in San DIEGO RJDCF (County of residence), and is employed as a correctional officer (defendant's position title (if any)). This defendant is sued in his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: violated plaintiff's 8th & 14th Amendment right to be free of cruel & unusual punishment & failure to intervene to prevent that 8th Amendment right, just feet away from incident

26 Defendant J. Steuart (name) resides in San DIEGO RJDCF. (County of residence) and is employed as a Warden (A) R.J.D.C.F. (defendant's position title (if any)). This defendant is sued in his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: violated plaintiff's plaintiff's 1st & 14th Amendment rights as supervisor & reviewing authority

* NEW ADDITION

Defendant Keener (name) resides in San DIEGO (County of residence), and is employed as a Lt. (defendant's position title (if any)). This defendant is sued in his/her ☑ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: violated the 14th amendment, DID NOT act to investigate the absence of defendant Archuleta due to mental health leave

2. Defendants: (Attach same information on additional pages if you are naming more than 4 defendants.)

27 Defendant E. Frijas (name) resides in San Diego RJDCF (County of residence), and is employed as a CCII Appeal Coordinator (defendant's position title (if any)). This defendant is sued in his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: violated plaintiff's 1st & 14th Amendment rights by screening out/denying 602 appeals, that were legitimate, to go to their intended destination.

28 Defendant K. J. Allen (name) resides in San Diego RJDCF (County of residence), and is employed as a Appeals Examiner (defendant's position title (if any)). This defendant is sued in his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: violated plaintiff's 1st & 14th Amendment rights by rejecting or not accepting plaintiff's first appeal/dealing with excessive force/cruel & unusual punishment.

29 Defendant C. Gonzales CCII (name) resides in San Diego RJDCF (County of residence), and is employed as a Appeal coordinator/examiner (defendant's position title (if any)). This defendant is sued in his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: violated 1st & 14th Amendment rights of plaintiff by not accepting a legitimate appeal.

30 Defendant J. Luna Capt. (name) resides in San Diego R.J.D.C.F. (County of residence), and is employed as a captain/supervisor (defendant's position title (if any)). This defendant is sued in his/her ☑ individual ☑ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: violated plaintiff's 1st & 14th Amendment rights by accepting a false RVR, classifying it, & ignoring or conspiring not to know established yard rules & regulations of ADA inmates w/walkers

8

2. Defendants: (Attach same information on additional pages if you are naming more than 4 defendants.)

31 Defendant S. Swaim (name) resides in San DIEGO RJD.C.F. C.O.O (County of residence)
and is employed as a associate warden/chief disciplary officer (defendant's position title (if any)). This defendant is sued in his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: violated plaintiffs 1st & 14th Amendment rights by putting his name & approving the second DHR on 10/30/2019

32 Defendant John Doe #7 (name) resides in Sacramento/OFFICE of APPEALS (County of residence)
and is employed as a Office of Appeals FINAL response (defendant's position title (if any)). This defendant is sued in his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: On 11/22/21 violated plaintiffs 1st & 14th Amendment right for failure to respond to a legitmate complaints in a denied second level appeal of SHO Lt. Nuckles Amendment violated DHR.

33 Defendant John Doe #8 (name) resides in Sacramento / OFFICE OF APPEALS (County of residence)
and is employed as a Office of Appeals Final Response (defendant's position title (if any)). This defendant is sued in his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: On 12/8/2021, violated plaintiffs 1st & 14 Amendment right for denying my appeal for a claim against RJDCF.

34 Defendant J. Roe (name) resides in Kern Valley K.V.S.P. (County of residence)
and is employed as a C.O. IE investigative employee (defendant's position title (if any)). This defendant is sued in his/her ☐ individual ☐ official capacity. (Check one or both.) Explain how this defendant was acting under color of law: violated plaintiffs 1st & 14th Amendment Rights as plaintiff investigative employee on second rehearing.

**C. Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary.)

Count 1: The following civil right has been violated: RIGHT OF free speech and to be free of cruel and unusual punishment (E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 1.]

ON Plaintiff's initial encounter with defendant Archuleta on Nov 24, 2018 at supper time, in front of 'D' yard dining hall at RJDCF, I was stopped by defendant Archuleta at the entrance. Plaintiff was told I was going the wrong way, that I had to go back the way I came from. That part of Archuleta's description of the event that day was true. Archuleta also admitted plaintiff Dragasits had a walker. From there Archuleta's lie led to a false RVR against plaintiff to cover up the series of violations that will be covered in this overall complaint that will be presented. (1st, 8th & 14th AMENDment). Plaintiff's story was told to defendant Archuleta that day & time & it was told politely & without vulgarity. The following statements were made to defendant Archuleta and can be backed up as true by medical records and witnesses who observed the initial encounter, several minutes long, up until defendant Archuleta took my CDC ID. The rest of the violations are covered in subsequent counts. Plaintiff stated to defendant: a) came from pill line to get an antibiotic for feet b) feet was surgically repaired days earlier c) feet became infected & was seen earlier that Saturday morning at CTC to get treated & was perscribed an antibiotic which I just picked up d) It was very painful to walk & to follow her direction would be unecessary as e) ADA inmates with walkers have head of line privelege to eat at the chow hall.
f) Took off shoe & sock as a last resort to show my infected right feet with stitches, being red & puffy.

10

Count 1 continued

EVERY time I brought up a fact, Archuleta stated defiantly, "you still have to walk all the way around". Despite my efforts to repeatedly sway defendant Archuleta, she still wanted me to walk an extra 300 yards to get to the same spot where I was standing.

Defendant Archuleta violated my free speech right from being heard or read in her RVR VIOLATION report against me, in which no one in the vicinity observing, could back her story. Thus to cover up her violations, defendant deliberately left out my story, on the RVR.

Defendant Archuleta violated my right to be free from CRUEL AND UNUSUAL PUNISHMENT BY requiring plaintiff to walk an extra 300 yards to eat when I was just a few yards away from the entrance to the chow hall, thus defendant Archuleta acted in a inhumane fashion against plaintiff and ignored plaintiff's serious medical need of an infected foot & obvious unnecessary walking.

It should be noted, that plaintiff's tested score of 12.9 is the highest possible score and it along with other facts, medical included, come up on a CDCR computer when my name & CDC number are entered.

This test score shows I would have done everything possible to tell the facts when presented a legitimate opportunity to do so, thus this multi-complaint civil rights action.

Count 2: The following civil right has been violated: freedom of cruel & unusual punishment, ASSAULT & BATTERY, EXCESSIVE FORCE (E.g., right to medical care, access to courts. due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 2.]

This violation of defendant Archuleta occurs after she took my I.D. and what happened to plaintiff after the supporting facts of COUNT 1 takes place.

Plaintiff, standing for several minutes in front of chow hall, waiting, for the possibility of a SGT being called to the scene, to resolve this, decided to retrieve his walker, hopping on one foot due to the right infected, painful foot being still bare, was about to sit down to put shoe & sock back on, was approached by Co Quijada, who was stationed at the chow hall along with other CO's with their backs against the wall. Quijada was face to face with me wanting to know what my situation was. As I was about to tell him the problem I was facing with ARCHULETA, plaintiff felt his legs go out from under him, unaware of what was taking place. It was defendant Archuleta commiting assault & battery on plaintiff from behind. Falling to the ground and hitting his head hard on the asphalt ground, plaintiff didn't grasp at the time of what was happening. Co Quijada, only feet away, had opened his eyes wide with the look of concern as he put out both his arms as if to try to catch me or stop me from falling. In a question posed to him for plaintiff's RVR hearing, he wrote "I didn't see the incident" to which Archuleta was referring to in her RVR VIOLATION REPORT. Quijada was observing this area the whole time I approached the chowhall, & after. Archuleta then got on my back & called in a code on her radio. She was on my back for several minutes and plaintiff

tried to yell out, "I can't breathe", as the weight of Archuleta on my back prevented me from drawing air into my lungs. No one around the chow hall area would help.

This was a serious situation plaintiff was in, as a 66 year old ADA inmate that had a walker and mobility vest, trying to gasp for breath. In addition, there was a device implanted in my chest, years earlier, that monitored my heart, a loop recorder, which now, because of Archuleta's weight, was pressing hard into my chest. This chip was about 3/4" long and 1/2" wide.

I can now relate to what 'GEORGE Floyd' was experiencing in a somewhat similar situation I was in, as this EXCESSIVE FORCE By Archuleta against me happened before what happened to GEORGE FLOYD.

BEFORE SGT SCHARR, showed up on the scene minutes later, and yelled at her to get up off me, there were 2 other COs who participated in the cruelty against plaintiff (described in next count) with the intent to do harm on a already restrained inmate, causing GBI

Count 3 The following civil right has been violated: RIGHT TO BE FREE FROM CRUEL & UNUSUAL PUNISHMENT, ASSAULT & BATTERY ON a RESTRAINED PERSON, CAUSING BROKEN RIB & OTHER INJURIES with GBI
(E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 2. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 2.]

IN A deliberate attempt to do harm, defendant Massia, kicked and punched plaintiff Dragasits in the left side, while he was face down on the ground, on his stomach, with Achuleta still on his back. The constant pain in plaintiff's left side continued for a long time & only days later while in ADSEG, when bending over, the lower left rib began to protrude from my skin. In an attempt to minimize any further injury to my internal organs, I succeeded to put the rib back in place, after several minutes of failing to do so as I was afraid to move. So after Massia's assault, I tried again to yell for help, not as loud as I would've liked with Archuleta on my back. AGAIN I said "I can't breathe." That effort on plaintiff's part was met by a CO's boot placed on my head and him grinding my face into the asphalt ground causing injuries. I later found out, that day, that the boot belonged to B. Garcia, by DAVID BALLARD. He was arrested by CO's during the time I was getting assaulted, for protesting against what he was seeing in front of him, awaiting to eat at the chow hall. Ballard was put in a holding cage in the gym, next to where I was placed & he told me the name B Garcia as the CO who stepped on my head.

THERE were other inmate witnesses of this abusive event on Nov 24, 2018.

ONE was PATRICK PAWLICKI, whose declaration is included as well as David Ballard, & Ebrahim Haddad. Raymond Gibb can be added to this list as he recognized me on A Yard at CIM, and asked me, are you the ADA guy who got beat up on D Yard at R.J.D.C.F.

KEY EXHIBITS – ILLUSTRATIONS (INCLUDED) OF RJDCF'S D YARD TO VERIFY THIS COUNT/CLAIM



RECONSIDERATION due to original statement hilited by yellow

Count 4 The following CIVIL RIGHT has been violated: The defendants listed, violated plaintiff 8th Amendment right to be free of cruel and unusual punishment as they failed to protect/intervene as they witnessed the attack of plaintiff from behind. CITING EVANS V SKOLNIK (2021) LEXIS#48326

M. NIETO * 4* CORRECTION 8/27/26

Defendants Quijada, Saliewesky, M. NIETO and 4 John Does were stationed at their posts in front of the chow hall at supper time on Nov 24, 2018. To be reconsidered in this 2nd Amended complaint, plaintiff refers to STATEMENT OF FACTS: PRELUDE, included with the 1st Amended complaint, On Page 8 Line 18 (c) and Page 9, IT STATES:

CORRECTIONAL OFFICER STATIONED AT THE CHOW HALL, WHEN INMATES GO TO EAT, ARE THERE TO OBSERVE ANY AND ALL YARD ACTIVITY AND TO IMMEDIATELY ASSIT IN A TROUBLE SITUATION, ESPECIALLY IF A FELLOW OFFICER WAS IN TROUBLE JUST YARDS AWAY FROM WHERE THEY WERE STATIONED. WHEN THESE OFFICERS TOOK NO ACTION ON A STATED SERIOUS 'RVR', IT IS CERTAINLY PLAUSIBLE THAT ARCHULETA LIED ON THIS 'RVR', UP UNTIL THE CODE WAS CALLED BY ARCHULETA WHILE ON PLAINTIFF'S BACK. The key phrase, hi-lighted in yellow, had been previously stated. Defendant Quijada took approx. 3-4 paces or yards, from where he was standing by the wall of the chow hall. That is not more than 3 seconds that it took him to approach me as we began to talk. These other stated defendants, Saleweshy and 5 JOHN DOES, were no further away. As Defendant Quijoda saw plaintiff from where he was originally standing, these other defendants saw plaintiff as well, standing on the track, by himself. There was no 'trouble' situation, as described by ARCHULETA, at this point in time. Thus a 'false RVR.

Count: 4 continued Failure to intervene.

PLAINTIFF, in order to provide more detail in his explanation, has included two (2) illustrations to show an (1) overhead aerial view of the entire 'D' Yard at R.J.D.C.F. and an up close view of a section of 'D' Yard where the doors of the chow hall are seen, and the track where the incident took place and the sidewalk leading up to the entrance of the chow hall. This is where inmates wait in 2 lines for the go ahead to proceed to the chow hall and enter when a CO sees openings at the tables. The track is alway kept clear and is unobstructed for the constant observation of the stationed defendants and the tower officer of the yard, about 20 feet up and 20 to 30 feet South of the chow hall entrance.

These chow hall officers had more than ample time to see an unprovoked attack upon plaintiff from behind, as Quijada saw what defendant Archuleta did. All defendants had ample time to get Archuleta off plaintiff's back. When the code was called, it is required by the yard tower officer to announce 'get down'. This set's up a case where one (1) building housing officer comes to the scene of the trouble. There are usually 2 floor officers and 1 tower officer in each housing building. This is when building officers Massia and B. Garcia came upon the scence and inflicted stated GBI upon plaintiff. These defendant chow hall officers had plenty of time to assist plaintiff and get Archuleta off his back. The time to go from a building to the front of the chow hall, estimated 30-35 seconds. The time for supervisor SGT Scharr to go from his office 90 to 120 seconds.

UPDATED 1/26/2026

- Reconsideration requests to U.S. DISTRICT COURT: Plaintiff is including in his second amended complaint, Counts I respectfully request to be reconsidered using new information/exhibits/illustrations and TITLE 15 FACTS. With this information included in this complaint -

COUNT 6: DUE PROCESS violation along with 1ST Amendment written free speech violation: DUE TO A FALSE RVR

Using a 2021 U.S. District Court Case: L.M. GARCES v M. GAMBOA, under the TITLE: Procedural Due Process, The DISTRICT JUDGE in that case makes clear:

"There are two (2) ways ways that allegations that an inmate has been subject to a false disciplinary report, can state a cognizable civil rights claim.

1) when the prisoner alleges the false disciplinary report was filed in retaliation of an exercise of constitutional rights

2) when the prisoner alleges he was not afforded procedural due process in a proceeding concerning a false report

Plaintiff states that he satisfies both of these ways (1 & 2) above in his stated count 6.

Archuleta issued a false RVR to cover up her violation of the 8th Amendment with a convoluted story to get around her crime. Everyone on the yard at that time saw plaintiff come down the track from the south and stop at the front of the entrance to the chow hall, where a normal conversation occurred with Archuleta from plaintiff, despite the cruel commands from Archuleta to walk back around the yard where I came from. This cruelty coming from Archuleta even after hearing the story of my painful, infected feet after surgery & actually seeing my shoeless, sockless feet.

The second way is also satisfied with a hearing that had numerous due process violations with plaintiff requesting & not getting the accusing officer, yard witnesses, med reports per TITLE 15

Archuleta's cruel and unusual punishment on plaintiff. Taken down from behind, is the only possible way this could have occurred, not from the front as her statement says. As I have disected her statement previously, showing it was false. If a prisoner was crazed enough, 6'1", 218 lbs, no female would have attempted to do what she said and then succeeded taking that person down? No way.

Secondly her statement said, your going the wrong way (not according to yard rules and regulations) turn around and go back where you came from. Already established, plaintiff has a yellow mobility impaired vest and a walker means he need assistance in walking. On top of that she was told I had a serious medical need, showing my foot infection. There was some confirmation that my shoe was off and laying on the ground, as Massia confirmed in a question he answered on an offical form, "he asked for his shoe, to be put back on". This did occur as I was loaded into a golf cart to be taken to TTA medical. On the secondly statement above, By ordering me to go back around the yard and go to the back of the chowline, this also showed her propensity to inflict cruel and unusual punishment in her "order," to "go back around the yard." I contend that she realized, in order to explain her actions and to cover up her crimes on plaintiff, she crafted a false RVR, with possible help from other officers involved in the crimes they committed. Archuleta's false RVR accuses me of something I did not do, left me to prove, that I did no such thing.

This leads to # 2) whereas I allege I was not afforded procedural due process in a proceeding concerning a false report.

Plaintiff has explained that I was not afforded due process at my hearing. I am left with trying to persuade judges these complaints after the fact, are 100% true, That I am completely innocent of any crime & that others participated in the crime of plaintiff not achieving due process.

When an inmate is not afforded the right described in the exhibit included, "inmate rights", none of these rights were provided.

a) accusing officer presence at hearing
b) no medical records for a defence
c) those accused are allowed witnesses at a hearing which was not done* (by the IE as requested)

How do I explain these charges to a parole board that determines my release.

Why was I not afforded a hearing on the lesser charge by LT. Nuckles and in fact, did not follow up on defendant Achuleta's mental health. This was the job of the office of appeal.

* which did not instruct to investigate & deferred to a 2nd level response *

All these issues have to come up in a trial and all defendants and ones that were dismissed, so far, and testify to the truth.

* who was either not aware or refused to acknowledge Archuleta's mental health

The preceding is true and correct to the best of my knowledge. leave

Stephen Disposito

Due to new info and exhibits (9)
plaintiff asks this count to be reconsidered.
Reconsideration

Count 6 The following civil right has been violated: DUE PROCESS DUE TO FALSE RVR AND SUBSEQUENT FAILED DUE PROCESS RVR HEARING & FREE SPEECH
(E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.) violation

Supporting Facts: [Include all facts you consider important to Count 3. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 3.]

CITING: 2021 U.S. DIST LEXIS 137895 L.M. GARCES v. M. GAMBOA. COUNT I Claim of defendant Archuleta's false RVR, combined with a deliberate indifference RVR HEARING by SHO (Serious hearing officer) Lt. H. Ferrel's multitude of due process violations was the major cause of plaintiff's extended ADSEG stay, b) Removal of plaintiff to ADSEG at L.A. COUNTY STATE PRISON IN LANCASTER Ca, a Level 4 Security facility. c) transport back to R.J.D.C.F thru C.I.M. Then sent from R.J.D.C.F. To San Diego County Jail, because I was told by a SGT, that they couldn't or wouldn't keep me at R.J.D.C.F. (because of Archuleta's RVR on plaintiff) Plaintiff was scheduled for a court appearance at San Diego County Superior Court for resentencing. Other detrimental effects on plaintiff are described in the "statement of facts".

The 1st & 14th Amendment violation of SHO Lt. Ferrel were many. 1) Defendant Ferrel started the hearing stating "WE ARE HERE FOR DISOBEYING AN ORDER" To plaintiff this indicated the original charge had been reduced. Only day's later, I found out this was false/a lie, I was informed by an officer that the original charge was upheld only because of my 602 appeal, and was submitted where I stated "REMOVE ME FROM ADSEG IMMEDIATELY and PUT me BACK ON THE YARD", my charge was reduced by Lt Ferrel to "disobeying an order".

2) I had prepared a 2 page statement indicating the true version of events up to and including Nov 24 2018 at Supper time. that included my surgically repaired right foot, that became infected, too painful to walk, front of line privelege for ADA with walker, the assault on me by 3 CO's.

CONTINUATION OF COUNT 6 DUE PROCESS
FALSE RVR, DUE PROCESS RVR HEARING VIOLATION

3) LT. Ferrel picked up my statement, and spent not more than a few seconds reading it & then put the statement down. It should have taken at least 3 to 4 minutes to read.

4) Plaintiff clearly asked LT. Ferrel, "WHERE IS CO ARCHULETA" and told him I have questions to ask her. DEFENDANT Ferrel ignored me. Ferrel didn't even look up at me. TITLE 15, (The bible of CDCR) AFFORDS the inmate to question ACCUSSING officer

5) The last sentence he said was "I find you guilty by a preponderence of evidence". Had I known at the time that he found me guilty of the original charge, I would have insisted on verbally reading my statement & why CO AVILA, as my IE, did not present him with my requests, a free speech violation, also in #6 (BELOW)

6) LT Ferrel did not include my 2 page statement in the final printed DHR, (Disciplinary hearing results), This was a sham hearing from the start to cover up the "assault and battery", excessive force of 3 C.O.'s

Defendant CO AVILA is a defendant in this count of 1st & 14th Amendment AVILA VIOLATED 3 REQUESTS FROM PLAINTIFF; for RVR hearing.

a) HAVE CO ARCHULETA at hearing

b) failed to inform the 5 building tower officers to announce for witnesses for Nov 24, 2018 event at the supper time chow hall. Avila deliberately told me she wouldn't do that. (This was a request in writing)

c) failed to produce the medical records that I requested for my hearing.

These deliberte indifferent VIOLATIONS OF THE 1ST & 14TH AMENDMENT, effectively eliminated plaintiff's defense for a fair and impartial RVR HEARING. *

Case 3:24-cv-01257-AGS-SBC Document 30 Filed 01/30/26 PageID.424 Page 21 of 401

* This led to a detrimental result of an accumulation of classification points (14-16) put on a level 4 yards & being admitted to 212 days of transports & stays at S.D. County Jail. This result of harsh conditions is not what the normal LEVEL 3 classification of prison life the plaintiff was experiencing on level 3 D Yard at RJDCF.

On June 21, 2019, A second level appeal response on log no: RJD-D-19-03397 was written, issued and signed by Defendant Warden Patrick Covello. He was warden of RJDCF at the time of the assault & battery, excessive force, cruel & unusual punishment of plaintiff Dragasits on Nov 24, 2018 at supper time. Among the responses of warden Covello in his written discussion, some true, some false, is the fact that as a result of defendant Archuleta not being present during the hearing as per my request on the (IE) report, defendant Covello noted "as a due process violation." As a result of this admitted 14th Amendment due process violation, defendant Covello partially granted my appeal in ordering a reissuance & a rehearing of RVR Log # 6119874 & insure the SHO makes the Reporting EMPLOYEE available at the hearing as requested by the appellant. The date of this Covello response is 6 months after plaintiff was assaulted & battered, and 5 months after the hearing of DEC 20, 2018. This violation should have been noticed by the defendants listed on the DHR in which Covello wrote that I was issued a FINAL Copy of the disciplinary hearing results affirmed by the CHIEF DISCIPLINARY OFFICER (CDO) on Jan 16, 2019. The preceding information on the admission of guilt of due process was too late for the "CAUSE AND EFFECT" of Lt. Ferrel's hearing which put the plaintiff in UNNECESSARY HARSH SITUATIONS, previously mentioned. Defendants Lt Ferell, C. AVILA, & CDO J. JUAREZ VIOLATED Plaintiff 14th & 1st AMENDMENT RIGHT, as well as Warden Patrick Covello who did not investigate and/or review all of the other complaints issued/submitted in 602 appeals by plaintiff correctly disputing what Covello called "a fair and impartial hearing" & AVILA ignoring other requests by plaintiff in IE REPORT. Also included is C. GODINEZ who Approved AVILA'S IE REPORT as a supervisor.

C. **Causes of Action** (You may attach additional pages alleging other causes of action and the facts supporting them if necessary.)

Count 7: The following civil right has been violated: Deprivation of plaintiff's rights of 1st & 14th AMENDMENT AND SUPERVISOR LIABILITY, ACCESS TO COURTS (E.g., right to medical care, access to courts, due process, free speech, freedom of religion, freedom of association, freedom from cruel and unusual punishment, etc.)

Supporting Facts: [Include all facts you consider important to Count 1. State what happened clearly and in your own words. You need not cite legal authority or argument. Be certain to describe exactly what each defendant, *by name*, did to violate the right alleged in Count 1.]

LISTED Supervisors are responsible or liable for his/her own culpable action or inaction in the training, supervision or control of his/her subordinates. This acquiescence in the constitutional deprivation of which the complaint is made or conduct that showed a reckless or callous indifference to the rights of others. Defendants each of them and all of them, violated the constitutional rights of the plaintiff and to the deprivation of a normal, level 3 prison life. From defendant Archuleta issuing a false RVR and thus supervisor Defendant SGT. Scharr signing and approving this RVR and Captain of Defendant 'D' Yard, Benyard then signing the false RVR in which his own published & issued 'D' Yard Rules & Regulations, early in 2018, clearly state 'INMATES with walkers have head of line privelege at the chow hall to eat.' In Archuleta's RVR, she states "Oragasits was walking the wrong way, against traffic toward the dining hall," then ordered me to walk the track in the correct direction. In Archuleta's next sentence, she mentioned my 'walker'. Archuleta's words in the 'RVR' should have been enough of a red flag in her lack of training, and every supervisor in the chain of command that read that RVR and the admitted due process violated DHR, Disciplinary Hearing Results, should have recognized this due process deprivation of their own 'Rules and REGULATIONS'. Besides these violations of Sgt Scharr and Capt Benyard of due process, Sgt. Scharr further violated plaintiff 1st & 14th Amendment rights, by being the first person of authority on the scene of Nov 24, 2018 at supper time at the chow hall entrance. These violations include:

1) Plaintiff denied free speech after the Nov 24, 2018 incident, by not conducting an interview with plaintiff although he had 2 opportunities to do so. Also a due process violation
2) Plaintiff denied on the spot due process on Nov 24, 2018 after the incident by not conducting any interviews or conspired to conceal such interviews with witnesses who observed what had happened at that time. Some of these witnesses are defendants, CORRECTIONAL OFFICERS QUIJADA, Salieusky and John Doe's 1 thru 5, were all stationed in front of the chowhall. A fair and impartial interview with the defendants, who are charged with failure to intervene on behalf of plaintiff while he was in a position of vulnerabity lying facedown while ARCHULETA SAT on his back, and Massia & B. Garcia inflicted pain on plaintiff unnecessarily, might be why they were possibly interviewed & all of them conspired not to reveal the truth or that defendant Scharr neglected his duties to interview any of them as he had to come to grips as to how a female officer was sitting on the back of a 66 yr old ADA inmate that had a lime green mobility impaired vest and a permanent walker, all the while there are numerous (Forty) able bodied CO's standing around while this is taking place and nobody took charge to get this CO off plaintiff's back. Whatever the reason, this a black eye for RJDCF & CDCR and Sgt Scharr most certainly violated plaintiff rights in this regard.
3) Sgt Scharr is directly responsible for the conduct, training the mental awareness of defendants, Archuleta, Massia & B. Garcia, and their role of CRUEL AND UNUSUAL PUNISHMENT inflicted on Plaintiff.

(1) Therefore, defendant Sgt. Scharr by approving Archuleta's (2) false RVR, and then by captain of "D" yard Benyard approving that RVR, at that point, denied an 'on the spot justice' for the previous reasons. Had they had done their job correctly, observing plaintiff's due process, then, would have saved plaintiff further due process violations and harsh conditions explained in the 'statement' of facts. Plaintiff then would have only had to deal with an infected, painful right foot, injuries from 3 defendant correctional officers which included intense pain in plaintiff's left side from a broken rib, and a concussion, and the emotional turmoil, depression and anxiety from the physical pain of the unnecessary injuries of this event that occurred on Nov 24, 2018.

The following officers, in their role as supervisors are also included as defendants.

(3) C. Godinez: name appears on DHR. On 12/17/2018 at (Time) 09:53:10 STATES IE Report approved by supervisor. The IE report by defendant C. Avila, has already been stated in this complaint for 1st and 14th AMENDMENT violations. In his role as supervisor for this IE Report, becomes culpable as def Avila violated plaintiff's already stated rights. On 7/31/2019, def. Godinez also is culpable for the same violations for his role as supervisor for approving the reissue of the RVR listed on the DHR of plaintiff's rehearing that took place 10/5/2019 by SHO LT. Nickles. (defendant) Plaintiff reiterates RVR is false and Godinez, also as supervisor should have noticed that Archuleta's description in her report is faulty due to regulation for head of line privelege for ADA inmates w/walkers to eat at the chow hall, as well as 'take down' of a mobility impaired 66 yo old with walker.

D

(4) DEFENDANT E. ORTIZ - violated plaintiff's 1st, 8th, & 14th amendment rights as supervisor to defendants Scharr, Archuleta, Massia & B. Garcia, as follows:

a) not knowing or not interjecting the violation of defendants' Archuleta false RVR of the right of ADA inmates with walkers access to the head of the line privelege to eat at the chow hall. All defendants listed in this complaint, including Ortiz, is responsible and job requirement of knowing Yard Rules and regulations, published by the captain, and distributed to all inmates in the beginning of 2018.

b) Ortiz further violated plaintiff's rights of the 1st, 8th & 14th amendment by not revealing or make readily available to SHO LT Ferrel, a key defendant, & responsible for a due process violated hearing, a video interview conducted on Nov 27, 2018 at ADSEG/R.J.D.C.F. Ortiz mentions this interview on a staff complaint 602 against defendants, Co's Archuleta, Massia & B. Garcia for "unprofessional behavior & excessive force." This is stated in a second level response on a staff complaint with a 602 appeal submitted by Dragasits, log# RJD-D-18-08095. On this 602 appeal and on this video interview, plaintiff clearly states the truth of the events leading up to being stopped by Archuleta at the entrance at the chow hall and cordially reasoning with her for minutes, not Archuleta's lie that she stated on the false violation report submitted by Archuleta, which no one could confirm her side of the story, stating I didn't stop

c) Also, further violating plaintiffs due process, Ortiz states that witnesses Co M Salkowsky, R. Quijada & inmate D Ballard AE-41K



CV-127 (09/09)
PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

were interviewed and not given access to these statements of the witnesses to plaintiff and will demand that access be given to plaintiff.

d) The printed name of defendants Lt E. Ortiz & P. Covello at the end of appeal log# RJD-D-18-08095. SIGNED BY E. Ortiz on 1/24/19 and beside P. Covello's printed name is the signature of defendant Supervisor J. Stewart on 2/13/19 and a defendant as the reviewing authority, and culpable for a 1st & 14th amendment violation as plaintiff's appeal was denied at this 2nd level response & reiterates that the claims against defendant Ortiz make J. Stewart responsible as supervisor.

(5) b) Stewart further violated plaintiff's due process rights by not making sure his 2nd level response in a more timely manner. His signature on log # 8095 being recorded at 2/13/19, plaintiff could not have received his response no earlier than 5/19/2019. That is the date from plaintiff's EXTERNAL MOVEMENT" SHEETS, that had to be printed at the request of the plaintiff to prove he was not at fault for the untimely responses he was accused of. When plaintiff received the 2nd level response at KVSP, KERN VALLEY STATE PRISON, there was an indicator of the letters (KVSP) with a circle around it, indicating the location where plaintiff was housed at the time for delivery. Appeal log # 8095 was just one example of the extreme effort of plaintiff trying to exhaust remedies through the 602 inmate appeal process and to get to the third and final level of this process. Again this type of delay by all stated defendants caused unnecessary turmoil mentally, as plaintiff had to

f

Submit many 602 appeals as I was not getting a timely response to get to the third level of the required appeal process. Appeal coordinators & defendant supervisors had access to plaintiff's external movements and what prison housed him at the time these responses were completed, & to not put plaintiff through this apparent due process & free speech violations to try to get plaintiff's free speech heard & access to the courts.

DEFENDANTS OF THE APPEAL PROCESS 1st & 14th AMENDMENT VIOLATIONS ARE, AS EXPLAINED IN THE PRECEDING PARAGRAPHS:

1) LT. R. Calvert as appeal reviewing authority in concert with unnamed John Doe HIRING AUTHORITY, delayed, rejected or canceled legitimate 602 appeals due to time constraints on dates Dec 16, 2019 log # RJD-D-19-07689 & rejected Log #'s RJD-R-08399 on Apr. 10, 2020 & RJD-X-19-06412 (4/2/20)

3) E. FRIJAS as Appeal coordinator at RJDCF (CCII) violated plaintiff's free speech & due process rights by denying a staff complaint against SHO LT. Ferrel for multiple due process violations which was later admitted by Warden P. Covello. Defendant Frijas further committed due process & free speech violations on time constraints, delaying due process and causing emotional turmoil have to submit rewrites of previous 602's submitted to get to the third & final level. Plaintiff's evidence was overwhelming.

4) K.J. ALLEN APPEALS EXAMINER: violated plaintiff's 1st & 14th AMENDMENT RIGHTS by rejecting or not accepting APPEAL LOG# RJD-18-08095 due to time constraints, when submitted evidence proved otherwise, causing more emotional turmoil for plaintiff.

Defendant
5) C. GONZALES (CCII) APPEAL COORDINATOR/EXAMINER Violated plaintiff's free speech & due process by not accepting a 602 appeal # KVSP-0-19-02130 as plaintiff was attempting to meet previous requirements set by other coordinators to rewrite other appeal examiners. Further violated 1st & 14th AMENDMENT RIGHTS, threatening appeal restrictions & cancellations of appeals & free speech.

On plaintiff's ordered rehearing by Warden P. Covello on 7/22/2019 the following defendants associated with this rehearing VIOLATED Plaintiff's 1st & 14th Amend. RIGHTS

(1) Defendant J. LUNA on 8/1/2019, classified Archuleta's RVR as indicated on reheard DHR. As Already specified on previous complaints of Archuleta's false RVR as to what established rules & regulation of prison yards. (A) Thru F) should be included in statement of facts)

A) D YARD @ R.J.D.C.F. published in early 2018, inmates with walkers have head of line privelege. Archuleta in her RVR narrative established Orogasits's walker & approaching the chow hall

B) Archuleta ordered me to stop, which plaintiff did, for several minutes, talking to ARCHULETA cordially as witnesses could attest to.

c) To cover up the lapse in the time frame that occurred after B)'s statement, she then lied.

d) Archuleta in her RVR narrative stated that I didn't stop and ordered me to get down. So this would have occurred before many witnesses, including CO's stationed in front of the chow hall, who would have assisted her if this actually did occur.

e) The term 'get down' is used by CO's if there is a disturbance, a fight on the yard between 2 inmates or if there is a disturbance on another yard. This term is only used for the general population of inmates on a yard to sit down in the place where they are at, so that officers can assist in the disturbance & to get order. IT is not used in a confrontational style, and a single or lone officer is not suppose to confront an inmate. They call in a code and wait for help from other officers.

f) The most important and fact based rule and regulation is that inmates with a yellow mobility impaired vest are not required to 'get down' at any time. They are just required to stand in place or if there is a place to sit on a nearby seat or bench, is allowed. The rule is more stringent for inmates with walkers who the doctor prescribed that DME device for getting around the yard or assisting the inmate to get from one place to another. ALSO A place to sit when & if an inmate gets tired.

ARCHULETA'S RVR NARRATIVE IS SO ABSURD & MOST OF IT IS A LIE, THAT ALL WHO READ IT, ARE A PART OF IT'S IMPLEMENTATION OR APPROVAL, MUST BE HELD ACCOUNTABLE. THESE INCLUDE ALREADY NAMED DEFENDANTS. AND Continuing: are defendants: (2) J. ROE on 2nd DHR For the Rehearing for his role on 9/6/2019 AND 9/13/2019 whereas IE INVESTIGATIVE EMPLOYEE assigned and served "other" ? Defendant ROE violated plaintiff's rights of 1st & 14th Amendments, as did defendants C. Avila at initial hearing and J. Luna did as explained on previous page as labeled (1). Archuleta's failure to appear at rehearing, also 1st & 14th AMENDMENT violation.

Defendant Lt. R. Nuckles, on 10/5/2019 conducted an ordered rehearing at KVSP (Kern Valley State Prison) due to an admitted due process violation by then warden, P. Covello. Def. Nuckles violated plaintiff's 1st & 14th Amendment rights as the SHO, because of the following.

1) The hearing took place on 2 days. My medical records were introduced and explained in detail, about my foot surgery, the intense pain of an infected foot to walk on, the visit to CTC for a critical care treatment & the medication perscribed the morning of the Nov 24th 2018 ASSAULT & BATTERY on Plaintiff at supper time, & the head of line privelege afforded ADA inmates w/walkers. Nuckles failed to include any of this information on the DHR or why Archuleta was not available on this 1st day of the rehearing.

2) Def. Nuckles, the next day, called me back to his office and told plaintiff that "if I accept a lesser charge, "Behavior that might lead to violence", the requirement of C. Archaleta being at my rehearing, would have to be agreed upon by me, for her not being there". He told me (Nuckles) that she (Archuleta) was on "mental health leave". This key factor was left out of the reheard DHR and now it becomes key evidence as plaintiff respectfully requests the court to let medical & personal records of defendant Archuleta be released to plaintiff & be made known, so that the correctness of plaintiff's claim as to what defendant Nuckles said was the truth. This critical information will also show:

a) at what time did def. Archuleta go on "mental health leave"

b) that Archuleta's mental health play a role of her "attack" on Plaintiff Dragasits on Nov 24th, 2018, causing physical injuries

and then having to 'lie' & produce a 'false RVR' to cover up her actions on that date.

c) On 7/30/2019 defendant C. Avila had to produce a re-issued RVR. On DHR Comments section, defendant Avila state's that "At this time Officer C. Archuleta is unable to personally enter information into Soms; therefore I am entering the information on her behalf."

Plaintiff charges/alleges that this is illegal, Defendant Avila was plaintiff Dragasits IE, investigative employee, in my first hearing & violated plaintiff's free speech & due process. Defendants, acting as supervisors, C. Godinez & J. Luna, both approved this stated constitutional violations, and should have been aware or at least investigated why Archuleta could not personally enter the RVR into SOMS, ~~did~~ they further violate plaintiff's rights, including defendant Nuckles, by not dismissing the RVR & finding Dragasits not guilty of all charges when the specific opportunity presented itself. By the date of the RVR approval & the date of the rehearing, Def. Nuckles knew of def. Archuleta's mental condition. Plaintiff alleges Godinez, Luna & Roe, knew of Archuleta's mental state & 'LEAVE'. AGAIN, Plaintiff insists that Archuleta's medical & personal records be revealed, to answer questions as to how much culpability, supervisors up the chain of command, are responsible for putting a mentally incapable correctional officer on a men's prison yard, who didn't show any human compassion when dealing with an ADA inmate with mobility vest, walker, & evidence that will show Plaintiff did everything in his power to cordially tell his story, to no avail, to Archuleta

K

4) Defendant S. Swaim, violated plaintiff's 1st & 14th Amendment rights under the title Chief disciplinary officer of the 2nd DHR in which Lt. Nuckles was the SHO. On 10/30/2019 defendant S. Swaim was an associate warden and thus, as the last name on this DHR approved DHR & is culpable.

5) Defendant Nuckles chose not to put in writing what he told me personally, instead chose to define 'assault' and because of that, on pg 5 of 10 of the DHR and then on pg 6 concluding in comments section: "SHO (Nuckles) weighed all evidence & statements provided during the hearing in adjucating the RVR based on the preponderance of evidence, SHO found there was not sufficient evidence of the specific charge of "ASSAULT ON A PEACE OFFICER". Plaintiff, at this time states the obvious, that on the above charge, plaintiff Dragasits was found not guilty. That should be the end of story, From what Nuckles stated and not told plaintiff personally, Nuckles could not then issue a lesser charge. There would have have to be issued a separate RVR on that charge & then a separate hearing. This is another, separate, 1st & 14th AMENDMENT violation as plaintiff has to piece together the many violations that occurred. My appeal to this situation of the REHEARD hearing was denied.

6) Defendants John Doe 7 & 8, did not put their names on the 3rd LEVEL Response I submitted and they represent the "Office of Appeals" in Sacramento, The final level, thus names JOHN DOE'S 7 & 8

a) would not review or answer plaintiff's (11/22/21) verifyable complaint that disputed the RJDCF's second level response denial of Def. Nuckles and concluded that the 2nd level response was the dept.'s final decision! That denied my free speech & due process.

b) 12/8/2021, Office of appeals denied my claim of RJDCF not receiving my appeals in a timely manner/or not at all. ← rejecting

C

Defendant J. Juarez violated and/or conspired to violate plaintiff's 1st, 8th & 14th Amendment rights as a CDO, Chief disciplinary officer, and the last name to appear on the first DHR on 1/13/2019. These civil rights violations were very apparent as it later was seen as a due process violation by WARDEN Covello. Defendant Juarez was the last line of justice and he deliberately failed in his duties as CDO to see that a fair and impartial hearing was provided to Dragasits and all the conditions were met to what he had requested for the hearing. He also violated plaintiff's free speech as he approved a DHR with no noteable defense provided by defendant SHO Ferrel except for a few words on the DHR, as to what Dragasits said, in the defense of an RVR charge by defendant Co Archuleta on Dragasits. It is Juarez's job to review all aspects of the DHR before putting his name on it and approving it. The RVR narrative itself, as previously pointed out by plaintiff, should have been "red flagged" as false and Juarez should have intervened at this point, and called for a further investigation, as the 3 plaintiff's right's were in violation of the US CONSTITUTION. This would have saved plaintiff from the effects and PUNISHMENT from this point on, as Scharr, Benyard, & Ferrel could have done before this point.

CLAIM 8

**The California Department of Corrections and Rehabilitations Director and/or Secretary's Failure to Train, Discipline, or Hiring Decisions Caused its Employees to Violate Plaintiff's Right to Be Free From Cruel and Unusual Punishment Under the Eighth Amendment W/Deliberate Indifference**

Plaintiff incorporates by reference and re-alleges paragraphs one through seven as if alleged herein. The CDCR, its Director, and/or Secretary of its prisons in California, has and continues to operate under a policy of inaction in light of notice[s] given to it within Armstrong v. Brown, Plata v. Newsome, Coleman v. Newsome, including but not limited to, Armstrong v. Newsome (2021) WL933106 #94-CV-02307CW, in addition to the actual and constructive notice the C.D.C.R. received directly from the plaintiff in the form of GA-22 inmate requests for interview, numerous CDCR 602s and staff complaints that were

exhausted at the third level of appeals in Sacramento and/or the several §1983 Civil Rights Complaints that were settled by the CDCR, despite having received notice their omission in training, disciplining, or hiring decisions should have been apparent. These decisions caused employees to violate the plaintiff's Constitutional Rights, their acts and/or omissions hold the functional equivalent in this case as the C.D.C.R. itself made the decision[s] to physically assault the plaintiff, because a deliberate choice to follow or not follow courses of action among various alternatives by relevant officials being the U.S. District Court, office of the Inspector General, and the many other agencies relevant officials they chose and continue to choose to allow officer[s] to get away with unconstitutional conduct, (see Velazquez v. City of Long Beach, 793 F.3d 1010, 1027 (9th Cir. 2015).

The plaintiff has provided documents showing that he received severe injuries, in addition, upon information and belief, officer Archuleta has an extensive history of using excessive force on inmates at R.J. Donovan facility and the supervising officers had to have known that this officer suffered some sort of mental health issues that required her to take "leave" for mental health. They kept it silent and the "Code of Silence" is policy and/or custom that allows heinous acts of violence to go without oversight. The pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train under Bryan City, 520 U.S. at 409, 117 S. Ct 1382, 131 L.Ed 2d 626. This Court should find similarity between the factually pertinent aspect of the prior incident, the degree or type of force used by the officer should and is similar under analysis.

Despite this knowledge, the defendants, all and each of them, failed to enact policies and procedures likely to improve investigations of misconduct by officers which would've reduced the probability the C/O Archuleta would be given an opportunity to assault him,

The processes for complaints, investigations, discipline, and oversight was/and is biased, inappropriate and inconsistent. It is customary to promote the officer, prior to disciplining them, so as to protect them financially. The CDCR's Use of Force Review Process allows officers to "get away" with misconduct that is most often injurious and had there been any real oversight, the sadistic and dehumanizing uses of force detailed in all of plaintiff's prior and current civil rights complaints may never have taken place. The defendants failed to adhere to remedial measures ordered prior to Armstrong v. Newsome and to date, is still failing to adopt The Five Prisons Remedial Plan that was ordered on 03/11/2021, and these failures did not protect and do not ensure plaintiff's right to be free from cruel and unusual punishment, while he remains in the defendants' care and custody.

The actions and/or inactions of the defendants' demonstrate deliberate indifference to violations of plaintiff's Eight Amendment Rights. As a proximate result of the defendant's failures, all and each of them, failed to protect plaintiff at all the prisons wherein excessive use of force was administered to the plaintiff that he now is suffering Post Traumatic Stress Disorder, and will continue to suffer this irreparable harm.

As a direct and foreseeable result of the defendants violations of the Eight Amendment plaintiff has suffered, is suffering, and will continue to suffer physical injuries as a result of the beatings he received at R.J. Donovan, all of which are documented by clinic records. This suffering includes but is not limited to, emotional and psychological distress its director its secretary, and R.J.D.F.'s Warden, Patrick Covello, concerning their rights, privileges, and obligations.

//

//

//

CLAIM 9

THE DEFENDANTS' INTENTIONAL INFLICITON OF EMOTIONAL STRESS VIOLATED CAL. CIV. CODE §52.1 (a) (b)

Plaintiff re-alleges and incorporates by reference, each allegation , as if alleged herein.

The defendant[s], all and each of them named in the complaint **(1)** exhibited extreme and outrageous conduct to the plaintiff by transferring him from prison to prison, back to the county jail, and then to prison again. This exposed plaintiff to various custody levels that were higher than what he was classified to be under. These transfers were done with the intention of causing or reckless disregard of the probability of causing emotional distress. **(2)** the plaintiff has and continues to suffer severe anxiety and emotional distress.

The defendants' conduct was outrageous and was so extreme as to exceed all bounds of that usually tolerated in a "civilized community," and was intended to inflict injury, and/or engaged in with the realization that injury would result, violating Cal. Civ. Code §52.1 (a) (b), and Government Code §844.6 (d), §832.5 of the California Tort Claims Act.

CLAIM ~~4:~~ 10

THE DEFENDANTS SUBJECTED THE PLAINTIFF TO TRANSFERS AND CONFINEMENT THAT WAS "ATYPICAL AND SIGNIFICANT IN RELATION TO THE ORDINARY INCIDENTS OF PRISON LIFE IN RETALIATION - VIOLATING THE FIRST AMENDMENT OF THE U.S CONSTITUTION

Plaintiff re-alleges and incorporates by reference, each allegation

Claim D

as if alleged herein. Defendants Lt. Ferrel and Lt. ORTIZ. all and each of them. confined the plaintiff in administrative segregation, which imposed an "atypical and significant hardship in relation to the ordinary incidents of prison life," depriving him a liberty interest and due process rights to a fair and impartial rules violation report hearing that was conducted to cover-up the excessive use of force plaintiff had suffered by its author C/O Archuleta. These acts violated the First Amendment of the U.S. Constitution.

LT C/O Nuckles, knew that C/O Archuleta was out on medical leave and on leave upon information and belief for officer misconduct that involved excessive use of force incidents. The plaintiff requested that she be present as required pursuant to CCR Title 15 and Wolff v. McDonnell, 418 U.S. 539, 94; S. Ct. at 2963 (1974). Lt. Ferrel failed to review the documentary evidence that clearly showed the plaintiff being a victim of excessive use of force, and instead, held a hearing that he knew would have to be reheard instead of dismissing the false charge. Lt. Ferrel thereafter, to further violate the plaintiff's rights, sent him out of R.J.D.F. to be shipped across the counties in a "bus therapy," a tactic used to break-down an inmate physically and/or confuse and thwart his efforts to appeal. Lt. Ferrel's impartial and retaliatory hearing.

Specifically, Lt. Nuckles, the very first day of the hearing, he was going to find the plaintiff guilty as charged, despite the showing of numerous documents which included medical documents, and when he was questioned as to C/O Archuleta's not be present, as required by rules violation report rehearing order, at which time he postponed the hearing for the next day. That next day, at the reconvened rehearing, he informed the plaintiff that C/O Archuleta was still currently on "mental health leave," and not available, but instead of dismissing the charge, he threatened to hold another rehearing if the plaintiff would not "waive" C/O Archuleta's presence and plead guilty to "Behavior that Would Lead to Violence." He was not in a clear state of mind and completely stressed out over the multiple transfers that included confinement in level 4 facility KVSP.

33

CLAIM - 11

THE DEFENDANTS CONSPIRED AND/OR ACTED JOINTLY TO SUBJECT PLAINTIFF TO DUE PROCESS VIOLATIONS AND ATYPICAL AND SIGNIFICANT HARDSHIPS UNDER THE FIRST AMENDMENT OF THE U.S. CONSTITUTION - 42 U.S.C. §1985

Plaintiff re-alleges and incorporates by reference, each allegation , as if alleged herein.

Defendants Lt. H. Ferrel; Lt. Nuckles, C/O N. Sharr, Capt. E. Benyard, C/O Gonzales, C/O Godinez, Co AVILA and C/O Archuleta, all and each of them conspired together, acted individually, and/or jointly in concert, to subject the plaintiff to due process violations in regard to a fair and impartial hearing and in the furtherance of this conspiracy he was transferred in the middle of the appeals process of the first impartial hearing wherein the author of the false rules violation report, (RVR), had to be present, pursuant to California Code of Regulations, (CCR), Title 15, and Wolff v. Mcdonnel. These acts of all and each of them violated 42 U.S.C. §1985.

The defendants all and each of them, need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy and that can be inferred by their actions of signing off on the false rules violation report and/or sending plaintiff out of R.J. Donovan, across counties, to different prisons, including the county jail, and keeping him retained there throughout the appeals process, as to his allegations of excessive force against C/O Archuleta, as well as assault & battery. This includes C/O's Massia & B. Garcia.

//

Stephen Diogasits AR2176
CIM A-5-156L
P.O. Box 368
Chino Ca 91708

UNITED STATES DISTRICT COURT
Southern District of California

Clerk of the COURT: Address above left is the latest.
HONORABLE JUDGE:

Enclosed is a supplemental second amended complaint with points for reconsideration for previous counts and defendants in that which new information and exhibits is included and respectfully closely considered. This mailing is to be used in conjunction with a separate set of documents that have already been mailed from a separate/different source and location that has been labeled a 2nd amended complaint. Logistics and delays have prevented the combining of the two (2) mailings. Thank you for your consideration of this matter.

Respectfully submitted
on this date 1/20/2026

Stephen Diogasits

 CASE# 3:24-CV-01257-AGS-SBC

updated statement of facts & reconsideration with points
ENCOMPASSES AN UPDATED STATEMENT OF FACTS (1/26/2026)
Declaration of Stephen Dragasits AR2176 Plaintiff
dated: November 8, 2025 / Jan 29, 2026

On this date 11/8/2025 I declare the following is true and that issues previously discussed/written and defendants dismissed be re-visited, reconsidered. With additional information, documents and 2 illustrations, these exhibits provide more detail in plaintiff's claims. Plaintiff feels strongly about the various civil rights claims that he appealed to the 9th circuit appeals court, about these civil rights violations. The docket number was received by appellant Dragasits along with a packet of forms. Already mailed forms include form 34 declaration, a change of address, an extension of time from the December 2nd opening brief, the appointment of a pro bono attorney for among other things of how to proceed at this point in time. Also included was a motion or letter to the court of issues that were denied and appellants reply for appeal on defendants violation of these civil rights issues.

To be reconsidered is the issue of failure to protect. In the previous complaint and titled STATEMENT OF FACTS PRELUDE, PAGE 8 LINE 18 (c) and PAGE 9 STATES;

CORRECTIONAL OFFICERS STATIONED AT THE CHOW HALL WHEN INMATES GO TO EAT ARE THERE TO OBSERVE ANY AND ALL YARD ACTIVITY AND TO IMMEDIATEL ASSIST IN A 'TROUBLE' SITUATION, ESPECIALLY IF A FELLOW OFFICER WAS IN TROUBLE, JUST YARDS AWAY FROM WHERE THEY WERE STATIONED WHEN THESE OFFICERS TOOK NO ACTION ON A

STATED 'RVR' (SERIOUS) VIOLATION, THEN IT IS APPARENT THAT SUCH AN EVENT, LEADING UP TO THAT CODE THAT WAS CALLED, NEVER TOOK PLACE, AS THESE CORRECTIONAL OFFICERS/OBSERVERS 'DID NOT SEE OR OBSERVE' WHAT WAS DESCRIBED IN A RVR (SERIOUS VIOLATION THAT WAS ISSUED. (SEE Defendant QUIJADA)

THE KEY PHRASE BEING, 'JUST YARDS AWAY,' HI-LIGHTED IN YELLOW. PLAINTIFF STATED THIS IN THE 1st AMENDED COMPLAINT. YARDS AWAY, WAS HOW FAR QUIJADA WALKED FROM WHERE HE WAS ALONG THE WALL. HE TOOK 3 PACES TO REACH ME BEFORE WE STARTED TO CONVERSE. THATS ABOUT 2 SECONDS COVERING 3 YARDS. THAT WAS HOW FAR THE OTHER 5 JOHN DOE'S PLUS SALIEWESKY WERE WHEN THEY FAILED TO INTERVENE. THIS ALLOWED 2 OTHER OFFICERS, FROM THEIR ASSIGNED HOUSING STATION, a MINUTE OR SO LATER TO RESPOND TO ARCULETA'S CODE AND INFLICT INTENTIONAL PAIN AND MEDICAL DAMAGE TO AN ALREADY RESTRAINED PLAINTIFF. CONCLUDING THAT PLAINTIFF SHOULD NEVER HAVE BEEN TAKEN TO THE GROUND FROM BEHIND, AS THERE WAS WITNESSES TO ATTEST TO THIS, IN THE CHOW HALL LINE, SOME OF WHICH I ASKED TO FIND BEFORE THE SERIOUS RVR HEARING WAS HELD, BUT NEVER DONE, ADDING TO A PROCEEDURAL DUE PROCESS CIVIL RIGHT VIOLATION THAT INCLUDED THE ACCUSING OFFICER NOT BEING THERE. (Title 15 violation)

THESE CHOW HALL STATIONED OFFICERS, SAW ARCHULETA TAKE PLAINTIFF DOWN FROM BEHIND AS WELL AS INMATES, CONTRARY TO ARCHULETA'S FALSE WRITTEN STATEMENT, AND DID NOTHING TO GET ARCHULETA OFF PLAINTIFF'S BACK, WHILE STRUGGLING TO BREATHE, AND PLEADING FOR HELP. THE INCLUDED 2 ILLUSTRATIONS, IS FURTHER EVIDENCE OF THEIR VIOLATION.

Case 3:24-cv-01257-AGS-SBC Document 30-1 Filed 01/30/26 PageID.446 Page 3 of 44



When a code is called, every inmate is required to 'get down' as the yard tower officer and every building tower officer announces over the P.A. System. When that occurs, inmates have to sit in place where they are at. The exception, inmates with yellow mobility impaired vests can simply stand in place or if a table or bench is nearby, they can just sit down on that bench. ADA inmates with walkers can stand or sit on the seat of their walker. When a code is called, a housing building sends one of their two floor officers to the announced scene of the disturbance. This was the case with defendants Massra & B. Garcia. They came onto the scene and found Archuleta on my back. By this time, these stationed chow hall officers had plenty of time to intervene and get Archuleta off my back to prevent the intentional infliction of GBI to plaintiff. They must be held accountable for failure to intervene, an 8th Amendment violation.

A False RVR (serious) must be tested in the appeals court and if necessary, the United States Supreme Court. As Plaintiff read in the case Garces v Gamboa (2021), this was not tested in the Appeals Court. Plaintiff, in this 2nd Amended Complaint & Reconsideration, has provided more detail in his effort to make the Statement of facts more apparent and hold to account the stated supervisors role in approving a false RVR, because Archuleta in her RVR statement made critical mistake to yard Rules and Regulation & CDCR policy of not engaging with an inmate that could be trouble, seek assistance with the 7 other officers within 3 yards away and call in a code. These supervisors should have prevented plaintiff from further suffering

of having to defend himself with very little help and not approved this serious false RVR. Plaintiff prays that these and other further points, make the court realize Archuleta had to cover up taking Plaintiff to the ground from behind while he was talking to defendant Quijada. Archuleta the main defendant, fabricated a false scenario to justify her actions. These supervisors were complicit in their actions of approving an apparent false RVR. The CDCR's TITLE 15 were not implement in the defense of plaintiff, and there are further deficiences in the TITLE 15, that need to be addressed and should had been put in place beforehan to further protect the rights of prisoners.

What was not addressed by officials of CDCR & R.J.D.C.F, is the mental instability of defendant Archuleta. Rehearing officer (SHO) Lt. Nuckles told me Archuleta was on "mental health leave" and was not available. This was the 3rd time Archuleta was not available. The 2 hearings and the fact Achuleta was not available to enter her false narrative for the rehearing, instead as defendant Avila stated, that she had to enter the narrative as Archuleta was not available." R.J. Donovan's * LT Keener, in her response to my 602 appeal, was deliberately indifferent to the fact that Archuleta was not available at my hearing because of mental healt leave, and defendant LT Nuckles did not include that Archuleta was on mental health leave, and when my appeal/602 went to the *office of Appeals they decided not to address the fact that Archuleta as plaintiff stated, was on mental health leave, and let R.J. Donovans response stand, & not investigte the claim

* NEW
* DEFENDANT

Case 3:24-cv-01257-AGS-SBC Document 30-1 Filed 01/30/26 PageID.448 Page 5 of 44

Plaintiff provided to check the mental health status of Archuleta
*DEFENDANT These are examples of how *CDCR's justice system does not work. An inmates only recourse is to go through the extensive effort of exhausting administrative remedies and then explain to the court of what transpired and to get justice and relief. (and changes to Title 15)

In filing a 602 appeal, there should be a 60 day response time for officials to answer the appeal at each of the 3 levels of the appeal process. Plaintiff's very 1st appeal (602) was dated 11/26/18 with the title "police brutality, put in ADSEG because of Archuleta's lies!"

The 3rd level of review of this 602 appeal LOG # RJD-D-18-8095, was stamped on OCT 15, 2021 and denied. This is one example of CDCR not meeting Title 15's own time constraints as each of my appeals suffered this fate, as not meeting the required time lines, causing the submitting of other appeals as the original appeals were not answered in a timely fashion. I am trying to get the court to realize this. There is no justice in the appeal process. Officials in CDCR will never admit to any wrong doing. It forces the inmate to go to cou[rt]. These delays, 3 years, in the appeal process have caused the ADA violations, according to the court, expire. This complaint of my civil rights via this 40 USC 1983 thus was delayed by 3 years and an exception should be granted because of the 602 appeal delays, through no fault of plaintiff. As further explained in this amended complaint, the serious charge of assault was dismissed, but replaced by another charge, also labled serious, but only sounding less severe in word only

One of the witness's declaration was submitted to the court just last month as he noticed and recognized me here at CIM 'A' Yard and came up to me and asked me were you at R.J. Donovan on 'D' Yard, "The ADA guy that got beat up by officers". The answer of course was yes. You can't discredit these declarations, but inmate witnesses can be used at hearings for a variety of prison infractions called a 115, And produced a successful not guilty outcome for prisoners.

These declarations show that Archuleta's statement which was produced after the cruel and unusual event, excessive force, and assault and battery, was a lie. Also, finding out later, this officer had mental health issues and should have never been on a mens prison yard. How Archuleta got to that point should be of grave concern of anyone around her, and I could only point out that this should have been of deep concern to her supervisors. I tried to point this out in my complaint, of a mentally unstable correctional officer, making decisions such as not knowing yard rules & regulations as for as inmates with walkers and mobility impaired vests have head of line privelege and can walk to the chow hall from any area on the yard, in my case, from the pill window. *I had pointed to the part of her statement that she said "I was going the wrong way" to the chow hall. Capt Benyard produced this rule and regulation, yet him and other officers who read her statement deliberately disregared this wrong statement. A declaration by Ebrahim Haddad verified this rule.

* Also made this reference in a 602 appeal

defendant

5 John Doe officers plus Salievesky were stationed at the chow hall on Nov 24th 2018. I listed them as defendants for failure to intervene. I have to make this point clear. Their backs were to the wall of the chow hall at supper time on this date, and their purpose was to observe and intervene for any disturbance. Co Quijada, made it as defendant. He traveled approximately 3/4 paces or strides from the chow hall entrance, which took 2 to 4 seconds walking, or less depending on a disturbance as were the defendants that didn't make it as defendants as CO Quijada did. They certainly obseved, as Quijada did, Archuleta taking me down from behind and getting on my back. Within 2/3 seconds they should have gotten Archuleta off my back before she even called in a code. Even before Archuleta took me down from behind, they certainly saw me standing there for several minutes after Archuleta & I were talking, making my injury and my increasing foot pain know to her, and then taking my I.D.

If there was any wrong doing involving Co Archuleta, these CO's would have flocked to her assistance immediately. There was none up to the point of Archuleta, taking me to the ground hard from behind. Those stationed Co's in front of the chow, should have acted immediately and take Archuleta off my back before the code and those 2 defendants, who came from inside the housing units, began to batter me. These are certainly defendants who failed to intervene, before B. GARCIA & Massia beat me, but even after the assault and battery.

as I was struggling to breathe, crying out for help, as a* 140 lb person was sitting on my back. As in my 1st amended complaint, Sgt Scharr had to walk from the program office of 'D' Yard to the front of the chow hall and that's when he ordered the Co's to get her off of me and get me up.

*APPROX.

Sgt. Scharr was charged with a due process violation for either lacking to do a proper on the Scence investigation or overlooking the fact that no officer could confirm her claim. When someone is charged with a claim or crime, that person should be afforded a opportunity to state his side of the story. I was not provided that opportunity with Sgt. Scharr on his 2nd visit to me after I was placed in a single holding cage in the 'D' yard gym where these cages were located. That's when he told me the charge that Archuleta was claiming and then he left abruptly, not affording me a word in my defense. This is not normal for prison proceedure for a violation.

I also have in my possession, that I might also have sent to the court, crime scene incident reports, paperwork to submit to the DA for criminal referal, with a charge of "attempted battery". There was a form signed by 2 officials stating not to pursue this charge, or not to pursue DA criminal referal. I am concluding that they* had no evidence, or no witnesses for officials to pursue the "attempted battery" charge.

* state officials, RJDCF, CDCR

For this same reason they should have dropped the charge Archuleta lied about and one that I had to fight on my own from an ADSEG BUILDING/ cell, secluded from my property and paperwork.

Whereas, I was secluded to pursue my defense with nothing in my possession to fight the crime of Archuleta, Massia, B. Garcia, Quijada and the stationed officers in front of the chow hall within 2 to 3 seconds from the crime that they undoubtedly saw with Archuleta, and by not "intervening" to pull Archuleta off my back when I was in distress, and then thus preventing the continued crime of Massia and B. Garcia, in front of defendant Quijada, and also Salewsky and the other CO's that I charged.

Also in the included paper work that I sent to the court where questions I posed to people that I could come up with, that might have witnessed the event/crime of correctional officers. Some of this was guesswork, but I did pose a question to 2 officers, one being an eyewitness, CO Quijada whereas in a response to the question 'did you see the claim of Archuleta made against me?' The answer, 'NO, I DIDN'T SEE IT.' Quijada was right in front of me, an eyewitness. This was proof positive of the lie by Archuleta. Quijada and I started our conversation on why I was standing there, just feet from the entrance to the chow hall. That means I was standing in place for several minutes in one spot, to counter the claim Archuleta made, "that I didn't stop and proceeded in her direction?' A LIE by Archuleta.

The same question was posed to the tower officer located above and just to the south of the officers crime. He provided the same answer as Quijada. I conclude that the other officers stationed in front of the chow hall would provide the same answer. ALL this pertinent, important information was in ...

the possession of the SHO, the serious hearing officer, Lt. Ferrel, who I charged with a 1st & 14th Amendment violation. He basically became the Judge, jury and executioner. How could I possibly present any kind of defense when Lt. Ferrel had a preset mind of guilt, disregarded the evidence paperwork I described, was not provided this information by the assigned I.E, investigative employee, CO AVILA, charged with 1st & 14th Amendment violation for her 'intentional' failure to not provide the things I needed to present any kind of defense on my part. She was my only lifeline and failed miserably, that's why she was charged. My 1st Amendment, "free speech" was eliminated as she ignored the required items that I told her in writing, thus violating my 14th Amendment right of due process in providing documents that would have cleared me of any crime at my hearing. SPECIFICLLY, the request to produce evidence/offical medical report that indecated my visit to central medical that works on Saturday morning, because I put in a medical form the previous day or so indicating I had a "serious medical need" of an infection on a surgically repaired foot and possible cellulitis. I credit medical for responding quickly for a very hurtful right foot on Saturday morning Nov 24th 2018. The same day, that night at Supper time, a crime was committed on me. This medical document, along with other investigative information forms, would have given Lt. Ferrel reason to think hard for a preset motion to find me guilty. As It is, Lt. Ferrel stated a lesser charge to start the hearing, which suprised me, and

I let my guard down. I had prepared a 2 Page written statement of the facts associated with this complaint, the true facts of the day of Nov 24th 2018, and my foot surgery, visit to medical TTA, that morning and that I was only out at supper time to pick up an antibiotic for my hurtful infected foot that morning. This was the same information provided to Archuleta when I cordially talked to her. There was no cursing at her that day, and this question was also posed to Co Quijada, who answered NO to it.

When Lt Ferrel, who is judging this hearing, states a lesser charge, who then only spent a few seconds in looking at my prepared statement and then puts it down on the table, and then ignores me when I asked "Where is ARCHULETA", "she is suppose to be here!" He then finds me guilty, what am I suppose to do. To me, he didn't read my prepared statement, a free speech violation, stated a lesser charge and ignored my plea for ARCHULETA to be present as I had prepared questions for her. This can only be a 14th Amendment violation, My due process was violated in Archuleta not being at my hearing. WARDEN PATRICK COVELLO, Agreed and stated such in a 2nd tier 602 APPEAL which was presented to the court. When the warden of R.J. DONOVAN D.F. states this was a DUE PROCESS violation, how can this not be in federal court!? This was an important hearing. Without having the proper tools to provide myself a proper defense and no one to help me as AVILA *

defendant *Warden & HEAD Supervisor of RJDCF

* defendant

was suppose to provide as my IE, investigative employee, my chances of a not guilty verdict was sunk. This hearing was so important, that it would determine my immediate and future life in prison. I will now explain to the best of my ability and knowledge what the lack of due process of my rights due to the deliberate indifference plus the ineptitude of SHO Lt. Ferrel's guilty verdict.

I must point out first that Lt. Ferrel started the hearing with "we are here for disobeying an order". So after the hearing and I was sent back to a cell in ADSEG, known to everyone in prison as the 'hole', I wondered why I wasn't put back on 'D' yard, back into a normal cell with my property. I wrote a 602 appeal, as it was known back then, explaining that and within a few days an officer came to my cell in ADSEG and told me the fact that the SHO found me guilty of the original charge, to my shock. Immediately I submitted 602's to appeal everything I could think of. The fact that everything I thought about the lesser charge vanished as my return to the yard at R.J. Donovan was gone and the disobeying an order as stated to me was a lie. The lesser charge would have been much easier to fight as I could have done my own investigation on the yard where this crime against me occured. Finding witnesses and gathering the medical documents I needed to prove my point, that I didn't stop, which I did, that I just had recent surgery and complained of footpain (severe), infection and the fact that I was already ADA before the foot surgery and mobility impaired as indicated by a walker and a yellow mobility impaired vest, and the medical paperwork to indicate this, as well.

I was able to supply most all of this information at HDSP at the rehearing nearly a year later as I was found not guilty of the charge of Assault as the definition of assault was explained by the SHO, much to what Judge Schopler explained in his opinion of assault. This is the verdict I should have received initially in my first hearing as I believe I have explained successfuly in regards to Scharr, Avila and Ferrel. Other supervisors will be addressed later. Results of a guilty verdict which is somewhat explained in my 1st Amended Complaint are as follows:

1) My security points rose ~~14 points~~ 16 points as a result of being guilty to 63 points which put me past a level 4 indicator of anything over 60 points, the option of CDCR is to send you to a level 4 prison security, which is the highest. A normal rule violation is 6 points and if an inmate is free of any violations for the reporting year, 6 points is deducted. I was taken from an extended stay at ADSEG at R.J. Donovan prison of 34 days. and transfered to L.A. County State prison for 70 days at ADSEG. AGAIN, this is prison within a prison that's why it's called the hole, no priveleges, no property no amenities. This is punishment in the extreme. The stay at level 4 prisons has less priveleges & freedom than a LEVEL 3 prison yard such as at R.J. Donovan. This means less outdoor yard and the benefits of outdoor activity and less dayroom time which comes with less time with friends and other inmate with which to converse, less time watching dayroom T.V., or playing any kind of table game. Normal prison life of a level 3 prison yard is severely diminished at a level 4 yard, meaning less freedom and more intense scrutiny.

* County Jail life is even more harsh severe with less freedom that level 4 prison life, let alone prison 3 level life

2) As another result of the guilty verdict was having to be processed into San Diego County Jail for the phase of the San Diego Superior Court rehearing 2 (two) different times. Jail is very harsh as compared to a level 3 yard facility at R.J. Donovan where I would have been had I not been found guilty of something I did not do and anyone on the yard at that time, would agree and that the crime that was committed was against me and the declarations of 3 witnesses should be counted as true as would they had been on a stand in a court in front of a jury, testifying, to what they saw.

I indicated in my 1st Amended paperwork labled Sept 17, 2019, that the total time of harsh, adverse conditions totaled 212 days, for transport to and from county jail and included the time spent there.

I now will attempt to explain the CDCR 602 appeal process will most likely fail for any inmate who uses this paperwork. Denied is the usual result of this paperwork as you try to get it through the three levels needed to complete the "exhaustion of remedies" before you can take your complaint(s) to the court. I had to complete and submit a mountain of paperwork to accomplish this, through no fault of my own as appeal coordinators, who were listed as defendants, did not get my submitted 602 appeals to me in a timely fashion. I made known on my 1st Amended complaint, that these coordinators, with a couple of clicks on their CDCR computer, could have produced my whereabouts in California, and realized that I was at "this" specific location at the time of submission of a 602 appeal and returned it to me in a timely fashion, and thus delaying my right to due process.

Time constraints

There is a time frame* to adhere to in returning GOJ's to me that was not met. Is this not a due process violation and an attempt to deny my 1st Amendment right to free speech in the length it took me to exhaust remedies and thus give up, as certain officers would prefer, and some inmates who actually give up and not proceed to get to the court, for a remedy and an ultimate court decision.

This is why I submitted constitutional rights violations in interfering in my 1st & 14th Amendment complaint against these individuals, appeal coordinators, and submitted these documents in my complaint, to show what they said, and having to go through great lengths to prove that I was not the one that was at fault with the delays of submitting appeals in a timely fashion, in the fact I repeatedly had to write and rewrite these appeals, as shown in some of the exhibits I submitted to the court.

These people/defendants have access to a CDCR computer to instantly find out where I am located and then through, next day delivery option, if need be, received these official documents.

Not only should there be pain and suffering from my injuries on Nov 24, 2018, including the broken rib I had to put back in place myself, but also the time leading up to the* hearing in not getting what I had requested for a proper defense, but also the time after the guilty verdict, and thrust into the adverse conditions of Level 4 and San Diego County Jail. I previously stated that this trip to County court from R.J. Donovan would have been a 30 minute ride to court and then returned to R.J.D.

*INITIAL Hearing

* 212 Days lost of normal 3rd level prison life due to transport & stays at county jail

What happened to me at the critical first hearing as I have been explaining was the deliberate witholding of critical evidence already listed in this letter plus any results of an investigation that should have been conducted on the yard after the crime against me on Nov 24 2018, There was also a video that was made while I was in ADSEG because of my complaints*. This video was also critical as I told my side of the story. This evidence, that was recorded, was held by LT. Ortiz. That is why he was a defendant for 1st and 14th Amendment claims, withholding my free speech from going past the room that it was *recorded in, a office at the ADSEG Building. This withholding also stymied my defense which has to be a 14th Amendment violation of another leg of due process.

*EIGHT Amendment

* VIDEO Recorded

The medical document that Avila was suppose to retrieve was my visit to TTA medical, indicating a serious medical need for my very painful, surgically repaired infected foot. I indicated this in my 2 page statement handed to SHO Lt. Ferrel. This medical document from the morning of the 24th of Nov, in my hand, would have at least started a discussion of what I repeatedly was telling Archuleta on that time and date, supper, Nov 24 2018. This discussion would have been at my hearing with Lt. Ferrel, of my serious medical need on that day assuming of course if he was attentive and not gnoring my attempt to prove my innocence.

Judge Schopler's opinion of letting the grievance process play out and in my opinion, belitting my 1st hearing, does not do justice of how serious this false write up was, and the fallacy of the guilty verdict that was thrust upon me and the relying on the *602 appeal process which only achieves denials

* 602 appeal is now called grievance

These denials are standard and force inmates to take their complaints to court, and go through the lengthy process to hold people responsible for their past violations, of Title 15, of law and the constitution.

1) The series of events delayed the process of me going to a level 2 prison as where I am at now, meaning more freedom, much less lockdowns due to inmates fighting or possible gang related issues as I experienced at Level 4 Kern Valley State Prison, more lockdowns than any level three prisons. I was put on a 'ACTIVE yard' where competing gangs were located and had to go prone every time this took place. A CO had asked me while everyone was prone, "what are you doing on this yard." There was no room on any other yard, was my reply. These examples I have provided show how my prison life changed drastically, from normal to adverse.

2) Because of the false guilty verdict initially, I lost my A1A status to A2B which means no yard or dayroom at all times on weekends and holidays. The same for after 7 P.M on weekdays. This affected my normal prison life as I was A1A before

3) This is important. Having a guilty assault charge on my record and even if found not guilty, and just being written up, for any violation has a profound affect and basically ruins any chance of achieving an early parole or possibly not qualifying for a resentence whereby the passing of new laws by the state of California, are mill.

FINALLY, by expanding my thought process to produce this letter in detail, made me realize that this was worse than I originally thought.

The charge' behavior that might lead to violence, was also labeled serious and plaintiff would have to explain this charge to an eventual board of parole, Plaintiff is innocent of any and all charges and this would also have the court step in for a not guilty.

Besides suffering in level 4 prisons with many lockdowns due to gang related fights as later discussed in this complaint, these 2 charges are a stain of plaintiff's prison record and plaintiff will be held accountable for a future early parole from prison and a denial will be inevitable. The court must see to it that the false serious charges be erased from plaintiff's prison record, and all defendants be held accountable for their actions & inactions. This would be on existing CDCR, prison and yard policy. What is

Defendants also the fault of CDCR & the state of California is the lack of adequate representation for incarcerated people especially the ADA people, who through no fault of their own, have to suffer at the hands of untrained or mentally lacking the stability to do their sworn duty of protecting the old and disabled from harm..

In the charge of a serious violation, a public defender should be assigned to such an inmate, to make sure that what protections exist in the TITLE 15 are met such as medical documents requested, and witnesses found as their was no less than 30 people waiting in line for chow.

Officials within the CDCR prison system will do their best to delay, deny, or not answer the question or problem of the situation that put the inmate in fighting a non-existed violation, dreamt up to protect the attack from behind while talking to a correctional officer.

The 602 appeal process, now called a grievance, is not the cure-all to protect the inmate. It's function basically is to get to the courts for justice. The only form of prison justice, is that officials follow the

TITLE 15 to the letter and have an official not attached to the prison system, makes sure that is followed up to the hearing and that all documents and witnesses be heard and all investigated information be shared with the person charged with a false violation. A proceedural due process hearing over a "false serious RVR" was far from achieved and culpability for this is detailed within this complaint. As explained in detail within this complaint, is what plaintiff had to suffer through after the issuance of a false RVR that never should have gotten through a due process investigative phase and been approved by supervisors in the first place. Then their is the deliberately indifferent attitude by the IE and the SHO, that made sure plaintiff had no chance for a not guilty verdict.
ADDING TO this is the deliberate delays of the 602 process, That plaintiff actually made it through the 4 year cut off for a CIVIL RIGHTS 1983, it did cause missing the 3 year ADA cut off. For example my initial 602 appeal took 3 years from its submission to the 3rd phase of the COA.
These officials did not do their due dilligence or follow their own rules of taking only 60 days for each phase of the 602 process, to answer plaintiff's reply. IN most cases of a serious appeal process, the 1st phase is not necessary and it goes directly for a 2nd level reply by officials of a Supervisory role. When plaintiff received a reply, it was already late and time constraints were not met. This is why there should be culpability for the appeal coordinator for defendants and their supervisors, officials at R.J. Donovan prison and CDCR as defendants for not overseeing or implementing

12/3/2025

policies to hold these officials accountable.

POINTS and CONSIDERATION FOR RELIEF DUE TO A FALSE RVR COUPLED WITH A SERIOUS RVR HEARING WITH DUE PROCESS VIOLATIONS (RE: GARCES v GAMBOA) (2021) PLUS CDCR TITLE 15 POLICY VIOLATIONS

1) Transfered to Level 4 Prison Yards, Los Angeles County State prison (LACSP) and Kern Valley State Prison (KVSP) → Feb 2019 To Dec 2019 upon arrival at Mule Creek State Prison (MCSP). A LOSS OF 10 MOS. OF LEVEL 3 PRISON LIFE. MY TRANSFER TO MCSP CORRESPONDS WITH The fact that my classification points dropped 6 points because of good behavior for the previous year and reviewed by officials and the yard captain during the annual committee yearly that's held for every prison inmate

2) There was no drop in classification points in SHO's Lt. Nuckles giving me, what I thought at the time, a less serious charge of 'behavior that might lead to violence'. But this charge is still labeled 'serious' as I found out at a later time when reviewing the DHR, Disciplinary Hearing Results, of Lt. Nuckles Rehearing in which he found me not guilty of the original charge. There are "due process" & possible 1st amendment rights connected to both hearings. My behavior on 'D' Yard at RJDCF at supper time in front of the chow hall was exemplary. Plaintiff 602 appealed this charge as well. Plaintiff must be found not guilty of all charges associated with the November 24 2018 event.

3) Loss of A1A status which A1A indicates no restrictio of yard or dayroom during normal program. Status A2B was part of the punishment thrust on plaintiff because of this violation. (NO WEEKEND Yard or dayroom & also after 7PM M-FR

12/3/2025

continued points and consideration for relief

3a) The loss of A1A status from Nov 24th 2018 to 2024 at MCSP is 6 years and is a result of civil rights violations.

4) Relief for the 212 days of transfer time and extended stays at San Diego County Jail for a resentencing hearing at San Diego County Superior Court on two different occasions. San Diego County Jail is considered much worse than even Level 4 State Prison life and have no amenities of any prison life. This was the result of plaintiff's civil rights violations. Normally, from R.J.D.C.F., where plaintiff was housed, would have been a half day excursion to court and then back to plaintiff's prison yard.

5) The 16 point rise in classification points in being found guilty of a false RVR and not afforded the civil rights accorded to the U.S. constitutional amendments, besides the above, delayed my normal reduction of classification points of 6 points each year to be eligible for a level 2 yard as my points were reduced to below the 32 point level. Again, level 2 prison life is much better than level 3 prison life. Meaning more freedom, less scrutiny, less locked housing doors, no cell doors that are operated by a building tower officer to get to the outdoor yard for more activities. Outside guests frequent the level 2 yard frequently with no threats whatsoever.

* 3 years to complete 602 appeals to the OOA and the process

3 YEAR DELAY BECAUSE PLAINTIFF'S CIVIL RIGHTS WERE VIOLATED and could not proceed with a 40 USC 1983 until the exhaustion of remedies. This also delayed the ADA violation plaintiff claimed. This delay was caused by CDCR officials, appeal coordinators, 2nd tier 602 responses & the OOA, office of appeals, not plaintiff. They did not meet time constraints established by the TITLE 15.

*(This is from previous submitted complaints - Page 1/page 26)

# *STATEMENT OF FACTS- PRELUDE

PLEASE REFER TO THE TWO ILLUSTRATIONS PROVIDED AS TO VERIFY (IN EXHIBIT SECTION)

1a) There is no requirement of an ADA inmate with a yellow mobility impaired vest or one with a permanent walker, to 'get down'. A term used by correctional officers when there is a 'security code' on a prison yard or in a building day room. These DME's are issued by a prison employed doctor. (Durable Medical Equipment) 'Get down' means for all other inmates to sit down on the ground in place, as officers can watch & observe these inmates as other officers assist some disturbance or medical emergency of an inmate. An ADA inmate with vest a only required to stand in place or sit on a nearby bench. The doctor perscribes this vest & issues it for inmates who cannot get up off the ground due to a physical disabity and/or pain & would need assistance to get up off the ground. AN ADA inmate is issued a walker as the doctor deems it necessary for an inmate with such a disability that he needs assistance to get around a prison yard from place to place. When a code is called, this ADA person is only required to stand in place or sit on his walker.

1b) EVERY Correctional officer at R.J.D.C.F & CDCR is required by training to recognize these ADA inmate rules by word and deed as well as yard rules & regulations concerning 'D' yard rules & regulations for ADA inmates with walkers as they approach the chow hall to eat from any part of the yard and observe the head of line privelege for that ADA inmate.

1c) correctional officers stationed at the chow hall



CV-127 (09/09) PLEADING PAGE FOR A SUBSEQUENT DOCUMENT

(cont'd) STATEMENT OF FACT - PRELUDE

when inmate go to eat, are there to observe any and all yard activity and to immediatly assist in a 'trouble' situation, especially when a fellow officer was in trouble, just yards away from where they were stationed. when these officers took no action on a stated 'RVR' violation, then it is apparent that such an event leading up to code that was called, never took place, as these correctional officer observers, 'did not see or observe' what was described in a RVR. violation that was issued.

1d) ~~An~~ 'SERIOUS RVR' Becomes false when the preceding (1.a thru 1c) is not met.

1e) It is the requirement of any and all supervisors, or anyone up the chain of command ~~to~~ their handled, read, or copied this 'SERIOUS RVR', to recognize the serious faults of the writer's narrative & immediatly dismiss the RVR. The key parts of Archuleta's narrative that should have raised serious concern 1) APPROCAHING THE CHOW HALL 2) GOING THE WRONG WAY 3) AND the word "WALKER" mentioned, and Dragasits as the subject of this violation, now the plaintiff, REFERS TO INCLUDED documents and updated paperwork/WITNESS STATEMENTS IT IS TO BE NOTED, PLAINTIFF DRAGASITS 1ST HEARING TOOK PLACE ON 12/20/2018 BY LT. FERREL THE 2nd ~~RE~~ HEARING ON 10/5/2019 (RE-HEARING) SHO LT NUCKLES" FOUND THERE WAS NOT SUFFICIENT EVIDENCE FOR THE SPECIFIC CHARGE OF "ASSAULT ON A PEACE OFFICER"

t. My rehearing because of due process violations, was nearly one year later because of [illegible] delays of prison officials. Plaintiff was found guilty of a lessor included offense, by plaintiff disputed. Plaintiff was found 'not guilty' of the original charge. Again, Archuleta was not available because, as SHO LT. Nuckles stated, she was on mental health leave; Defendant Nuckles failed to include this in his OHR, rehearing results.

30) Considering defendant Archuleta was on mental health leave, leaves the factual possibility that defendant was not fit for duty on 11/24/18, at approximately 5:20 p.m., at which time plaintiff was tackled from behind, causing multiple injuries. Also, the denial of access to the chow hall for supper. It also shows a lack of training by her immediate supervisors for not knowing yard rules and regulations required for correct job performance in dealing with inmates with obvious disabilities and ADA issues;

31) These supervisors and their supervisors are required to track all officers for making sure they perform their duties to standards required and to notice any mental health issues that interfere with their job as in the case of plaintiff.

32) DECLARATION OF PATRICK PAWLICKI (AN9292), SIGNED ON APRIL 22, 2025 AS A WITNESS OF THE EVENT ON NOV 24, 2018 ON 'D' YARD AT R.J. DONOVAN C.F. AT SUPPER TIME AS PLAINTIFF WAS APPROACHING ENTRANCE TO THE CHOW HALL

33) Declaration of Ebrahim J. Haddad, signed on 6/7/2025, stating specifics of RJDCF 'D' Yard RULES & REGULATIONS as an ADA inmate with a walker, such as:

a) has had head of line priveleges to eat at the chow hall & has not had any problems in doing such.

b) there is no 'wrong way' for people with walkers, as going against traffic

c) Mr Haddad states, he himself, has seen the 2018 'D' Yard rules & regulations that states 'Head of Line Privelege of inmates with walkers.

34) Archuleta's RVR in it's substance, was seriously flawed in it's narrative, of basic ADA rights as described in an early 2018 published 'D' yard rules & regulations by Capt Benyard, a head of 'D' yard. Archuleta's RVR should have gone no further than each & every official that seen it, heard of it, approved it, in any way shape or form as such, the following OHR's, should have thrown this false 'RVR' out or thus disapproved it.

35) Declaration of David Ballard AE4110 Signed 6/11/25, states what he saw at supper time at RJDCF 'D' yard chow hall on Nov 24, 2018. He was latter arrested for verbally protesting the assault & battery of plaintiff and we talked in the gym cages where we were held & gave me B. Garcia's name (defendant)

STATEMENT OF FACTS UPDATED 12/1/25

36) AUG 27, 2025, Raymond Gibb's recognized plaintiff as the ADA guy who got beat up and wondered why and signed declaration of the events of Nov 24, 2023 This is while plaintiff was on 'A' Yard at CIM

37) Appeal coordinators and their supervisors, their job being to review 602 appeals promptly and to see that this paperwork gets to their intended destination promptly in this case R.J. Donovan prison's second level response. Both these individuals & RJDCF had failed in the 60 day time constraints to respond violating my 14th Amendment due process in hearing my free speech 602 complaints of various officers that violated 8th, 14th, 1st Amendment rights & should be held accountable for this reason. There is a list of 602 appeals that had to be written & then rewritten to achieve the 'exhaustion of remedies'. These defendants caused this 40 usc 1983 to be writen after the tedious accomplishment of the exhaustion or remedies and this task caused undue stress and plaintiff believes this was done on purpose. It finally took 3 years to exhaust remedies and the ADA complaint suffered because of these purposeful delays. This should be taken into account, as these delays, according to the JUDGE, MISSED THE 3 YEAR Timeframe. Defendants accordingly are 1) listed appeal coordinators & their supervisors 2) officials at RJDCF as an entity c) CDCR as an entity for failure to oversee and implement a time constraint deadline that is followed and adhered to and to hold these individuals accountable and now is in the hands of the courts.

UPDATED 12/3/2025
7 pgs

SUPPLEMENTAL FACTS FOR THE RECONSIDERATION OF THE OPINION BY JUDGE Schopler

1) INCLUDED 2 drawings close as possible, that I could draw, of 'D' Yard at R.J. DONOVAN PRISON where incident occurred.

2) These drawings show the officers I charged 'failure to intervene' were a couple of SECONDS away to get Archuleta off of me, and thus prevented the battery of 2 other officers. The time Archuleta was on my back until Sgt Scharr arrived 2.5 minutes at least, later after the code. He then exclaimed 'Get off his back & get him up.'

3) It was explained to me by my IE Avila, investigative employee, that I could ask written questions to anyone, including inmates, which I did. Unfortunately, the 3 inmates I knew by their full name, were not in line waiting for chow and indicated that when presented my questions. Avila did not make announcements for witnesses. Again the questions I posed to defendant CO Quijada, stated he didn't see what Achuleta described and he didn't hear any cursing by me. He is an eyewittness, in which Lt. Ferrel ignored, making him deliberately indifferent in written free speech, and deliberately indifferent in ignoring a direct question of where is Achuleta; in which, warden Covello described in a 602 second level response as a "due process violation." This an admission of guilt. Thus, Lt Ferrel was deliberately indifferent to my written and verbal free speech in my question to him (Ferrel) and my 14th amendment right for "due process" in a critical "serious" RVR (Rules and Violation report). I cannot stress enough that this hearing had to follow the rules of hearings and the constitution.

* TITLE 15 Rule

as I had mentioned previously shaped the present and future prison life as far as freedom and privileges deprived.

3) Normally rehearings never occur, and 602 appeals are almost always denied, leaving it for the coarts. all the people I listed as defendants had a hand to making my prison life horrible with a guilty verdict instead of a normal 3rd level prison yard life as I described it in this letter.

4) Co Archuleta showed definite signs of mental instability in this incident and at least another time as descibed to me by witness Raymond Gibbs, as I submitted his declaration for the incident on Nov 24 2018, on August of this year (2025)

5) Lt Nuckles, the SHO at my rehearing, described assault in his definition listed in the DHR (disciplinary hearing result), supplied in the exhibits provided to the Court. He found me not guilty of the assault charge by the same definition of assault that Judge Schopler described in my Complaint of Assault and battery which the judge granted.

6) I listed Lt. Nuckles as a defendant for assessing a lesser charge and not indicating in his report that defendant Archuleta was not available due to 'mental health leave'. I appealed this as well, and when I addressed this FACT, to the office of appeals, they declined to write a third level response, meaning that I was right, that charge should have been dismissed as well, and did not verify that Archuleta was on mental health leave. This was a "due process violation" by the office of appeals and is why I listed them as defendants for 1st & 14th amendment violations. Defendant Achuleta's mental instability should be investigated and her medical records looked at to actually see if Lt. Nuckles statement of mental health leave was true, as RJDCF & CDCR COA should have

7) I'm asking the court to eliminate these false charges against me as it is a detriment to my record for early parole & release and any other law I might qualify for.

8) I listed defendant's that are responsible for putting a mentally unstable officer on a prison yard of men, who dosen't know the rule listed in a published yard "Rules and regulations" for 'D' yard, that they are required to know as the captain of 'D' yard Benyard published in early 2018. Is it plausible that any officer who read Archuleta's statement, "that he didn't stop" and he was going the wrong way", was a direct violation of the prison yard and regulations by even Benyard himelf who signed this publication. When officers and officials fail to adhere to or even recognize their own published rule, should they be held culpable for an immediate due process violation and not approve an RVR that was faulty and there was no one, not one to verify this story, why should I have to suffer at the hands of one unstable officer and ultimately be punished by a prison life that I didn't deserve other than the 3rd level life I was experiencing.

When the courts let one correctional officer, who was proven wrong, off the hook and make false statements to the detriment of another individual, how is that going to prevent other correctional officer from making obvious false statements to cover up their behavior and physical force towards another without at least one person, among many who were there, to verify that initial charge. Witnesses such as correctional officers & inmates waiting in the chow hall line as per TITLE 15, as plaintiff requested, could verify plaintiffs INNOCENCE

9) Level 4 security prisons such a L.A. County State prison have the highest security, less priveleges, hours less yard time, very limited if any dayroom time, have to be escorted by a CO to a clinic to see a nurse or doctor and a CO has to be present at these visits at all times. Kern Valley state prison is even more intense in security as there are 30 ft. high concrete walls with guards on the top of them, ready to shoot bazooka type guns with canisters of intense pepper spray when any fight or gang related upheavel occurs when there are a multitude of 10, 20, 30 inmates going all out and don't follow an order of prone out, which happened often.
There is very little of this type of event at Level 3 and below yards as inmates that show good behavior and work & shchooling effort, with rehabilatative programs are rewarded with deduction of points and thus less scrutiny, more freedom and privileges as the inmate is less likely to commit a violation.
This prison life is the best I can describe to the honorable judges along with the previous points I made in this letter, on how this affected me.
My point total went from 47 to 63* with the deliberately indifferent 14th amendment and 1st amendment violated hearing by Lt Ferrel, (SHO) From an extensive 1 1/2 pages description of the events before and after the Nov 24th 2018 8th Amendment violation, right foot surgery, foot infection with pain and a visit to Saturday morning critical care for this serious medical need, plus the walker head of line privelege and the extensive discussions with Archuleta about all of this, defendant Ferrel put down on the hearing results, "didn't want to walk the long way". The SHO Ferrel was completely deliberately indifferent in representing my 1st Amendment right of free speech of plaintiff's complete account.

*classification pts above 60 gets prison send prisoners to level 4 yard prisons

** PLAINTIFF'S 5

* plaintiff The 2 page account of the facts handed to SHO Lt Ferrel described exactly what plaintiff stated in his multi-complaint and the many 602 appeals he* submitted. I saw defendant look at the statement for 3 seconds, put it down on his desk and pronounced me guilty, He violated my written free speech by not reading it. He also stated a much less false charge

10) CO AVILA should remain as defendant as she failed deliberately to have an announcement in all inmate housing buidings for witnesses to what truly happened at Supper time in front of 'D' Yard Chowhall. Plaintiff had no recourse but to rely on the appointed IE, investigative employee for these unknown people who were waiting in line on the designated sidewalk to eat at the chow hall. Plaintiff could not have known who was behind him as I was facing either sideways or toward the entrance. I named people that I knew for interviews, hoping to find some who were there at that time, but there was none that I named that were there. The included '<u>rights of prisoner</u>' excerpt from the <u>TITLE 15</u> states "THE DUTIES OF AN IE (exhibit 4 SEC B #4) "IF ASSIGNED WILL GATHER INFORMATION, QUESTION STAFF AND INMATES, SCREEN WITNESSES AND COMPLETE AND SUBMIT A WRITTEN NON-CONFIDENTIA REPORT TO THE DISCIPLINARY HEARING OFFICER." When defendant AVILA responded "I'm not doing that," I tried to convince her that this request was crucial to my defense. This was deliberately indifferent to my due process 14th Amendment right, and that of <u>CDCR's TITLE 15</u>. The <u>TITLE 15</u> must be changed to reflect a better 'rights of prisoners' not to be left to a low ranking officer, but a qualified outside source defender to make sure a prisoners rights and defense is upheld. TITLE 15 was not followed as written & plaintiff states it is inadequate as is.

11) ALSO, ALL interactions with the IE and the serious hearing by the SHO Ferrel, should have been video recorded, so that the evidence of Ferrel stating the lower violation of 'disobeying an order' could be played to other officials/supervisors & the court.

disciplinary hearing
This should have been recorded as it was used in a video recorded video just days after the Nov 24, 2018 8th Amendment violation as I stated the facts to Lt Ortiz who conducted the interview & he remains a defendant as a supervisor who did not supply this crucial video to SHO Lt Ferrel, a due process violation.

12) Other new exhibits is a notice of "BOARD OF PAROLE HEARING RIGHTS - Consultation".
Whereas a hearing officer will review the prison record of plaintiff and will have to explain the false charges levied against me, that shouldn't have been there in the first pla[ce]. I had a chance to review my prison record and these charges and DHR info, are all on this record.

13) While reviewing my record, it was observed that when I was erroneously found guilty on a false RVR, this caused notice of all correctional officers and their supervisors and thus the exhibit "ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE".
The section "REASON(s) for placement (PART A)" has a list of possible reasons for ASU placement (THE HOLE). A checkmark by "endangers institutional security". refers to the false charge by defendant Archuleta. This exhibit is the initial 11/24/2018 placement.
Reviewing my prison record, while being transported to San Diego Superior Court for resentencing from, the 1st time from LA County State prison to R.J.D.C.F. then to San Diego Jail and again a 2nd Transport from KVSP (Kern Valley State prison) to RJDCF & again transfered to San DIEGO County Jail, The reason I couldn't stay at R.J. Donovan is because, again a hearing that didn't meet due process*, and the prison record of plaintiff's

* AND A False guilty verdict

Exhibit example
* ASU Placement where 2 boxes were checked ✓.
☑ Places immediate threat to the safety of self and others.
☑ Endangers institutional security

(7)

Because of these two checked boxes, Lt. KOTTREL told me I couldn't stay at R.J.D.C.F. Thus plaintiff was transported to San DIEGO COUNTY Jail and processed for admission for the first of two long stays at COUNTY JAIL, which is much worse than level 3 prison life, where there is freedom of extended yard activities and sports, but also the personal property of television, radio, electric shaver, personal hygine and gray or white clothing (shorts, sweats)e

Without this false charge and a due process-less hearing at R.J. Donovan, a San DIEGO Superior Court RESENTENCING Hearing would have been less than a 1 day trip to Court and no County Jail Stay. Plaintiff cannot stress this outcome enough. 212 Days of county jail & transports with stay in the hole (ASU) as part of the transport stays to get to court. Much worse than level 4 life at prison let alone the level 3 prison life, I should have had at R.J.D.C.F. if not for a false RVR that should have been dismissed before I left the yard (B) at R.J.D.C.F. & taken to the hole (ASU) If all defendants did their due diligence in the interest of Justice and followed the TITLE 15 Rules OF RIGHTS OF PRISONERS and the United States Constitutional Amendments. The 1st hearing, if done right should have produced a not guilty verdict and was an important hearing, as all the witnesses, medical paperwork & the reporting employee were all there, at R.J.D.C.F. and plaintiff's requests were not addered to. There were many witnesses present at the time of plaintiff's complaint of 8th Amendment violation. Officials at R.J.D.C.F. are all culpable and should be held accountable. Existing TITLE 15 Rules were not followed and all the 602 appeals do not produce the due justice plaintiff deserved causing punishment of harsh level 4 and worse jail conditions. CDCR did not meet appeal time constraints causing my administrative remedies to be delayed or possibly dismissed. Court Action was put at jeopardy.

There were 3 witnesses who submitted declarations to the court for the 11/24/18 8th Amend. violations
One of the witness's declaration was submitted to the court just last month as he noticed and recognized me here at CIM 'A' Yard and came up to me and asked me were you at R.J. Donovan on 'D' Yard, The ADA guy that got beat up by officers. The answer of course was yes. Judge Schopler discredits these declarations, but inmate witnesses can be used at hearings for a variety of prison infractions called a 115, And produced a successful not guilty outcome* *This fact is in the TITLE 15 in which CDCR runs by.
These declarations show that Archuleta's statement which was produced after the cruel and unusual event, excessive force, and assault and battery, was a lie. Also, finding out later, this officer had mental health issues and should have never been on a mens prison yard How Archuleta got to that point should be of grave concern of anyone around her, and I could only point out that this should have been of deep concern to her supervisors. I tried to point this out in my complaint, of a mentally unstable correctional officer, making decisions such as not knowing yard rules & regulations as for as inmates with walkers and mobility impaired vests have head of line privelege and can walk to the chow hall from any area on the yard, in my case, from the pill window. I had pointed to the part of her statement that she said 'I was going the wrong way' to the chow hall. Capt Benyard produced this rule and regulation, yet him and other officers who read her statement deliberately disregared this, wrong statement A declaration by Ebrahim Haddad verified this rule.

5 John Does', Quijada & Saliewski were stationed at the chow hall on Nov 24th 2018. I listed them as defendants for failure to intervene. I have to make this point clear. Their backs were to the wall of the chow hall at supper time on this date, and their purpose was to observe and intervene for any disturbance. Co Quijada, made it as defendant. He traveled approximately 4 paces or strides from the chow hall entrance, which took 3 to 4 seconds walking, or less depending on a disturbance as were the defendants that didn't make it as defendants as CO Quijada did. They certainly observed, as Quijada did, Archuleta taking me down from behind and getting on my back. Within 2 seconds they should have gotten Archuleta off my back before she even called in a code. Even before Archuleta took me down from behind, they certainly saw me standing there for several minutes after Archuleta & I were talking, making my injury and my increasing foot pain known to her, and then taking my ID.

If there was any wrong doing involving CO Archuleta, these CO's would have flocked to her assistance immediately. There was none up to the point of Archuleta, taking me to the ground hard from behind. Those stationed Co's in front of the chow, should have acted immediately and take Archuleta off my back before the code and those 2 defendants, who came from inside the housing units, began to batter me. These are certainly defendants who failed to intervene, before B Garcia & Nossia beat me, but even after the assault and battery

as I was struggling to breathe, crying out for help, as a 160 lb person was sitting on my back. As in my 1st amended complaint, Sgt Scharr had to walk from the program office of 'D' Yard to the front of the chow hall and that's when he ordered the CO's. to get her off of me and get me up.

Sgt. Scharr was charged with a due process violation for either lacking to do a proper on the Scene investigation or overlooking the fact that no officer could confirm her claim. When someone is charged with a claim or crime, that person should be afforded a opportunity to state his side of the story. I was not provided that opportunity with Sgt. Scharr on his 2nd visit to me after I was placed in a single holding cage in the 'D' yard gym where these cages were located. That's when he told me the charge that Archuleta was claiming and then he left abruptly, not affording me a word in my defense. This is not normal for prison procedure for a violation.

I also have in my possession, that I might also have sent to the court, crime scene incident reports, paperwork to submit to the DA for criminal referal, with a charge of "attempted battery". There was a form signed by 2 officials stating not to pursue this charge, or to pursue DA criminal referal. I am concluding that they had no evidence, or no witnesses for officials to pursue the "attempted battery" charge. For this same reason they should have dropped the charge Archuleta lied about and one that I had to fight on my own from an ADSEG BUILDING/cell, secluded from my property and paperwork.

1/24/26

Whereas, I was secluded to pursue my defense with nothing in my possession to fight the crime of Archuleta, Massia, B. Garcia, Quijada and the stationed officers in front of the chow hall within 2 to 3 seconds from the crime that they undoubtedly saw with Archuleta, and by not "intervening" to pull Archuleta off my back when I was in distress, and then thus preventing the continued crime of Massia and B. Garcia, in front of defendant Quijada, and also Salewsky and the other CO's that I charged.

Also in the included paper work that I sent to the court where questions I posed to people that I could come up with, that might have witnessed the event/crime of correctional officers. Some of this was guesswork, but I did pose a question to 2 officers, one being an eyewitness, CO Quijada whereas in a response to the question "did you see the claim of Archuleta made against me?" The answer, NO, I DIDN'T SEE IT. Quijada was right in front of me, an eyewitness. This was proof positive of the lie by Archuleta. Quijada and I started our conversation on why I was standing there, just feet from the entrance to the chow hall. That means I was standing in place for several minutes in one spot, to counter the claim Archuleta made, "that I didn't stop and proceeded in her direction." A LIE by Archuleta.

The same question was posed to the tower officer located above and just to the south of the officers crime. He provided the same answer as Quijada. I conclude that the other officers stationed in front of the chow hall would provide the same answer. ALL this pertinent, important information was in...

1/24/26 (5)

the possession of the SHO, the serious hearing officer, Lt. Ferrel, who I charged with a 1st & 14th Amendment violation. He basically became the Judge, jury and executioner. How could I possibly present any kind of defense when Lt. Ferrel had a preset mind of guilt, disregarded the evidence paperwork I described, was not provided this information by the assigned I.E, Investigative employee, COAVILA, charged with 1st & 14th Amendment violation for her 'intentional' failure to not provide the things I needed to present any kind of defense on my part. She was my only lifeline and failed miserably, that's why she was charged. My 1st Amendment, "free speech" was eliminated as she ignored the required items that I told her in writing, thus violating my 14th Amendment right of due process in providing documents that would have cleared me of any crime at my hearing. SPECIFICLLY, the request to produce evidence/offical medical report that indecated my visit to central medical that works on Saturday morning, because I put in a medical form the previous day or so indicating I had a 'serious medical need' of an infection on a surgically repaired foot and possible cellulitis. I credit medical for responding quickly for a very hurtful right foot on Saturday morning Nov 24th 2018. The same day, that night at Supper time, a crime was committed on me. This medical document, along with other investigative information forms, would have given Lt. Ferrel reason to think hard for a preset notion to find me guilty. As It is, Lt. Ferrel stated a lesser charge to start the hearing, which suprised me, and

(6)

I let my guard down. I had prepared a 2 Page written statement of the facts associated with this complaint, the true facts of the day of Nov 24th 2018, and my foot surgery, visit to medical TTA, that morning and that I was only out at supper time to pick up an antibiotic for my hurtful infected foot that was prescribed that morning. This was the same information provided to Archuleta when I cordially talked to her. There was no cursing at her that day, and this question was also posed to Co Quijada, who answered NO to it.

When Lt Ferrel, who is judging this hearing, states a lesser charge, who then only spent a few seconds in looking at my prepared statement and then puts it down on the table, and then ignores me when I asked "Where is ARCHULETA," she is suppose to be here!' He then finds me guilty, what am I suppose to do. To me, he didn't read my prepared statement, a free speech violation, stated a lesser charge and ignored my plea for ARCHULETA to be present as I had prepared questions for her. This can only be a 14th Amendment violation, My due process was violated in Archuleta not being at my hearing. WARDEN PATRICK COVELLO, Agreed and stated such in a 2nd tier 602 APPEAL which was presented to the court. When the warden of R.J. DONOVAN D.F. states this was a DUE PROCESS violation, how can this not be in federal court!? This was an important hearing. Without having the proper tools to provide myself a proper defense and no one to help me as Avila

was suppose to provide as my IE, investigative employee, my chances of a not guilty verdict was sunk. This hearing was so important, that it would determine my immediate and future life in prison. I will now explain to the best of my ability and knowledge what the lack of due process of my rights due to the deliberate indifference plus the ineptitude of SHO Lt. Ferrel's guilty verdict.

I must point out first that Lt. Ferrel started the hearing with "we are here for disobeying an order". So after the hearing and I was sent back to a cell in ADSEG, known to everyone in prison as the hole, I wondered why I wasn't put back on D yard, back into a normal cell with my property. I wrote a 602 appeal, as it was known back then, explaining that and within a few days an officer came to my cell in ADSEG and told me the fact that the SHO found me guilty of the original charge, to my shock. Immediately I submitted 602's to appeal everything I could think of. The fact that everything I thought about the lesser charge vanished as my return to the yard at R.J. Donovan was gone and the disobeying an order as stated to me was a lie. The lesser charge would have been much easier to fight as I could have done my own investigation on the yard where this crime against me occured. Finding witnesses and gathering the medical documents I needed to prove my point, that I didn't stop, which I did, that I just had recent surgery and complained of foot pain (severe), infection and the fact that I was already ADA before the foot surgery and mobility impaired as indicated by a walker and a yellow mobility impaired vest, and the medical paperwork to indicate this, as well

I was able to supply most all of this information at HUSP at the rehearing nearly a year later as I was found not guilty of the charge of Assault as the definition of assault was explained by the SHO, much to what Judge Schopler explained in his opinion of assault. This is the verdict I should have received initially in my first hearing as I believe I have explained successfuly in regards to Scharr, Avila and Ferrel. Other supervisors will be addressed later. Results of a guilty verdict which is somewhat explained in my 1st Amended complaint are as follows:

1) My security points rose 14 points/16 points as a result of being guilty to 63 points which put me past a level 4 indicator of anything over 60 points, the option of CDCR is to send you to a level 4 prison security, which is the highest. A normal rule violation is 6 points and if an inmate is free of any violations for the reporting year, 6 points is deducted. I was taken from an extended stay at ADSEG at R.J. Donovan prison of 34 days and transfered to L.A. County State prison for 7 days at ADSEG, AGAIN, this is prison within a prison that's why it's called the hole, no priveleges, no property no amenities. This is punishment in the extreme. The stay at level 4 prisons has less priveleges & freedom than a Level 3 prison yard such as at R.J. Donovan. This means less outdoor yard and the benefits of outdoor activity and less dayroom time which comes with less time with friends and other inmate with which to converse, less time watching dayroom T.V., or playing any kind of table game. Normal prison life of a level 3 prison yard is severely diminished at a level 4 yard, meaning less freedom and more intense scrutiny

2) As another result of the guilty verdict was having to be processed into San Diego County Jail for the phase of the San Diego Superior Court rehearing 2 (two) different times. Jail is very harsh as compared to a level 3 yard facility at R.J. Donovan where I would have been had I not been found guilty of something I did not do and anyone on the yard at that time, would agree and that the crime that was committed was against me and the declarations of 3 witnesses should be counted as true as would they had been on a stand in a court in front of a jury, testifying, to what they saw.

I indicated in my 1st Amended paperwork labled Sept 17, 2019, that the total time of harsh, adverse conditions totaled 202 days, for transport to and from county jail and included the time spent there.

I now will attempt to explain the CDCR 602 appeal process will most likely fail for any inmate who uses this paperwork. Denied is the usual result of this paperwork as you try to get it through the three levels needed to complete the "exhaustion of remedies" before you can take your complaint(s) to the court. I had to complete and submit a mountain of paperwork to accomplish this, through no fault of my own as appeal coordinators, who were listed as defendants, did not get my submitted 602 appeals to me in a timely fashion. I made known on my 1st Amended complaint, that these coordinators, with a couple of clicks on their CDCR computer, could have produced my whereabouts in California, and realized that I was at "this" specific location at the time of submission of a 602 appeal and returned it to me in a timely fashion, and thus delaying my right to due process.

There is a time frame to adhere to in returning 602's to me that was not met. Is this not a due process violation and an attempt to deny my 1st Amendment right to free speech in the length it took me to exhaust remedies and thus give up, as certain officers would prefer, and some inmates who actually give up and not proceed to get to the court, for a remedy and an ultimate court decision.

This is why I submitted constitutional rights violations in interfering in my 1st & 14th Amendment complaint against these individuals, appeal coordinators, and submitted these documents in my complaint, to show what they said, and having to go through great lengths to prove that I was not the one that was at fault with the delays of submitting appeals in a timely fashion, in the fact I repeatedly had to write and rewrite these appeals, as shown in some of the exhibits I submitted to the court.

These people/defendants have access to a CDCR computer to instantly find out where I am located and then through, next day delivery option, if need be, received these official documents.

Not only should there be pain and suffering from my injuries on Nov 24, 2018, including the broken rib I had to put back in place myself, but also the time leading up to the hearing in not getting what I had requested for a proper defense, but also the time after the guilty verdict, and thrust into the adverse conditions of Level 4 and San Diego County Jail. I previously stated that this trip to County Court from R.J. Donovan would have been a 30 minute ride to court and then returned to R.J.D. the same day. NO County Jail needed. 212 DAYS LOST

212 Days lost of normal & 3rd level prison life yard due to transports & county jail stays
What happened to me at the critical first hearing as I have been explaining was the deliberate witholding of critical evidence already listed in this declaration plus any results of an investigation that should have been conducted on the yard after the crime against me on Nov 24 2018, There was also a video that was made while I was in ADSEG because of my complaints. This video was also critical as I told my side of the story. This evidence, that was recorded, was held by LT. Ortiz. That is why he was a defendant for 1st and 14th Amendment claims, withholding my free speech from going past the room that it was recorded in, a office at the ADSEG Building. This withholding also stymied my defense which has to be a 14th Amendment violation of another leg of due process.

The medical document that Avila was suppose to retrieve was my visit to TTA medical, indicating a serious medical need for my very painful, surgically repaired infected foot. I indicated this in my 2 page statement handed to SHO LT Ferrel. This medical document from the morning of the 24th of Nov, in my hand, would have at least started a discussion of what I repeatedly was telling Archuleta on that time and date, supper, Nov 24 2018. This discussion would have been at my hearing with Lt. Ferrel, of my serious medical need on that day assuming of course if he was attentive and not ignoring my attempt to prove my innocence.

Judge Schopler's opinion of letting the grievance process play out and in my opinion, belitting my 1st hearing, does not do justice of how serious this false write up was, and the fallacy of the guilty verdict that was thrust upon me and the relying on the 602 appeal process which only achieves denial

These denials are standard and force inmates to take their complaints to court, and go through the lengthy process to hold people responsible for their past violations of CDCR policy and the constitution.

1) The series of events delayed the process of me going to a level 2 prison as where I am at now, meaning more freedom, much less lockdowns due to inmates fighting or possible gang related issues as I experienced at Level 4 Kern Valley State Prison, more lockdowns than any level three prisons. I was put on a 'ACTIVE' yard where competing gangs were located and had to go prone every time this took place. A Co had asked me while everyone was prone, "what are you doing on this yard". There was no room on any other yard, was my reply.* These examples I have provided show how my prison life changed drastically, from normal to adverse.* (my age & obviously not a gangmember)

2) Because of the false guilty verdict initially, I lost my A1A status to A2B which means no yard or dayroom at all times on weekends and holidays. The same for after 7 P.M on weekdays. This affected my normal prison life as I was A1A.

3) This is important. Having a guilty assault charge on my record and even if found not guilty, and just being written up for any violation has a profound affect and basically ruins any chance of achieving an early parole or possibly not qualifying for a resentence whereby the passing of new laws by the state of California, are will.

Finally, by expanding my thought process to produce this declaration in detail, made me realize that this was worse than I originally thought.

The Rise of Plaintiff's classification points due to a FALSE SERIOUS RVR & guilty verdict at hearing where defendant Ferrel/Avila & others contributed to a 14th amendment violation when written free speech was ignored, not read, &/or not put in writing: on a DHR

EXPLANATION OF PRISON SECURITY LEVELS/CLASSIFICATION PTS.

Plaintiff will attempt to help the Court understand the considerable differences of the four (4) levels of security attached to the State of California prison life. Each person, after being convicted of a crime(s) and sentenced by a judge is eventually sent from County Jail, to a state prison reception yard. Then a state prison counselor determines that prisoner security level classification points. Those points are based on the seriousness of the crime(s) and the length of sentence. Then there is a deduction of points from that total depending on their civilian background, such as job history, schooling completed etc. The final total of classification points total will determine the level of security yard of a particular prisons that an inmate requests. Each prison has different building yards of different levels of security.

LEVEL 4: Highest security: 60pts. or higher
" 3: medium " : 33pts to 60pts.
" 2: Low " : 19pts to 33pts
" 1: minimum " : 19pts or less.

Each year every prisoner has a classification committee meeting to determine that person's addition or deduction of points, depending on his behavior.
No write ups or RVR's - 6pts deducted from total
one (1) write up or RVR - score total stays the same
Two (2) write ups or RVR's - 6pts. added to classification score

* Plaintiff's classification points rose from 47 to 63 points and was sent to a Level 4 prison yard at LA County prison. THIS IS the PUNISHMENT I Received FOR A FALSE SERIOUS RVR and a subsequent guilty verdict by SHO Lt. Ferrel that had no prisoner safeguards listed in the TITLE 15 as lacking as it is in other details, and no Due Process as plaintiff explained, & my 1st Amendment free speech, NOT READ

2

EXPLANATION
Pg 2 PRISON SECURITY LEVELS/CLASSIFICATION POINTS IN REFERENCE TO IMMEDIATE PUNISHMENT OF PLAINTIFF. 21

This rise in points is punishment to harsh conditions of level 4 prison life, harsher conditions in transports to & from San Diego County Jail as well as the extended stays there, where there is no amenities of level 3 prison life.

My prison status of A1A was reduced to A2B, which means no yard or dayroom on weekends and as well after 7PM to 9PM on weedays. This is also punishment.

There was no points deduction or A1A status resumption due to SAO LT. Nuckles NOT GUILTY verdict at the rehearing 10/11 months later, because put on another serious charge on my record that I didn't deserve & appealed to no avail. CDCR officials will not admit mistakes and will do everything in their power to twart justice and if they did it would be an easier time for a judge to award compensation. I respectfully ask the court to rule in my favor as for compensation as plaintiff has tried to call attention to the many violations by state officials, and to hold them accountable.

DIRECTOR of CDCR J. MACOMBER was listed as defendandant, because CDCR's TITLE 15 is lacking in protecting the rights of prisoners as listed. Defendant Macomber is responsible for not updating the TITLE 15 to protect inmate rights even further than written, for example, having civilians take care of the due process of innocent prisoners investigation and gather up the witnesses that were present and testify. Macromber failed to implement a program to monitor the instruction & testing CORRECTIONAL OFFICERS as to their mental stability at a men's prison. This was not the case for defendant Achuleta as Macromber is culpable

SUPPORTING DECLATION

23

**May 17, 2018 at 11:35 am** - Form 7536 DME/Supply Receipt is produced by Lun Aurora Hudson. The form indicates durable medical equipment distributed to inmate which includes, inter alia, (A) Mobility impaired disability vest (lime colored), permanent; (B) permanent walker.

**November 16, 2018** - Admitted for surgery for removal of large dorsal spur over the mtp joint, causing pain and pain with dorsiflexion of the toe. Also, removal of a spur proximally over the base of the first tmt joint. This was done on the right foot. This information provided on the operative report of the tri-city medical center.

**November 23, 2018** - Submitted CDCR form 7362, which request for health care services, complaining of a right foot infection around my stitches and it hurt.

**November 24, 2018** - Form 7506 (Rev 09 13), states: At 11:30 am., RN McCann took information of my visit at the TTA medical office, noting my complaint of foot pain, description of my infected foot and other details including: being prescribed the antibiotic doxcycyline by Dr. Santos, which they prescribed over the phone.

**November 24, 2018 at 5:15 pm** - let out of cell by tower officer and he stated that my medications were ready for pick-up. This was before evening chow release, but I was not planning on walking to chow due to foot pain. I was required to pick-up my antibiotic medication at the medical window, located in the gym.

**November 24, 2018 at 5:30 pm** - I proceeded to the front of the line for chow in the chow hall, as inmates with walkers have priority to be at the head of the line to receive their food, this is pursuant to a published and established rule policy, under rules and regulations, on facility D. It was during this time, officer Archuleta stopped me and I complied, while politely describing my situation. I described to the officer the amount of pain I was currently in, while citing regulations for inmates with walkers, events relating to my foot surgery,

51

24

infection, picking-up medications at the med window. I also informed the officer that due to the amount of pain I was experiencing, I was unable to walk the extra 300 feet, required from that location, to retrieve my medication at the med window. Archuleta collected my inmate I.D. card, even after I showed them my bare, infected, red foot. Five minutes later, while still standing in from of the chow hall, Archuleta spoke with me to inquire more about my situation, and I explained what had occurred. As I reached behind me on one foot, to get my walker in-order to sit down. I was tripped from behind by someone. The individual who tripped me, I was able to identify as officer Archuleta, the officer also sat directly on my back. It was then that officer Quejada reached-out as I fell, and I then fell hard. Officers B. Garcia and A. Massia, inflicted more pain on me just minutes after the incident described above. At this point, I was unable to breathe and I attempted to call for help and get this person off of me. I called-out as loud as I was able, and stated, as loud as I could, muffled, "I can't breathe." I then heard someone from the chow hall line say, "Get off of him." The person who yelled at the officers was a man named David Ballard. who was handcuffed for protesting about the officers assaulting me. He was locked inside a small cage, next to the cage where I was. and he named the officers who assaulted me. Inmate Ballard + Inmate Pat Pawlicki CDC # 9282, also a witness, wrote an included declaration of the 11/24/18 event

**November 24, 2018 at 6:45 pm** - Plaintiff is taken to TTA medical for treatment of his injuries that he suffered by the hands of officers Archuleta, A. Massia, and B. Garcia. A CDCR form 7506 was completed by RN Washburn. Plaintiff was ordered a "lay-in," by the medical staff due to injuries plaintiff sustained as a result of the assault, which included an infection of the right foot, which was painful.

**November 24, 2018 at 5:40 pm** - After the officer assault against plaintiff occurred, by officers Archuleta, A. Massia, and B. Garcia, a CDCR 7219 Form was produced, indicating injuries plaintiff sustained, and describing the specifics of what occurred during the incident.

25

RN Campos I.D. #82388, took down this information and wrote down my shortened version of what occurred, or otherwise happened to me. in the box, on the form, brief statement in subject's words of the circumstances of the injury, etc... The statement reads: "I was going chow and they told me to go another way and I told them I couldn't walk and I recently had surgery, and that is when they took me down." I was one hundred percent in the "right," I did not deserve the mistreatment from those officers. I yelled for help because I couldn't breathe.

**November 24, 2018** - Date of crime/incident report, form CDCR837-A (REV 10/15), was produced stating the specific crime, which was "Attempted Battery on a P.O." This was signed by Lt. G. Hernandez with the name Patrick Covello included on the list. The other names listed on this report, on other pages, with above-alleged crime include officers: A. Massia, M. Nieto; C. Archuleta. It should be noted that C. Archuleta is listed as the accusing officer who later changed the charge to "Assault on a P.O."

**November 24, 2018** - Also, SGT. Scharr did not bother to get my statement of these events when he sent me to the cage located in the gym. Neither did SGT. Scharr interview others on the scene like the other officers who were stationed in the chow hall. Instead, SGT. Scharr accepted an account by officer Archuleta that was so spectacularly false, that not one officer that I sent, questions could confirm any of Archuleta's lie. Scharr couldn't account for inmates w/walkers have head of line privelege

**November 24, 2018** - Sent to Administrative Segregation

**November 26, 2018** - Plaintiff submitted medical request form. I.D. #7559438, (7362), complaining of extra pain, caused by police brutality on a 66-year-old with permanent mobility vest and a walker. Injuries include injuries to the (a) Head; (b) Face; (c) Ribs; (d) Right Leg, Right Knee, Right Foot and Heel; (e) Left Side under Ribs.

**November 30, 2018** - On disciplinary hearing results, N. Scharr approved RVR, making him complicit in complaint of due process violation.

26

**December 3, 2018 -** On DHR and RVR E. Benyard, who is the Capt. of D facility, makes him culpable in the complaint, Did not recognize Archuleta's violation of his own published D yard rules & regulations, allowing plaintiff "head of line privilege" w/walker, at chow hall.

**December 4 - 18, 2018 -** Officer Avila on DHR, failed in their job as plaintiff's Investigative Employee, by not getting all the information requested, or all of the witnesses. This violated plaintiff's free speech & due process rights. Also did not supply defendant Archuleta on either the initial hearing or the rehearing.

**December 17, 2018 -** C. Godinez, who is a supervisor, is culpable as appearing on DHR as approving failed I. E. report, or failed in ARCHULETA's account of ADA inmates with walkers have head of line privilege to dining hall (there is no wrong way)

**December 20, 2018 -** Lt. H. Ferrel was the senior hearing officer. Guilty of due process violation with deliberate indifference, which was verified by R.J.D. correctional facility warden Patrick Covello and signed by J. Stewart on second level appeal response, log #RJD-D-19-03397, dated June 21, 2019. Lt. Ferrel did not listen or read my explanation, cited a different violation, which was "<u>Disobeying an Order</u>," he also ignored me by not having officer Archuleta present.

**December 7, 2018 -** Plaintiff submitted a medical request form 7362, ID #7559106, statement, "It is imperative that I receive my left ribs x-ray that the doctor ordered last Friday 11/30/18, it's either fractured or broken. I need verification for my RVR #06119874. I was kicked and punched in the ribs and this is very important to include this on CDCR 12/19/18." Injury occurred on 11/24/18 at 5:50 pm. I need this report plus TTA's injury report on this date. On top of form 7362, I wrote, "please this is not a routine x-ray." Rib was broken, plaintiff had to physically put rib back in place w/ great difficulty

**December 12, 2018 -** X-ray show fracture of left rib.

**December 13, 2018 -** Date a notice of "<u>DA Non-Referral</u>" was produced with the violation the Title of "<u>Attempted Battery on a P.O.</u>" Signed by warden Patrick Covello. The title did not match the more serious "<u>Assault on a P.O.</u>" This is a due process violation by defendant. Also did not protect plaintiff Dragasits ADA inmate rights by failing to comment, interject or correct that ADA inmates with walkers have access to the dining hall, head of line privelege, from any direction, & to contradict Archuleta's report.

# 54

**December 14, 2018** - Office visit notes indicating admission to TRI-CITY Medical Center. Dr. Amory indicated right foot wound still infected and to be put on 10-day course of the antibiotic Bactrim. and also indicated to see patient in 2 weeks for a follow-up appointment.

**January 13, 2019** - DHR disciplinary hearing result - defendants listed on this report are culpable for due process violations. in their failure to correct the violations not matching the DHR and the crime incident report. J. Juarez, CDO and John Doe, Associate Warden of RJDF.

**January 28, 2019** - Transferred from RJDF to LA County State Prison ADSEG.

**February 7, 2019** - Transferred to LA County State Prison's C Facility.

**February 19, 2019** - Transferred back to RJDF/ADSEG, the SGT. stated that I couldn't stay on Facility B.

**February 20, 2019** - Transferred to San Diego County Sheriff's Department for Court. Admitted to San Diego County Jail for a Court ordered appearance, Judge not ready and as a result, plaintiff stayed for 84 days in the jail.

**May 15, 2019** - Transferred back to RJDF, where again, CDCR would not keep me at RJD yard because of the write-up. As a result, kept in ADSEG. RJDF knew I had to go back to Court.

**May 19, 2019** - RJD ADSEG to KVSP for permanent transfer bypassing LACSP, where my property was deliberately. RJD officers would not drive to LACSP to pick-up my property.

**July 25, 2019** - Temporarily transferred to CIM, as to go back to Court in San Diego, stayed at CIM for 11 days.

**August 5, 2019** - Transferred from CIM to San Diego County jail for Court appearance and stayed there for 30 days.

**September 5, 2019** - Transferred back to CIM and stayed there for 12 days.

28

~~**September 17, 2019** - Transferred back to KVSP.~~

Because of officer Archuleta's lies and Lt. Ferrel's, and among others' deliberate indifference and due process violations, it caused plaintiff's ADSEG stay RJDF/LACSP = 65 days: San Diego County Jail, first stay = 84 days, second jail stay = 30 days, CIM stay = 23 days. The total days of adverse conditions equals 202 days. Different from a normal level III yard at prison. Officer Archuleta and Lt. Ferrel, among the other defendants, denied me the physical outdoor yard activities, of which I had before my surgery. This amounts to cruel and unusual punishment.

**July 26, 2019** - RVR re-issued on this date, although the date of the violation actually occurred on 11/24/18. Another due process violation. On RVR, Reporting Employee, is indicated as officer C. Avila on 7/30/19. Reviewing supervisor SGT. Godinez on 7/31/19. Classified by Capt. J. Luna on 8/01/19.

APRIL 22, 2025 DECLARATION OF WITNESS PATRICK PAWLICKI, AN9292, VERIFIES PLAINTIFF'S ACCOUNT OF BEING ASSAULTED BY CO'S AT R.J. DONOVAN C.F. ON NOV 24, 2018 AT SUPPER TIME, D YARD, ENTRANCE TO CHOW HALL.

**602 APPEAL DATES**

**November 26, 2019** - Submitted initial 602 appeal, stating my claims, issued by RJDF as log #RJD-D-8095. Date indicated as first received on 12/21/18. Last date indicated a 602 by OOA ~~on 05-08-20, seventeen months~~ OCT 15, 2021 35 months / time constraints not met. ~~for~~ RVR to get to its destination to exhaust remedies through the extraordinary efforts by plaintiff and the deliberate indifference by officers of CDCR, as it took several 602s, over the course of time to accomplish this.

**January 3, 2019** - Date of 602 submitted, log #RJD-B-19-322. Removed from ADSEG due to Lt. Ferrel telling me at the start of plaintiff's hearing that we're here for "<u>Disobeying an Order</u>." which is a less sever offense. This has already been discussed previously. In this 602, I asked to be released from ADSEG (the hole), only to find-out that on 01/19/19, Lt. Ferrel kept the original charge in place.

**May 20, 2020** - Several 602s submitted, complaining of unjust charges and staff complaints.

**October 5, 2019** - Disciplinary report indicates date of hearing was 10/05/19, there are several CDCR violations that plaintiff will point out through-out this report. The dates go from a ten month spread starting at 12/03/18 through 10/03/19, page 2 of the DHR, "All time restraints met" "No" is printed/indicated. This is a violation at CIM.

**September 6, 2019** - Investigating Employee, (I.E.), is assigned.

**September 13, 2019** - Inmate copies served by J. Roe. I was in CIM awaiting transfer to KVSP without my property or records at my disposal.

**October 3, 2019 at 12:38 pm** - Inmate copy served investigative report by M. Marquez. DHR has no indication of an I.E., being assigned. Another due process violation. Page 3 of DHR indicates a "Yes" and this is false.

**October 5, 2019** - DHR hearing, page 4 indicates a request for witnesses, a check marked box next to the Reporting Employee, indicates such. I had an initial hearing a day before the 10/05/19 hearing, and I believe he was going to find me guilty. I requested to question officer Archuleta and David Ballard, the inmate at RJD. One day later, Lt. Nuckles offered me a deal because Archuleta was unavailable, due to being on mental health leave. This was another due process violation. Plaintiff's initial violation should have been dismissed because of due process violation of time constraints, and because of officer Archuleta's absence from the hearing. The fact that I accepted the lessor charge, in no way compromised my ability to appeal according to the Senior Hearing Officer, (SHO), Lt. Nuckles, however, the SHO failed to indicate this on the DHR, this is another violation.

Instead of this explanation being left out of the narrative, Lt. Nuckles reasoned by definition, assault does not apply in plaintiff's case by the description provided by officer Archuleta. Plaintiff provided overwhelming evidence of extensive medical records of foot surgery,

ADA vest and walker, foot pain, and infection and treatment and my reasoning as to why I would do that to the officer, just barely able to walk and with a verifiable yard regulation, stating that walkers have "head of line" priority to the chow hall.

My first hearing, I was not able to present all of the evidence because of being stuck in ADSEG, and unable to communicate to others, in-order to get this information, and I.E., officer Avila was a big part of this problem, as well as other officers and superiors who refused to perform their due diligent (process), their job requirements, as there is no civilian oversight in place to protect inmates, such as myself, from the extremely harsh conditions I suffered throughout the year and beyond, and the extreme amount of paperwork I had too submit, and living through it again in trying to hold the defendants accountable.

**May 28, 2019** - Submitted appeal of RVR log #6119874, of 11/24/18. Detailed text of officer Archuleta lying, causing pain and mental anguish, log #RJD-D-19-3397/1912856

**May 28, 2019** - Submitted 602 appeal and issuing a citizen's (staff), complaint against Lt. Ferrel, who was the SHO, along with a detailed explanation of unjust hearing, log #RJD-X-19-6412/1912856.

**July 23, 2019** - Submitted 602 appealing the third-level cancellation of RJD-D-18-8095, log #1915336 OOA-19-06333.

**November 20, 2019** - Submitted 602 claiming "excessive force brutality" officer staff complaints on officers: C. Archuleta, A. Massia, and B. Garcia, log #RJD-D-19-07668.

**January 27, 2020** - Submitted 602 indicated "rewriting a 602, log #RJD-D-19-07689, that was canceled wrongly" log #RJD-B-20-1131 2010624 REC OOA 08 03 20 MCSP-0-20-00541.

**April 16, 2020** - Submitted 602 stating "wrongly cancelled," log #MCSP-0-20-00541.

**May 5, 2020** - Stated on a 602 "appealing a denied appeal, log #OOA-19-00666 with new

$ 56

31

information," log #OOA-19-00666/ 2009597, new information - 'External Movement Sheets' ETC.

May 20, 2020 - Submitted 602 stating "Rewrite Appeal log #RJD-18-0905 ( RJD-D-18-8095) 'officer complaints' have not heard back. Explanation-Officer-Complaints against officer Archuleta, B. Garcia and Massia, on misuse of force, police brutality, and serious injury, log #RJD-X-20-3614/MCSP-20-01894/2010633.

// OCT 15, 2021 DATE STAMP OF THIRD LEVEL APPEAL // DECISION ON 602 APPEAL FORM LOG # RJD-18-8095 WHICH EXHAUSTS ADMINISTRATIVE REMEDIES

// NOV 22, 2021 DATE STAMP OF THIRD LEVEL APPEAL // DECISION IN 602 APPEALS FORM LOG # RJD-20-01131 AND LOG # MCSP-20-00541 THUS EXHAUSTING // ADMINISTRATIVE REMEDIES

// THE LAST 2 DATES BRINGS AN ADA CLAIM UNDER // THE 3 YEAR RULES FOR A CLAIM, AFTER THE THIS // EXHAUSTION OF REMEDIES QUALIFICATION.

// APRIL 22, 2025 DATE OF PATRICK PAWLICKI'S AW-9292 // DECLARATION AS A WITNESS ON NOV, 24, 2018 ON 'D' YARD AT R.J. DONOVAN CORRECTIONAL FACILITY OF // PLAINTIFF APPROACHING CHOW HALL AND ASSAULTED BY // CORRECTIONAL OFFICERS

// June 7, 2025 DATE of Declaration of Ebrahim J. Haddad who STATED he saw & knew of RJDCF'S 'D' yard's Rules & Regulations // of 2015 as he himself is an ADA inmate with vest (mobility impaired) and walker and went to "the head of the line" to // eat at the chow hall, many times with no problems. ITS stated in rules & regulations

// June 11, 2025 - Date of Declaration of David Ballard AE 4110 who witnessed & verifies plaintiff's story as true of what occurred on Nov 24, 2018 at supper time 'D' yard @ RJDCF.

// Aug 27, 2025 Declaration of Raymond Gibbs who witnessed // the serious event of Nov 24, 2018, supper time in front of chow hall, D Yard RJDCF.

updated 1/22/26

EXPLANATION OF INCLUDED EXHIBITS 5 pages

✓1) EXHIBIT 1: RULES VIOLATION REPORT (RVR

OFFICERS such as Archuleta can craft an RVR after the fact, after a serious crime was committed by themselves, and to cover it up at the expense of the person being accussed. Now my job is to point out what is wrong with her original statement of accussation.

"I observed inmate Dragasits walking the wrong way, against traffic toward the dining hall." This is just plain wrong, as I continuously pointed out inmates with walkers have head of line privileges at the chow hall. Capt. Benyard's publication states that, Anyone of authority who read that, should have seriously questioned that part, before the RVR was approved. In the following sentence, "his walker" is mentioned, clarifying the yard rules & regulations. A declaration was provided on that.

Witnesses already declared that I was stopped. But to continue on her statement "stop, get down". Inmate with yellow mobility impaired vest's are not required to get down. Plus inmates with walkers, have this DME (Durable medical Equipment) issued to them, because it is necessary to assist them to walk around the yard. These ADA inmates, can either stand in place or sit on their walker when a code is called.

Exhibits 1A & 1B The two (2) drawn maps of R.J. Donovan prison's 'D' Yard shows where this incident took place. Archuleta and I were in the middle of the track, in front of the chow hall entrance, unobstructed from plain view. Other officers stationed there were just feet away. When Archuleta yelled "stop, get down" is it plausible that one or more of these officers should have prompted them to aid in her assistance.

Later in her statement, "I instinctively moved back"... None of her narrative is true, but to continue to dissect her statement the following procedure is known

not to engage in a direct confrontation with anyone. CO's have a radio to call a code or just to ask for assistance when you have help nearby in fellow officers. This 100% proves that her narrative is false, but that when my back was to her and I was facing Quijada, starting to talk to him, I was attacked from behind, probably pushing my walker out of the way to yank on me unexpectedly, causing me to fall to the ground hard. There was no plausible way this occurred the way it was described. The more plausible way is how it explained it many times before, cordially while standing in place, before many witnesses, and the medical evidence I couldn't provide because my access to it was deliberately blocked as well as witnesses names.

This is why I named as many defendants that had access to this statement and most likely the actual statements of witnesses to this event. All withheld from me. No due process.

2) EXHIBITS 2 and 3:

A False charge of behavior that might lead to violence by Rehearing SHO Lt. Nuckles that he had no authority to issue and I was denied 1st & 14th Amendment violations when he didn't explain fully on the DHR that Archuleta was on mental health leave.

What he did do right was finding me "not guilty" of the assault charge, as Lt. Ferrel should have by the definition of assault itself on pages 5 of 10 and 6 of 10.

Office of Appeals did not address my appeal, a due process violation, but did indicate "exhaustion of remedies", leaving me to address this in the courts.

3

3) EXHIBIT 4: 85 Indicates disciplinary procedures and inmate rights.

A 3) shows the seriousness of this false charge and the constitutional deprivation of a hearing verdict of guilty.

B. 3/and 4) IE Avila did not provide all my requested information a defintе 14th Amendment violation and neglecting my 1st Amendment right.

c) There were witnesses to this event and IE did not comply. Complicating this, IE Avila not only did not announce for witnesses as request but told me I could only pose written questions, except for the accussing officer Archuleta, which I could & did request her presence for the many questions I had written beforehand. Title 15 provides prisoner inmate rights that were not followed by defendants AVILA & SHO LT. Ferrel.

These proceedures and inmate rights were not followed, which has affected the past, present and future prison life, & as it explained in this complaint and is the whole reason plaintiff had to suffer in Leve 4 Yard, multiple transports & stays in Jail.

4) EXHIBIT 6: This 3rd level decision or lack of it did not address my complaints which shows a level of guilt by not following through on the investigation that should have done concerning defendant Archuleta's mental health leave, that the 2nd level response was not aware of.

This is another due process and free speech violation as my written appeal to them was ignored.

5) EXHIBIT 7 (4 Pages) 2nd Level appeal response where on the 3rd page, warden Patrick Covello wrote that not having Archuleta there at my hearing was a due process violation, thus my claim is confirmed

4
Exhibits

6) Exhibit 8 (2 pages) External movement sheets. Plaintiff had to ask for a print out of these sheets which showed dates and times of where plaintiff was during the time frame of leaving ADSEG at R.J.D.C.F. to level 4 prisons, transports, stay at COUNTY JAIL in San DIEGO (OUT TO COURT) and eventually transfered to a level 3 yard at MCSP. The jail stays and the transports are even a more harsher in the extreme life that Level 4 prison life which again is much harsher that level 3 yard life that plaintiff is complaining about because of a False Serious RVR and a subsequent hearing that CDCR PRISONER Rights were not followed, leading to a false guilty verdict and U.S Constitutional Amendment violations. San DIEGO COUNTY SHERIFF indicates Jail stays. CIM in this time frame is the layover Time for transports to a from prisons & county jail.

7) Exhibit 9 - A Typical notice of ASU Administrative Segregation placements (the hole - due to harsh life) There were long stays at the hole in 2 prisons due to plaintiff's computer readout as to the false status of a guilty verdict at the initial hearing. Whereas plaintiff became aware, during an Olsen Review of his prison history, that these (hole) ASU stays were because of two (boxes) checked (✓) because of a guilty verdict on a charge that plaintiff was totally INNOCENT of / unnecessary ASU " jail stays The boxes ✓'s were.

☑ presents an immediate danger to the safety of self or others.

☑ endangers institutional security.

PLAINTIFF'S normal prison life was severely hampered by a FALSE RVR (Serious & a guilty verdict (false) PUNISHMENT

Explanation of included exhibits continued

8) Exhibit 10 - (2) 602 appeals
a) initial appeal # 8095 written 11/26/18 (2 days after 8th Amend vio.)
b) emergency 602 appeal written 1/3/19 # RJD-B-19-322
this was in response to Lt. Ferrel's statement of starting my hearing "We are here for disobeying an order"." #I stated "should be removed from adseg". This because Ferrel stated this charge and the opening of my hearing, Later to be found out on 1/19/2019 that defendant Ferrel lied to me deliberately. One of many due process violations that Ferrel and others committed. Much to the detriment of plaintiff. This 602 labeled ~~B~~ RJD-B-19-322, was proof that plaintiff 100% thought that this is what defendant SHO Lt. Ferrel stated.

9) This exhibit #11 is 2 pages and it shows that plaintiff has a board of parole hearing consultation. This is where plaintiff has to explain his conduct while in prison and his history while in prison is in full display and it will show false charges & serious RVR's and a false guilty verdict. AND the resultant of this/these false guilty verdicts are a big stain on plaintiff's prison history and has to be explained. This should have never happened and plaintiff has a huge burden now in two (2) days from this date to try to explain what happened, to a totally innocent incarcerated person. The cause and effect of a false RVR (Serious) and a false guilty verdicts on the same incident.

EXHIBIT

Corrections and Rehabilitation

# RULES VIOLATION REPORT

| CDC NUMBER | INMATE'S NAME | MEPD | FACILITY | HOUSING LOCATION |
|---|---|---|---|---|
| ~~AR2176~~ | ~~DRAGASITS, STEPHEN~~ J. | 04/08/2041 | RJD-Facility D | RJD-D - D 018 1 - 146001L |
| VIOLATION DATE 07/22/2019 | VIOLATION TIME 11:16:00 | VIOLATION LOCATION RJD-Facility D - RVR - YARD | | WITH STG NEXUS No |

Did the reporting employee ensure the inmate understands (to the best of his/her ability) the consequences of the continued misconduct? N/A

Did the reporting employee take into consideration the severity of the inmate's disability and the need for adaptive support services when determining the method of discipline? N/A

CIRCUMSTANCES OF VIOLATION

On July 22, 2019 at 1116 hours the CDO issued a Re-issue/Re-hear (RI/RH) for Modification Order on a Second Level Decision being partially granted. The RI/RH states as follows: The institution shall order a RI/RH of Rules Violation Report (RVR) Log#6119874 and ensure the Senior Hearing Officer (SHO) makes the Reporting Employee available during the hearing as requested by the appellant.

On July 30, 2019 at approximately 1300 hours I reviewed a signed document authored by Officer C. Archuleta. At this time Officer C. Archuleta is unable to personally enter information into SOMS; therefore I am entering the information on her behalf. Correctional Officer C. Archuleta's signed document stated the following verbatim:

On Saturday, November 24, 2018 at approximately 1740 hours, while performing my duties as Security Patrol #3 I was monitoring Inmates entering and exiting the Dining Hall when I observed Inmate Dragasits, AR2176, FD-18-146L walking the wrong way, against traffic toward the dining Hall. I ordered Inmate Dragasits to walk the track in the correct direction. Inmate Dragasits stated "Fuck You!" and pushed his walker in my direction. I yelled" stop, get down", with negative results Inmate Dragasits continued walking toward me with his walker, he then suddenly lunged at me, pushing his walker toward my person. Seeing an imminent threat to my person, I instinctively, moved back to avoid getting hit by his walker, pushed his walker to my left side , grabbed his right arm with my left hand and with my right hand on his side, I pulled Inmate Dragasits to the ground. Once on the ground, I attempted to place handcuffs on Inmate Dragasits with negative results. Inmate Dragasits was resisting me by kicking his legs and pulling his arms from side to side and attempted to stand up. I ordered him to stop resisting. with negative results. I held him on the ground with both my hands on his back. Responding staff arrived, placed hand cuffs on him. Inmate Dragasits continued to resist after he was handcuffed, by kicking and moving his body from side to side. I utilized my State Issued radio and stated Central Control "Code One In front of Delta culinary." Once Inmate Dragasits calmed down and was placed in Handcuffs he was escorted to the Facility D gymnasium holding cells. I reported to the Triage Treatment Area for a medical 7219 medical evaluation, noting no injuries. This concludes my report.

PERNR #41616

lie * LIE

INMATES W/VEST ARE NOT REQUIRED TO 'GET DOWN'

| REPORTING EMPLOYEE | TITLE | ASSIGNMENT | RDO | DATE: |
|---|---|---|---|---|
| C. Avila * plaintiff claims this is invalid; where was Archuleta Avila served as IE at first hearing | Correctional Officer | D SEC PAT 1 | Fri/Sat | 07/30/2019 |

RVR LOG NUMBER: 00000000611[illegible] VIOLATED RULE NUMBER: 3005[illegible]


EXHIBIT 1 A
CHOW HALL ENTRANCE
END OF CHOW LINE
DOOR
DOOR
WHERE INCIDENT OCCURRED
TO CHOW HALL ENTRANCE 2 LINES
GRASS FIELD
ROUGH DRAFT OF D YARD R.J. DONOVAN PRISON
(CLOSE TO SCALE APPROXIMATE)
N
E
S
W
GRASS FIELD
GRASS FIELD
INMATE HOUSING 200 CELLS
INMATE HOUSING 200 CELLS
INMATE HOUSING 200 CELLS
INMATE HOUSING
SOFTBALL DIAMOND
TRACK
TRACK
MAIN GATE
PROGRAM OFFICE SGTS, LTS CAPT
CLINIC
PILLWINDOWS
GYM


ABOVE
D YARD CHOW HALL
ENTRANCE
2 SIDES
Exhibit 1b
CO'S STATIONED IN THIS AREA
3 SECOND RESPONSE TIME AT MOST
AREA KEPT TRAFFIC FREE DURING CHOW EXCEPT FOR WALKERS
TRACK
TO MAIN GATE
PROGRAM OFFICE
WHERE SGT SCHARE'S OFFICE IS
APPROX 25 TO 28 FT
DIRECTION I CAME AFTER MEDS
WHERE I WAS STOPPED & ATTACKED BY ARCHULETA & OTHERS
NO OBSTRUCTION TO LINE OF SIGHT FROM THOSE WAITING IN LINE
INMATES STOP AND THEN PROCEED TO CHOW HALL ENTRANCE
2 LINES
INMATES WAITING TO ENTER CHOW Hall
ALL WITNESSES TO MY CLAIMS
COUNTS
SIDEWALK WALKWAY
TO INMATE HOUSING
W
S
N
E
'D' Yard R.J. Donovan CORRECTIONAL FACILITY
CLOSE UP OF where incident occurred and how close to me the 5 officers were to prevent the further battery of me and where the walkway of INMATE witnesses were.

EXHIBIT 2

| Name | Rank | Type | Granted? |
|---|---|---|---|
| C. Archuleta | Officer | Reporting Employee | I/M Rescinded |

**Questions Asked**

**Inmate Witness(es)**

| CDC# | Name | Bed | Granted? |
|---|---|---|---|
| | | | |

**Questions Asked**

**Witness Additional Information:**

Subject originally requested the Reporting Employee be present during RVR Hearing, at time of Hearing the Subject rescinded his request for the Reporting Employee and wanted to conduct the Hearing with out the Reporting Employee present.

## PLEA AND STATEMENT

**PLEA/STATEMENT:** The above circumstances were read aloud to subject and elected to plea: Not Guilty

( ) Subject declined to make a statement
(•) Subject made a statement

**Comments:**

I did not commit any assault on an Officer. I showed her my infection. She needs some training, maybe she is crazy. I would not do that with all the Officers there.

## FINDINGS

Subject was found: Guilty of Included Charge based on a preponderance of evidence.

Lesser Included Charge: 3005(a) - Behavior which could lead to violence

Level: Serious ✗ Offense Division: Division F

Offense Occurrence: 1st Occurrence

**Comments:**

1. The defendant did an act that by its nature would directly and probably result in the application of force to a person;
2. The defendant did that act willfully;
3. When the defendant acted, (he/she) was aware of facts that would lead a reasonable person to realize that (his/ her) act by its nature would directly and probably result in the application of force to someone;
AND
4. When the defendant acted, (he/she) had the present ability to apply force to a person(;/.)
AND
5. The defendant did not act (in self-defense/ [or] in defense of someone else).] Someone commits an act willfully when he or she does it willingly or on purpose. It is not required that he or she intend to break the law, hurt someone else, or gain any advantage.

The terms application of force and apply force mean to touch in a harmful or offensive manner.

The slightest touching can be enough if it is done in a rude or angry way. Making contact with another person, including through his or her clothing, is enough.
The touching does not have to cause pain or injury of any kind. [The touching can be done indirectly by causing an object [or someone else] to touch the other person.]

EXHIBIT 3

[The People are not required to prove that the defendant actually touched someone.]

The People are not required to prove that the defendant actually intended to use force against someone when (he/she) acted.
No one needs to actually have been injured by the defendant's act. But if someone was injured, you may consider that fact, along with all the other evidence, in deciding whether the defendant committed an assault[, and if so, what kind of assault it was].

SHO weighed all evidence & statements provided during the hearing in adjudicating the RVR based on the preponderance of evidence. SHO found there was not efficient evidence for the specific charge of "Assault on a Peace Officer".

## MENTAL HEALTH ASSESSMENT CONSIDERATION

(Documentation of opinions to be used for consideration by the hearing official and the reasoning shall be documented in this section.)

**Comments:**

Per documentation review, IP MH symptoms are managed and there are no mental health factors that would cause the inmate to experience difficulty in understanding the disciplinary process and representing his interests in the hearing that would indicate the need for assignment of a staff assistant. Per CDCR DECS and SOMS, IP is NCF with a reading TABE score of 12.9. The Clinician noted NO recommendation in relation to penalty assessment should the Subject be found Guilty of this RVR.

## EVIDENCE

The following evidence was used to support the findings:

**Comments:**

1. The reporting employees report which states, in part; "On July 22, 2019 at 1116 hours the CDO issued a Re-issue/Re-hear (RI/RH) for Modification Order on a Second Level Decision being partially granted. The RI/RH states as follows: The institution shall order a RI/RH of Rules Violation Report (RVR) Log#6119874 and ensure the Senior Hearing Officer (SHO) makes the Reporting Employee available during the hearing as requested by the appellant.
On July 30, 2019 at approximately 1300 hours I reviewed a signed document authored by Officer C. Archuleta. At this time Officer C. Archuleta is unable to personally enter information into SOMS; therefore I am entering the information on her behalf. Correctional Officer C. Archuleta's signed document stated the following verbatim: On Saturday, November 24, 2018 at approximately 1740 hours, while performing my duties as Security Patrol #3 I was monitoring Inmates entering and exiting the Dining Hall when I observed Inmate Dragasits, AR2176, FD-18-146L walking the wrong way, against traffic toward the dining Hall. I ordered Inmate Dragasits to walk the track in the correct direction. Inmate Dragasits stated "Fuck You!" and pushed his walker in my direction. I yelled" stop, get down", with negative results Inmate Dragasits continued walking toward me with his walker, he then suddenly lunged at me, pushing his walker toward my person. Seeing an imminent threat to my person, I instinctively, moved back to avoid getting hit by his walker, pushed his walker to my left side , grabbed his.right arm with my left hand and with my right hand on his side, I pulled Inmate Dragasits to the ground. Once on the ground, I attempted to place handcuffs on Inmate Dragasits with negative results. Inmate Dragasits was resisting me by kicking his legs and pulling his arms from side to side and attempted to stand up. I ordered him to stop resisting. with negative results. I held him on the ground with both my hands on his back. Responding staff arrived, placed hand cuffs on him. Inmate Dragasits continued to resist after he was handcuffed, by kicking and moving his body from side to side. I utilized my State Issued radio and stated Central Control "Code One In front of Delta culinary." Once Inmate Dragasits calmed down and was placed in Handcuffs he was escorted to the Facility D gymnasium holding cells. I reported to the Triage Treatment Area for a medical 7219 medical evaluation, noting no injuries."

2. Subjects statement of, "I did not commit any assault on an Officer. I showed her my infection. She needs some training, maybe she is crazy. I would not do that with all the Officers there."

3. Subjects statement on the 7219 Medical Evaluation from date of incident that reads, "I was going to chow and they told me to go another way and I told them I couldn't walk I just had surgery and they took me down. I was 100% right I did not deserve the mistreatment of various Officers. I yelled for help because I couldn't breath."

4. The 7219 Medical Evaluation of Officer C. Archuleta from date of incident.

NEW EXHIBIT IN SUPPORT OF PREVIOUS COUNTS/CLAIMS & defendants that violated constitutional rights. EXHIBIT 4

## SUMMARY OF DISCIPLINARY PROCEDURES AND INMATE RIGHTS

See California Code of Regulations, Title 15 (CCR) for details

### A. TIME CONSTRAINTS -

1. A classified copy of the Rules Violation Report and any additional/supplemental information containing any elements of the violation charged shall normally be provided to the inmate within 15 days from the date the information leading to the charges is discovered by staff.
2. The charges shall be heard within 30 days from the date the inmate is provided a classified copy of the Rules Violation Report unless the charges were referred for possible prosecution and the inmate has been granted a request for postponement of the disciplinary proceedings pending the outcome of the referral, if exceptional circumstances exist pursuant to CCR Section 3000, or the inmate is transferred out of the custody of the department. Postponement shall not bar any credit forfeiture.
3. REFERRAL FOR PROSECUTION - **(Serious Rules Violations Only)** - Referrals for prosecution will not delay a disciplinary hearing unless you submit a request in writing for postponement of the hearing pending the outcome of such referral. You may revoke such request in writing at any time prior to the filing of accusatory pleadings by the prosecuting authority. A disciplinary hearing will be held within 30 days of staff receiving your written revocation of your request to postpone the hearing or within 30 days of receiving a response from the prosecuting authority. (CCR Section 3316-3320)
4. Failure to meet the time constraints outlined in CCR Section 3320 shall preclude forfeiture of credits.

### B. INVESTIGATIVE EMPLOYEE/STAFF ASSISTANCE -

1. General Information - You may request to have an Investigative Employee to assist in the investigation and/or a Staff Assistant assigned, to assist in the preparation, or presentation of your defense at the disciplinary hearing. Staff shall evaluate your request along with the criteria outlined in CCR Section 3315 (d)(1) and CCR Section 3315(d)(2) and determine if an Investigative Employee and/or Staff Assistant shall be assigned.
2. Staff Assistant - If assigned, the Staff Assistant will inform inmates of their rights and of the disciplinary hearing procedures, advise and assist in the inmate's preparation for a disciplinary hearing, represent the inmate's position at the hearing, ensure that the inmate's position is understood, and that the inmate understands the decisions reached. (CCR Section 3318)
3. Investigative Employee - **(Serious Rules Violations Only)** - If assigned, will gather information, question staff and inmates, screen witnesses, and complete and submit a written, non-confidential report to the disciplinary hearing officer. You have the right to receive a copy of the investigative employee's report 24 hours before a hearing is held. (CCR Section 3318)
4. * Witnesses - **(Serious Rules Violations Only)** - You may request the presence of witnesses at the hearing who can present facts related to the charges against you. You may also request the presence of the reporting employee and the investigative employee. You may, under the direction of the hearing officer, questions any witness present at the hearing. The hearing officer may deny the presence of witnesses when specific reasons exist. (CCR Section 3315)
5. Personal Appearance - A hearing of the charges will not normally be held without your presence, unless you refuse to attend. (CCR Section 3320)

### C. DISPOSITION

- At the end of the hearing, you will be advised of the findings and disposition of the charge. Within five working days, following review of the Rules Violation Report by the Chief Disciplinary Officer, you will be given a copy of the completed rule violation report, which will contain a statement of the findings and disposition and the evidence relied upon to support the conclusions reached. (CCR Section 3320)

### D. APPEAL

- If you are dissatisfied with the process, findings or disposition, you may submit an inmate appeal within 30 days following receipt of the finalized copy of the Rules Violation Report and any other pertinent documentation (CCR Section 3084)

LAST page of DRB EXHIBITS

INMATE WITNESSES REQUESTED AT HEARING: None.

REPORTING EMPLOYEE'S STATEMENT: (PASTE RVR HERE)

INVESTIGATIVE EMPLOYEE'S STATEMENT: None.

* REPORTING EMPLOYEE REQUESTED AT HEARING: Correctional Officer Archuleta.

STAFF WITNESSES REQUESTED AT HEARING: No.

INVESTIGATIVE EMPLOYEE REQUESTED AT HEARING: No.

ADDITIONAL EVIDENCE/INFORMATION REQUESTED BY INMATE:

* (1.) To Investigation Employee Avila, Please secure copies of the medical reports from my examination at TTA after I left the GYM cage on 11/24/18 5:40 p.m. it's a more though report.

* (2.) Please ask the tower officers in buildings 17,18,19 to use the PA to announce, "If anyone has any information concerning an incident in front of the chow hall on Sat. night Nov. 24th @ 5:40 p.m. about inmate STEPHEN FRAGASITS, please see DRAGASITS Investigative Employee, CO Avila.

ADDITIONAL INFORMATION CONTAINED IN THE CONFIDENTIAL REPORTS: None.

EXHIBIT 6

STATE OF CALIFORNIA — DEPARTMENT OF CORRECTIONS AND REHABILITATION

GAVIN NEWSOM, GOVERNOR

**OFFICE OF APPEALS**
P.O. Box 942883
Sacramento, CA 94283-0001

OFFICE OF APPEALS
THIRD LEVEL DECISION

Date: November 4, 2021

NOV 22 2021

NAME:
CDCR
INSTITUTION: MCSP
TLR:

The California Department of Corrections and Rehabilitation, Office of Appeals, received your Form 602 appeal of Log No. RJD-20-01131 and Log No. MCSP-20-00541 for the purpose of providing a Third Level Response to your claim or claims. Upon review of the Second Level Response previously issued to you and the written record in this case, the Office of Appeals has determined that the Second Level Response to your claim or claims shall serve as the Department's final decision. Your administrative remedies have been exhausted for this appeal issue.

This action by the Office of Appeals does not excuse you from exhausting any other administrative remedies that may be required or available to you in relation to your particular claim, including, but not limited to, the Department of General Services Government Claims Program, the Department of Fair Employment and Housing, or the Equal Employment Opportunity Commission.

Office of Appeals
California Department of Corrections & Rehabilitation

cc: RJD Grievance Coordinator and MCSP Grievance Coordinator

State of California Department of Corrections and Rehabilitation

# Memorandum

Date : June 21, 2019

To [illegible]

Kern Valley State Prison

Subject: **SECOND LEVEL APPEAL RESPONSE LOG NO.: RJD-D-19-03397**

**Appeal Issue:**
You have filed a CDCR 602, Inmate Appeal, alleging the following:

1. You claim Rules Violation Report (RVR) Log # 6119874, dated November 24, 2018, for Assault on a Peace Officer by Means Not Likely to Cause GBI was a fabrication by Correctional Officer C. Archuleta which you allege resulted in pain, mental anguish, Administrative Segregation Unit (ASU) placement, an increase in 12 classification points, and transfer to another institution. You argue and reiterate your claim of the version of circumstances that lead to the incident with Officer Archuleta and the subsequent issuance of the RVR.

**Action Requested:**
Your requested actions are:

1. For RVR Log # 6119874 to be dismissed in the interest of justice.
2. For Officer Archuleta to be found guilty of lying and submitting a false report.
3. For your Classification score to be reduced the 12 points you were assessed.
4. For you to be endorsed and returned to Facility D at the Richard J. Donovan Correctional Facility (RJDCF).

**REGULATIONS:** The rules governing this issue are:

| | |
|---|---|
| **CCR 3000** | **Definitions** |
| **CCR 3084.1** | **Right to Appeal** |
| **CCR 3312** | **Disciplinary Methods** |
| **CCR 3315** | **Serious Rule Violations** |
| **CCR 3320** | **Hearing Procedures and Time Limitations** |
| **CCR 3375** | **Classification Process** |
| **CCR 3375.4** | **CDCR Reclassification Score Sheet, CDCR Form 840, Calculation** |

**INTERVIEWED BY:** On June 19, 2019, you were interviewed by E. Ortiz, Correctional Lieutenant, via telephone due to your current housing at Kern Valley State Prison. During the interview, you reiterated your appeal and had no additional information to submit.

8

DRAGASITS, S. J. (CDCR # AR-2176)
Appeal Log No. RJD-D-19-03397
PAGE 2

A review of the Disability and Effective Communication System on June 19, 2019 indicated your TABE score is 12.9; as well as, your DPP code is None; DDP code is NCF; and you are a participant in the MHSDS at the CCCMS level of care.

Based on your case factors, effective communication was achieved by speaking slowly and clearly in plain simple English, giving you additional time. You were able to reiterate in your own words what was explained to you and were able to provide appropriate, substantive responses to questions asked as well as ask appropriate questions regarding your appeal throughout the interview.

**FIRST LEVEL DECISION:** Bypassed to Second Level Review (SLR).

Appeal Response/Discussion:
A review of all relevant information in this disciplinary process indicated you were afforded due process and all time constraints were met.

- Date of discovery was November 24, 2018.
- The classified copy of RVR Log # 6119874 was provided on December 04, 2018; within 15-days from the date information leading to the charges was discovered.
- You were issued copies of all relevant documentation more than 24 hours prior to the hearing. All relevant documentation was issued by December 17, 2018. The hearing was held on December 20, 2018, which is within 30-days of initial issuance of the RVR.
- You were provided at least 24 hours for preparation prior to the disciplinary hearing.
- You were afforded a fair hearing by an impartial Senior Hearing Officer (SHO).
- * You requested the presence of the reporting employee who was not called during the hearing which is noted as a due process violation.
- A CDCR 115-MHA was completed and taken into consideration as part of the findings and disposition.
- An Investigative Employee (IE) report was completed and taken into consideration in the finding's phase of the disciplinary hearing. The IE report notes your request for the reporting employee to be present during the hearing.
- The SHO's findings of the disciplinary hearing were supported based on the preponderance of evidence presented at the hearing.
- You were issued a Final copy of the disciplinary hearing results affirmed by the Chief Disciplinary Officer (CDO) on January 16, 2019.

In reaching a decision on this issue, below will you find an itemized response:

Issue:
1. You claim RVR Log # 6119874, dated November 24, 2018, for Assault on a Peace Officer by Means Not Likely to Cause GBI was a fabrication by

Officer Archuleta which you allege resulted in pain, mental anguish, ASU placement, an increase in 12 classification points, and transfer to another institution. You argue and reiterate your claim of the version of circumstances that lead to the incident with Officer Archuleta and the subsequent issuance of the RVR. In accordance with CCR, Title 15, Section 3320, this is not a Due Process violation. The SHO conducted the hearing and rendered a Finding based on the charges identified in RVR Log # 6119874 and the preponderance of evidence presented during the hearing. However, a review of the RVR noted your request for the reporting employee to be present in the IE report and the entry in SOMS. In accordance with CCR, Title 15, Section 3315(e)(1),(2) and (4), requested witnesses, to include the reporting employee, shall be called unless the official conducting the hearing denies the request and articulates the reasons for the denial. In addition, the reporting employee shall attend the hearing or be available for questioning if requested by the inmate. A review in SOMS and the IE report served reflects your request for the reporting employee during the hearing. The SHO does not reflect this and does not address either granting or denying your request for the reporting employee which is identified as a due process violation.

**DECISION:** The appeal is Partially Granted.

Action requested:

1. Your request for RVR Log # 6119874 to be dismissed in the interest of justice is Denied. The RVR will be ordered re-issue and re-heard based on the SHO failed to have the Reporting Employee available during the hearing as you requested.
2. Your request for Officer Archuleta to be found guilty of lying and submitting a false report is denied as it is outside of the scope of the inmate appeal process.
3. Your request for your Classification score to be reduced the 12 points you were assessed is partially granted. Upon completion of the RVR process, an assessment of your classification score will be conducted by your designated counselor to coincide with the outcome of the RVR process and presented during your annual Unit Classification Committee review in accordance with CCR, Title 15, Section 3375.4.
4. Your request for you to be endorsed and returned to Facility D at the RJDCF is denied. Inmate housing is determined based on an inmate's case factors which are taken into consideration by classification committees who, at their discretion, determine appropriate housing in accordance with CCR, Title 15, Section 3375.

**MODIFICATION ORDER:** Based on the aforementioned, Appeal Log# RJD-D-19-03397 is partially granted at the Second Level of Review. The institution shall order a reissuance and a rehearing of RVR Log # 6119874 and ensure the SHO makes the Reporting Employee available during the hearing as requested by the appellant.

 10

Appeal Log N
PAGE 4

You are advised this issue may be submitted for Third Level of Review, if desired, by completing section "F" of the CDCR 602 and mailing it to the Chief of the Office of Appeals at the address listed on the back of the CDCR 602.

(SF)
PATRICK COVELLO
Warden (A)
Richard J. Donovan Correctional Facility

Name: DRAGASITS, STEPHEN J. CDC #: AR2176 PID #: 12100750

IPTS020A

# External Movements

Wednesday April 15, 2020 11:03:11 AM

21 - 40 of 50

| Date | Time | Reporting Location | Movement Type | Reason | Other Location |
|---|---|---|---|---|---|
| 05/15/2019 | 11:54 | RJD-Facility B | Received from another Facility | Bed Assignment (between Facilities) | RJD-Central Service |
| 05/15/2019 | 11:54 | RJD-Central Service | Transferred to Another Facility | Bed Assignment (between Facilities) | RJD-Facility B |
| 05/15/2019 | 08:20 | RJD-Central Service | Returned from Court | Court Appearance - Other | San Diego County Sheriff JAIL |
| 02/20/2019 | 10:16 | RJD-Facility B | Out to Court | Court Appearance as Defendant | San Diego County Sheriff |
| 02/19/2019 | 14:52 | RJD-Facility B | Received from another Facility | Bed Assignment (between Facilities) | RJD-Central Service |
| 02/19/2019 | 14:52 | RJD-Central Service | Transferred to Another Facility | Bed Assignment (between Facilities) | RJD-Facility B |
| 02/19/2019 | 13:48 | RJD-Central Service | Received from another Facility | Enroute to Another Institution | LAC-Facility C |
| 02/19/2019 | 09:46 | LAC-Facility C | Transferred to Another Facility | Enroute to Another Institution | RJD-Central Service |
| 02/07/2019 | 15:30 | LAC-Facility C | Received from another Facility | Bed Assignment (between Facilities) | LAC-STRH |
| 02/07/2019 | 15:30 | LAC-STRH | Transferred to Another Facility | Bed Assignment (between Facilities) | LAC-Facility C LEVEL 4 YARD |
| 01/28/2019 | 19:44 | LAC-STRH | Received from another Facility | Bed Assignment (between Facilities) | LAC-Central Service |
| 01/28/2019 HOLE | 19:44 | LAC-Central Service | Transferred to Another Facility | Bed Assignment (between Facilities) | LAC-STRH ADSEG HOLE |
| 01/28/2019 | 14:20 | LAC-Central Service | Received from another Facility | Permanent Transfer | RJD-Facility B |
| 01/28/2019 | 10:10 | RJD-Facility B | Transferred to Another Facility | Permanent Transfer | LAC-Central Service |
| 11/24/2018 | 20:07 | RJD-Facility B | Received from another Facility | Bed Assignment (between Facilities) | RJD-Facility D |
| 11/24/2018 | 20:07 | RJD-Facility D | Transferred to Another Facility | Bed Assignment (between Facilities) | RJD-Facility B |
| 03/30/2017 | 22:52 | RJD-Facility D | Returned from Hospital | Returned From Hospital | Alvarado Hospital Medical Center - San Diego |
| 03/30/2017 | 19:13 | RJD-Facility D | Out to Hospital / Medical | Released to Hospital / Medical | Alvarado Hospital Medical Center - San Diego |
| 05/29/2014 | 16:00 | RJD-Facility D | Received from another Facility | Bed Assignment (between Facilities) | RJD-Facility B |
| 05/29/2014 | 16:00 | RJD-Facility B | Transferred to Another Facility | Bed Assignment (between Facilities) | RJD-Facility D |

**Next Page** **Prior Page**

Name: DRAGASITS, STEPHEN J. CDC #: AR2176 PID #: 12100750

IPTS020A

# External Movements

Wednesday April 15, 2020 11:03:54 AM

1 - 20 of 50

| Date | Time | Reporting Location | Movement Type | Reason | Other Location |
|---|---|---|---|---|---|
| 10/31/2019 | 16:44 | MCSP-Facility B | Received from another Facility | Bed Assignment (between Facilities) | MCSP-Central Service |
| 10/31/2019 | 16:44 | MCSP-Central Service | Transferred to Another Facility | Bed Assignment (between Facilities) | MCSP-Facility B |
| 10/31/2019 | 16:26 | MCSP-Central Service | Received from another Facility | Permanent Transfer | KVSP-Facility D |
| 10/31/2019 | 07:02 | KVSP-Facility D | Transferred to Another Facility | Permanent Transfer | MCSP-Central Service |
| 09/17/2019 | 17:18 | KVSP-Facility D | Received from another Facility | Bed Assignment (between Facilities) | KVSP-Central Service |
| 09/17/2019 | 17:18 | KVSP-Central Service | Transferred to Another Facility | Bed Assignment (between Facilities) | KVSP-Facility D |
| 09/17/2019 | 16:54 | KVSP-Central Service | Received from another Facility | Permanent Transfer | CIM-Facility B |
| 09/17/2019 | 06:24 | CIM-Facility B | Transferred to Another Facility | Permanent Transfer | KVSP-Central Service |
| 09/05/2019 | 15:12 | CIM-Facility B | Received from another Facility | Bed Assignment (between Facilities) | CIM-Central Service |
| 09/05/2019 | 15:12 | CIM-Central Service | Transferred to Another Facility | Bed Assignment (between Facilities) | CIM-Facility B |
| 09/05/2019 | 08:05 | CIM-Central Service | Returned from Court | Returned to Finish Term | San Diego County Sheriff |
| 08/05/2019 | 08:06 | CIM-Facility B | Out to Court | Court Appearance as Defendant | San Diego County Sheriff |
| 07/25/2019 | 20:54 | CIM-Facility B | Received from another Facility | Bed Assignment (between Facilities) | CIM-Central Service |
| 07/25/2019 | 20:54 | CIM-Central Service | Transferred to Another Facility | Bed Assignment (between Facilities) | CIM-Facility B |
| 07/25/2019 | 16:39 | CIM-Central Service | Received from another Facility | Temporary Placement | KVSP-Facility D |
| 07/25/2019 | 07:56 | KVSP-Facility D | Transferred to Another Facility | Temporary Placement | CIM-Central Service |
| 05/19/2019 | 09:15 | KVSP-Facility D | Received from another Facility | Bed Assignment (between Facilities) | KVSP-Central Service |
| 05/19/2019 | 09:15 | KVSP-Central Service | Transferred to Another Facility | Bed Assignment (between Facilities) | KVSP-Facility D |
| 05/19/2019 | 09:10 | KVSP-Central Service | Received from another Facility | Permanent Transfer | RJD-Facility B |
| 05/19/2019 | 04:53 | RJD-Facility B | Transferred to Another Facility | Permanent Transfer | KVSP-Central Service |

**Next Page**

CALIFORNIA DEPARTMENT of
Corrections and Rehabilitation

File Copy

# ADMINISTRATIVE SEGREGATION UNIT PLACEMENT NOTICE

| INSTITUTION NAME | INMATE'S NAME | CDC NUMBER |
|---|---|---|
| RJD-Facility D | DRAGASITS, STEPHEN J. | AR2176 |

**REASON(S) FOR PLACEMENT *(PART A)***

☐ PRESENTS AN IMMEDIATE THREAT TO THE SAFETY OF SELF OR OTHERS → This box was checked by LT Kottrel upon arrival of RJDCF for San Diego Court resentencing & then sent to S.D. Jail on 2 different occasions

☐ JEOPARDIZES INTEGRITY OF AN INVESTIGATION OF ALLEGED SERIOUS MISCONDUCT OR CRIMINAL ACTIVITY

☑ ENDANGERS INSTITUTION SECURITY ☐ RETAINED IN ASU AS NO BED AVAILABLE IN GENERAL POPULATION

DESCRIPTION OF CIRCUMSTANCES WHICH SUPPORT THE REASON(S) FOR PLACEMENT:
On Saturday, November 24, 2018, you Inmate Dragastis, S., AR2176, are being placed in Administrative Segregation due to the following reasons: On 11/24/2018, you attempted to batter Correctional Officer C. Archuleta by striking her with your walker. You lunged forward and pushed your walker towards her. Correctional Officer Archuleta ordered you to stop and get down to which you did not comply. You kept moving towards Officer Archuleta. Officer Archuleta had to pull you to the ground to stop your actions. You will be issued a Rules Violation Report for Attempted Battery on a Peace Officer. Due to the aforementioned you endanger institutional security. You will remain in Administrative Segregation pending disciplinary process, administrative review for proper program and housing needs.
MHSDS: CCCMS TABE: 12.9

☐ IF CONFIDENTIAL INFORMATION USED, DATE INFORMATION DISCLOSED:

| DATE OF ASU PLACEMENT | SEGREGATION AUTHORITY'S PRINTED NAME | SIGNATURE | TITLE |
|---|---|---|---|
| 11/24/2018 | G. Hernandez | G. Hernandez | Lieutenant |

| DATE NOTICE SERVED | TIME SERVED | PRINTED NAME OF STAFF SERVING ASU PLACEMENT NOTICE | SIGNATURE | STAFF'S TITLE |
|---|---|---|---|---|
| 11/24/2018 | 18:45:00 | | | Lieutenant |

| ☑ INMATE REFUSED TO SIGN | INMATE SIGNATURE | CDC NUMBER |
|---|---|---|
| | | AR2176 |

You were identified with a disability of:
☐ Hearing ☐ Vision ☐ Speech ☐ Learning Disability ☐ TABE under 4.0 / no TABE ☐ Developmental Disability ☑ CCCMS ☐ EOP
☐ Foreign Language Speaking

Method
☐ DRAGASITS, STEPHEN JOSEPH reiterated in his own words, what was explained

☐ DRAGASITS, STEPHEN JOSEPH provided appropriate, substantive responses to questions asked

☐ DRAGASITS, STEPHEN JOSEPH asked appropriate questions regarding the information provided

:ATE OF CALIFORNIA
IMATE/PAROLEE APPEAL
)CR 602 (REV. 08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

'SE ONLY

1906333

AR2176

Institution/Parole Region: Log #: RJD-D-18-8095 Category:

FOR STAFF USE ONLY

ou may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material dverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of egulations, Title 15, (CCR) Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar ays of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for rther guidance with the appeal process. No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.** **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| DRAGASITS STEPHEN | AR2176 | ADSEG BLDG 7 | |

**State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):** POLICE BRUTALITY INJUSTLY PUT IN ADSEG BECAUSE COARCHELTA'S LIES.

**A. Explain your issue (If you need more space, use Section A of the CDCR 602-A):** SEE ABOVE - ON 11/24/18, I WAS GETTING BY THE DOOR OF THE CHOW HALL TO ENTER TO EAT DINNER, CO ARCHELETA MET ME & TOLD ME TO GO AROUND OVER 3/4 THE LENGTH OF THE YARD. I

**B. Action requested (If you need more space, use Section B of the CDCR 602-A):** REMOVE ME FROM ADSEG IMMEDIATELY AND PUT ME BACK ON DELTA YARD, ALSO TO BE FOUND NOT GUILTY OF ALL CHARGES, ALSO TO BE CONSIDERED IS THE EXTENT

**Supporting Documents:** Refer to CCR 3084.3.

☒ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):
R. 7219 MEDICAL REPORT OF INJURIES
ASU PLACEMENT NOTICE

☒ No, I have not attached any supporting documents. Reason: MY MOBILITY VEST AND WALKER ARE PERMANENT, I'M ADA, IT'S ALL IN THE COMPUTER. ALSO X-RAY OF RIB (LEFT SIDE) SHOWS HE'S FRACTURED RIB.

Inmate/Parolee Signature: Stephen Dragasits Date Submitted: 11/28/18

☐ **By placing my initials in this box, I waive my right to receive an interview.**

Received DEC 2 1 2018 RJDCF Appeals
S/C
AAR 12/21
REC BY OOA
MAY 0 8 2020
C4 2/14/19 3/19 5/28/19 5/30/19

**C. First Level - Staff Use Only** Staff – Check One: Is CDCR 602-A Attached? ☐ Yes ☐ No

This appeal has been:
☒ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: ______ Date: ______ Date: ______ Date: ______
☐ Cancelled (See attached letter) Date: ______
☐ Accepted at the First Level of Review.

Assigned to: ______ Title: ______ Date Assigned: ______ Date Due: ______

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: ______ Interview Location: ______

Your appeal issue is: ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other: ______

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: ______ (Print Name) Title: ______ Signature: ______ Date completed: ______

processed as attachment to OOA-19-06337

Reviewer: ______ (Print Name) Title: ______ Signature: ______

Date received by AC: ______

AC Use Only
Date mailed/delivered to appellant ___ / ___ / ___

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

1906333

IAB USE ONLY | Institution/Parole Region: | Log #: LSP-D-18-8095 | Category:

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
**Appeal is subject to rejection if one row of text per line is exceeded.** **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| DRAGASITS, STEPHEN | AR2176 | ADSEG BLDG 7 | |

**A. Continuation of CDCR 602, Section A only (Explain your issue) :** TOLD HER I WAS UNABLE TO DO THAT AMOUNT OF WALKING DUE TO RECENT SURGERY ON MY RIGHT FOOT WHERE THERE ARE 9 SOUCHERS ON THE TOP OF MY FOOT, THAT ARE INFECTED. I HAD COME FROM THE GYM WHERE THE PILL LINE NURSE GAVE ME THE 1ST DOSE OF ANTIBIOTIC. I SPENT OVER 2 HOURS TO GET MY FOOT WORKED ON AT TTA EARLIER THAT MORNING. MY FOOT WAS HURTING BAD AND AT THAT POINT, I TOOK OF MY SHOE AND SOCK AND SHOWED HER MY SOUCHERS & THE PUFFY REDNESS. I PUT MY I.D. ON MY WALKER, AFTER SHE (ARCHELETA) ASKED FOR IT, BEFORE I COULD PUT MY SHOE ON SHE TOLD ME TO TURN AROUND AND HANCUFFED ME, AFTER I RE-ITERATED MY FOOT HURT AND COULD NOT DO THAT AMOUNT OF WALKING AROUND THE YARD TO GO BACK IN LINE TO EAT, I SAID WALKERS HAVE HEAD OF LINE PRIVELEGE AND BEFORE I START WALKING I NEED TO PUT MY SHOE ON. AT THE POINT ALL THE CO'S, GRABBED ME & TOSSED ME TO THE GROUND AND PHYSICALLY ABUSED ME, CAUSING SEVERAL INJURIES & B. GARCIA BASHING MY HEAD WITH HIS FOOT.

Inmate/Parolee Signature: [signature] Date Submitted: 11/26/18

REC BY OOA
MAY 08 2026

**B. Continuation of CDCR 602, Section B only (Action requested):** OF THE INJURIES I RECEIVED BY SEVERERAL CO'S WHO KICKED, PUNCHED AND GROUNDED MY FACE TO THE ASPHALT WITH SOMEONES (B. GARCIA'S) BOOT, I YELLED HELP FOR 2 MINUTES BECAUSE I COULD NOT BREATHE, A KNEE WAS ON MY BACK, THATS WHEN A BOOT GROUNDED MY FACE TO THE ASPHALT. WHAT IS NEED IS TRAINGINS FOR THESE CO'S BECAUSE WHEN A 66 YR OLD INMATE WITH A WALKER AND A MOBILITY VEST WHO SHOWS A CO AN INJURY, INFECTED FOOT WITH 9 STITCHES AND TELLS THAT PERSON THAT MY FOOT HURTS, THAT SHOULD SIGNAL A YELLOW FLAG WITH THE CO, NOT TO CAUSE MORE PAIN AND INJURY TO A PERSON WHO HAD FOOT SURGERY AND ALSO D YARD CAPTAIN ISSUED RULES AND REGS. WALKERS GET HEAD OF LINE PRIVELEGES COMPENSATION FOR INJURIES

Inmate/Parolee Signature: [signature] Date Submitted: 11/26/18

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL**
CDCR 602 (REV. 08/09)

B-7-131 KVSP

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

IAB USE ONLY

DO. 111L

Institution/Parole Region: Log #: RJD-B-19-322 Category:

FOR STAFF USE ONLY

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations, Title 15, (CCR) Section 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

**Appeal is subject to rejection if one row of text per line is exceeded.** **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| DRAGASITS STEPHEN | AR2176 | B-6-110 | — |

**State briefly the subject of your appeal (Example: damaged TV, job removal, etc.):**
*EMERGENCY 602 // SHOULD BE REMOVED FROM ADSEG

**A. Explain your issue (If you need more space, use Section A of the CDCR 602-A):** I HAD BEEN FOUND GUILTY OF A LESSER CHARGE THAN THE ONE THAT PUT ME IN ADSEG ON NOV 24TH 2018. A LIETENANT FOUND ME GUILTY OF DISOBEYING A DIRECT ORDER, WHICH IS NOT AN ADSEG PUNISHMENT.

**B. Action requested (If you need more space, use Section B of the CDCR 602-A):** PLEASE REMOVE ME FROM ADSEG IMEDIATELY AND PUT ME BACK ON 'DELTA YARD.

Received JAN 07 2019 RJD

Classification Adseg

STAFF USE

**Supporting Documents: Refer to CCR 3084.3.**
☐ Yes, I have attached supporting documents.
List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):

☑ No, I have not attached any supporting documents. Reason: I HAVE NOT RECEIVED THEM YET FROM THE LIEUTENANT WHO HEARD MY CASE ON DEC 21, 2018.

Inmate/Parolee Signature: Stephen Dragasits Date Submitted: 1/3/19

☐ **By placing my initials in this box, I waive my right to receive an interview.**

**C. First Level - Staff Use Only** Staff – Check One: Is CDCR 602-A Attached? ☒ Yes ☐ No

This appeal has been:
☒ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: ______ Date: ______ Date: ______ Date: ______
☐ Cancelled (See attached letter) Date: ______
☒ Accepted at the First Level of Review.

Assigned to: ~~[illegible]~~ Title: ~~[illegible]~~ Date Assigned: ______ Date Due: ______

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: ______ Interview Location: ______

Your appeal issue is: ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other: ______

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: ______ (Print Name) Title: ______ Signature: ______ Date completed: ______

Reviewer: ______ (Print Name) Title: ______ Signature: ______

Date received by AC: ______

AC Use Only
Date mailed/delivered to appellant ___/___/___

STATE OF CALIFORNIA
**INMATE/PAROLEE APPEAL FORM ATTACHMENT**
CDCR 602-A (08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | | |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.

**Appeal is subject to rejection if one row of text per line is exceeded.** **WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| DRAGASITS STEPHEN | AR2176 | B-6-110 | — |

**A. Continuation of CDCR 602, Section A only (Explain your issue):** ACCORDING TO THE LT. WHO HEARD MY CHARGE, HE DID NOT FIND ME GUILTY OF ATTEMPTED ASSAULT; THUS I SHOULD HAVE BEEN REMOVED FROM ADSEG AND PUT BACK ON 'DELTA YARD. I AM SUFFERING IMMENSELY IN ADSEG MENTALLY AND PHYSICALLY, PLUS THE FACT I SUFFERED A FRACTURED RIB ON 11/24/18 ADDING TO MY MISERY; DUE TO EXCESSIVE FORCE.
ACCORDING TO THE LT. WHO HEARD MY CASE, I SHOULD HAVE HAD A COPY OF HIS RESULTS AT THE END OF THE MONTH.

STAFF USE ONLY

Inmate/Parolee Signature: Stephen Dragasits Date Submitted: 1/3/19

**B. Continuation of CDCR 602, Section B only (Action requested):**

Inmate/Parolee Signature: Date Submitted:

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL
CDCR 602 (REV. 08/09)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

IAB USE ONLY

1912856

RJD D 19 3397

Institution/Parole Region: Log #: KVSP-O-19-02129 Category: 1

FOR STAFF USE ONLY

You may appeal any California Department of Corrections and Rehabilitation (CDCR) decision, action, condition, policy or regulation that has a material adverse effect upon your welfare and for which there is no other prescribed method of departmental review/remedy available. See California Code of Regulations, Title 15, Section (CCR) 3084.1. You must send this appeal and any supporting documents to the Appeals Coordinator (AC) within 30 calendar days of the event that lead to the filing of this appeal. If additional space is needed, only one CDCR Form 602-A will be accepted. Refer to CCR 3084 for further guidance with the appeal process. No reprisals will be taken for using the appeal process.

Appeal is subject to rejection if one row of text per line is exceeded. WRITE, PRINT, or TYPE CLEARLY in black or blue ink.

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| DRAGASITS STEPHEN | AR2176 | D6 / 111 | |

State briefly the subject of your appeal (Example: damaged TV, job removal, etc.): 74
APPEAL OF CO ARCHELETA LYING ON RVR #6119864 11/24/18

A. Explain your issue (If you need more space, use Section A of the CDCR 602-A): CO ARCHELETA LIED ON AN RVR CAUSING PAIN AND MENTAL ANGUISH, AD SEG, 12 PTS AND TXFER TO ANOTHER PRISON. I DID STOP WHEN SHE TOLD ME TO STOP IN FRONT OF THE CHOW HALL, I TOLD

B. Action requested (If you need more space, use Section B of the CDCR 602-A): BECAUSE MY MEDICAL RECORDS WILL VERIFY WHAT I SAID ABOUT MY RIGHT FOOT IS TRUE, THERE IS NO ~~RESET~~ REASON I WOULD NOT HAVE STOPPED TO TELL MY STORY TO

MAY 30 2019

Received
JUN 04 2019
RJDCF Appeals

JLM OTC 2/20/19 5/15/19

REC BY OOA
OCT - 7 2019

Supporting Documents: Refer to CCR 3084.3.

☐ Yes, I have attached supporting documents.

List supporting documents attached (e.g., CDC 1083, Inmate Property Inventory; CDC 128-G, Classification Chrono):
CDC FORM 695

☐ No, I have not attached any supporting documents. Reason :

Inmate/Parolee Signature: [signature] Date Submitted: 5/25/19

☐ By placing my initials in this box, I waive my right to receive an interview.

C. First Level - Staff Use Only — Staff – Check One: Is CDCR 602-A Attached? ☐ Yes ☐ No

This appeal has been:
☑ Bypassed at the First Level of Review. Go to Section E.
☐ Rejected (See attached letter for instruction) Date: ______ Date: ______ Date: ______ Date: ______
☐ Cancelled (See attached letter) Date: ______
☐ Accepted at the First Level of Review.

Assigned to: ______ Title: ______ Date Assigned: ______ Date Due: ______

First Level Responder: Complete a First Level response. Include Interviewer's name, title, interview date, location, and complete the section below.

Date of Interview: ______ Interview Location: ______

Your appeal issue is: ☐ Granted ☐ Granted in Part ☐ Denied ☐ Other: ______

See attached letter. If dissatisfied with First Level response, complete Section D.

Interviewer: ______ (Print Name) Title: ______ Signature: ______ Date completed: ______

Reviewer: ______ (Print Name) Title: ______ Signature: ______

Date received by AC: ______

AC Use Only
Date mailed/delivered to appellant ___ / ___ / ___

STATE OF CALIFORNIA
INMATE/PAROLEE APPEAL FORM ATTACHMENT
CDCR 602-A (REV. 03/12)

DEPARTMENT OF CORRECTIONS AND REHABILITATION

Side 1

| IAB USE ONLY | Institution/Parole Region: | Log #: | Category: |
|---|---|---|---|
| | | 19-02129 | 1 |

FOR STAFF USE ONLY

Attach this form to the CDCR 602, only if more space is needed. Only one CDCR 602-A may be used.
**Appeal is subject to rejection if one row of text per line is exceeded. • WRITE, PRINT, or TYPE CLEARLY in black or blue ink.**

| Name (Last, First): | CDC Number: | Unit/Cell Number: | Assignment: |
|---|---|---|---|
| DRAGASITS STEPHEN | AR2176 | DC-111 | |

**A. Continuation of CDCR 602, Section A only (Explain your issue):** HER MY SITUATION WHEN SHE ASKED ME TO GO AROUND THE YARD BACK THE SAME WAY I CAME FROM TO GO TO EAT WHEN I WAS ALREADY THERE, SHE SAID I WAS GOING THE WRONG WAY, I TOLD HER THE TRUTH THAT I HAD FOOT SURGERY, I WENT TO ~~MA~~ THAT SAT. MCEN FOR FOOT INFECTION AND PERHAPS MIRSA, I TOLD HER I JUST GOT MY FIRST DOSE OF ANTIBIOTIC AT THE PILL LINE. I EVEN TOOK OFF MY SHOE AND SOCK TO SHOW HER THE INFLAMMATION AND STITCHES ON MY RIGHT FOOT. SHE SAID I STILL HAVE TO GO AROUND. I SAID I ALSO HAVE HEAD OF LINE ~~PRIVEGE~~ PRIVELEGE BECAUSE OF A WALKER + MOBILITY VEST AND MY FOOT HURT + I CAN'T GO AROUND SHE THEN ASKED FOR MY ID, WHICH I GAVE TO HER. & CO ARCHELETA COMPLETELY LEFT THIS OUT OF HER ~~HER~~ STORY. AT THIS POINT I WANTED TO PUT MY SHOE AND SOCK BACK ON, I LOST MY BALANCE AS I TRIED TO GRAB MY WALKER + PULL IT BACK TO ME SO I COULD SIT DOWN, I THEN GOT TRIPPED UP FROM BEHIND

MAY 30 2019

REC. BY OOA
OCT 7 2019

Inmate/Parolee Signature: [signature] Date Submitted: 5/28/19

**B. Continuation of CDCR 602, Section B only (Action requested):** CO ARCHELETA, IN THE INTEREST OF JUSTICE, I WANT TO BE FOUND NOT GUILTY OF THE CHARGE OF RVR # 6119841 AND ALSO FIND CO ARCHELETA GUILTY OF LYING ON AN RVR + SUBMITTING A FALSE REPORT ALSO BRING MY POINT TOTAL DOWN 12 PTS TO 49 AND ENDORSE ME FOR D YARD ... .

I HAVE A MOBILITY VEST AND A WALKER AND WAS COOPERATIVE. I DIDN'T NEED TO BE TAKEN DOWN FROM BEHIND. ISSUE AN OFFICER COMPLAINT AGAINST CO ARCHELETA

Inmate/Parolee Signature: [signature] Date Submitted: 5/28/19

You are receiving this notice because you are scheduled to have a consultation with a hearing officer (commissioner or deputy commissioner) from the Board of Parole Hearings (Board).

1. **Purpose of Consultation:**

   The purpose of a consultation is to review and document your activities and conduct while in prison. The Board is required to provide you with information about the parole hearing process, legal factors relevant to your suitability or unsuitability for parole, and to provide you with recommendations for work assignments, rehabilitative programs, and institutional behavior. (Pen. Code, § 3041(a)(1); see Pen. Code, § 3051(c).)

2. **Right to Consultation:**

   Your consultation will be scheduled during the sixth year before your initial parole hearing based on your Minimum Eligible Parole Date (MEPD), Youth Parole Eligible Date (YPED), Nonviolent Parole Eligible Date (NPED), or Elderly Parole Eligible Date (EPED), whichever date is earliest, unless your consultation date is set otherwise by law. (Pen. Code, §§ 3041(a)(1), 3051(i)(2)(B).)

3. **Right to Be Present and Participate:**

   You have a right to attend the consultation, ask and answer questions, and speak on your own behalf. (Cal. Code Regs., tit. 15, § 2247.)

4. **Attorney:**

   You are not entitled to be represented by an attorney at a consultation.

5. **Witnesses:**

   You may not call witnesses at a consultation.

6. **Others Who May Attend Your Consultation:**

   If you have a disability and require a staff assistant, they will attend your consultation with you. The only other persons who may attend are Board employees who may attend for training purposes. Neither the District Attorney's office nor victims are entitled to attend.

7. **Consultation Conducted In-Person or by Videoconference:**

   The Board schedules all consultations to be conducted by videoconference unless it determines an in-person consultation is necessary for the hearing officer to effectively communicate with you. (See Cal. Code Regs., tit. 15, §§ 2050-2063.) The Board will notify you whether your consultation is scheduled to occur in person or by videoconference.

   If your consultation is conducted by videoconference, you will communicate with the hearing officer by videoconference. This means the hearing officer will not be physically present with you during the consultation; instead, they will appear at your consultation by videoconference.

   If your consultation is conducted in person, you will communicate with the hearing officer while they are physically present with you during the consultation. This is usually at an institution. Your scheduled interpreter, if needed, is required to be physically present with you during the consultation, unless you waive their physical presence or special circumstances apply. Approved observers may appear in person, by videoconference, or by telephone.

If your consultation is scheduled to be conducted in person, you may submit a written request to the Board that your consultation be conducted by videoconference instead. The written request must include an explanation of why an in-person consultation is not necessary for the hearing officer to effectively communicate with you. If possible, these requests should be sent to the Board at least 15 days prior to the date on which the consultation is scheduled to occur. The Board will review these requests and will notify participants if an in-person consultation is changed to a videoconference consultation.

8. **Review of File; Opportunity to Present Evidence:**

You may receive reasonable accommodations and assistance in preparing for your consultation. If you are unable to effectively communicate due to language difficulties or a physical, developmental, or mental disability, appropriate accommodations will be provided to you before and during your consultation. (Cal. Code Regs., tit. 15, § 2251.)

9. **Postponements:**

If a hearing officer has determined you require an accommodation and no reasonable accommodation is available, a consultation may be postponed for good cause. (Cal. Code Regs., tit. 15, § 2251.5.) In addition, the Board may also postpone your consultation for other reasons, such as a hearing officer's unavailability.

10. **Impartial Hearing Officer:**

You are entitled to a consultation by an impartial hearing officer and may request the disqualification of the hearing officer where grounds for disqualification exist. (Cal. Code Regs., tit. 15, § 2250.)

11. **Record Decision:**

You are entitled to a copy of the Board's findings and recommendations within 30 days following the consultation. (Pen. Code, § 3041(a)(1).)

---

I have read and understand the rights and procedures (Items 1 through 11, above), and I have had an opportunity to ask questions about any rights or procedures that I did not understand.

[signature]
Signature

AR2176
CDCR Number

11/18/25
Date

---

I explained the foregoing rights to the incarcerated person, provided them with an opportunity to ask questions, and answered all questions they asked.

[signature]
Signature

11/18/25
Date

~~J PIEDRA~~ J. QUATMAN
Name (print)

CORRECTIONAL COUNSELOR
Title

Hearing on 1/28/2026 @ 8:30 am

UN I TED STATES DISTRICT COURT
DISTRICT OF CALIFORNIA

Dragasits (AR2176) prose
plaintiff
VS.
Archuleta, Garcia, Massie et al

CASE NUMBER: 24-CV-01257-AGS-SBC

PROOF OF SERVICE

BY MAIL

I hereby certify that on 1/26/2026 I served a copy

by placing in a postage paid envelope addressed to the person( s) hereinafter listed, by

depositing said envelope in the united states mail at CIM/Ca State prison at Chino Ca
San Bernadino County
CIM A-5-156L
P.O. Box 368
Chino Ca 91708

I declare under penalty of perjury that the foregoing is true and correct.

Stephen Dragasits

CONFIDENTIAL LEGAL MAIL
CALIFORNIA INSTITUTION FOR MEN - CIM
STAFF NAME
BADGE NUMBER
DATE SIGNED
STAFF SIGNATURE

CIM #A-5-156L
P.O. Box 368
Chino Ca 91708

STATE PRISON

PRIORITY MAIL

US POSTAGE
ZIP 91710 $011.70
02 7H
0008041253 JAN 27 2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF California
OFFICE OF THE CLERK
333 West Broadway Suite 420
San Diego Ca 92101

RECEIVED
JAN 30 2026
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

Stephen Dragasits AR2176
Cim A-5-156L
P.O. Box 368
Chino Ca 91708

STATE PRISON

GND ADV

US POSTAGE PITNEY BOWES
ZIP 91710 $ 009.95
02 7W
0008041269 AUG 28 2026

UNITED STATES DISTRICT COURT
SOUTHERN DIVISION OF CALIFORNIA
Office of the CLERK
333 WEST BROADWAY SUITE 420
San DIEGO Ca. 92101

LEGAL
MAIL

RECEIVED
SEP 0 1 2026


CONFIDENTIAL LEGAL MAIL
CALIFORNIA INSTITUTION FOR MEN - CIM
STAFF NAME
BADGE NUMBER 76345
DATE SIGNED 8-27-26
STAFF SIGNATURE